UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DARRYL WHITE,

    **Plaintiff,**

v.                              **CASE No.3:26-cv-00806-TKW-ZCB**

CITY OF FORT WALTON BEACH,
PATRICK MOONEY, AUSTIN
HOWARD, RITCHIE RIVERA,
and MICHAEL COOK JR.,

    **Defendants.**

_____/

## FIRST AMENDED COMPLAINT

Plaintiff, Darryl White, by and through the undersigned counsel, hereby sues

the City of Fort Walton Beach, Patrick Mooney, Austin Howard, Ritchie Rivera, and

Michael Cook Jr. (collectively "Defendants"), for damages, declarative relief,

injunctive relief, and equitable relief, and alleges:

## NATURE OF THE ACTION

1.     This is a civil rights action for monetary damages and is brought under

42 U.S.C. § 1983 and the common law of Florida. This action is based on violations

of Plaintiff's civil and constitutional right to be free from civil rights violations,

which are protected under the Fourth and Fourteenth Amendments to the United

States Constitution. Plaintiff also brings supplemental state law claims and seeks to

hold the Defendants liable for engaging in tortious activity and violations of Plaintiff's civil rights.

## PARTIES, JURISDICTION, AND VENUE

2.      Darryl White ("White" or "Plaintiff"), is an individual over the age of 18, is *sui juris*, and is currently a resident of Okaloosa County, Fort Walton Beach, Florida. Plaintiff is currently seventy-nine years old. During the relevant time period, White was a resident of Okaloosa County, Fort Walton Beach, Florida, and a private citizen entitled to the full protection of the United States Constitution, including but not limited to the rights secured by the Fourth and Fourteenth Amendments, which guarantee freedom from unreasonable seizures, arrest without probable cause, malicious prosecution, and deprivation of liberty without due process of law. White has suffered, continues to suffer, and will continue to suffer serious economic and personal injuries as a result of the Defendant's tortious conduct, as described herein.

3.      At all times pertinent hereto, Defendant, The City of Fort Walton Beach ("Defendant FWB"), operated a law enforcement department known as the Fort Walton Beach Police Department ("FWBPD") within the jurisdictional boundaries of this court, and has committed tortious acts and constitutional violations in Florida and within the jurisdiction of this court.

4.      At all times pertinent hereto, Defendant Patrick Mooney ("Defendant Mooney"), was employed by FWB as a Corporal for FWBPD. While acting under

color of state law, Defendant Mooney proximately caused the deprivation of Plaintiff's federally protected rights through his unlawful and unconstitutional conduct. Defendant Mooney is sued in his individual capacity.

5.     At all times pertinent hereto, Defendant Austin Howard ("Defendant Howard"), was employed by FWB as an Officer for FWBPD. While acting under color of state law, Defendant Howard proximately caused the deprivation of Plaintiff's federally protected rights through his unlawful and unconstitutional conduct. Defendant Howard is sued in his individual capacity.

6.     At all times pertinent hereto, Defendant Ritchie Rivera ("Defendant Rivera"), was employed by FWB as an Officer for FWBPD. While acting under color of state law, Defendant Rivera proximately caused the deprivation of Plaintiff's federally protected rights through his unlawful and unconstitutional conduct. Defendant Rivera is sued in his individual capacity.

7.     At all times pertinent hereto, Defendant Michael Cook Jr. ("Defendant Cook"), was employed by FWB as an Officer for FWBPD. While acting under color of state law, Defendant Cook proximately caused the deprivation of Plaintiff's federally protected rights through his unlawful and unconstitutional conduct. Defendant Cook is sued in his individual capacity.

8. This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. §§ 1331 and 1343 because this is a civil action seeking redress for the deprivation of rights secured by the United States Constitution.

9. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because they are part of the same case or controversy as Plaintiff's federal claims. Such claims subject to this Court's pendent jurisdiction are Counts V-IX, XIV-XVII, and XXIII-XXIV. As to the pendent claims, all conditions precedent has been satisfied prior to filing this lawsuit, including notice pursuant to Chapter 768.28, Florida Statutes to the Florida Department of Financial Services and the Fort Walton Beach Police Department.

10. Venue is in the Northern District of Florida, Pensacola Division, pursuant to 28 U.S.C. § 1391(b)(2), because the events giving rise to the claims asserted occurred in Okaloosa County, which is within the Northern District of Florida.

11. All claims alleged herein are brought within the applicable statute of limitations.

12. Plaintiff has satisfied all conditions precedent to bringing this action, including notice pursuant to Chapter 768.28, Florida Statutes to the Florida Department of Financial Services and the Fort Walton Beach Police Department.

## **STATEMENT OF THE ULTIMATE FACTS**

13.     This is a case of disgraceful and shameless misconduct perpetuated by Defendants, as evidenced by their deliberate, arbitrary, and malicious actions against Plaintiff, demonstrating the utmost disregard for the safety, dignity, and protection of the people of Fort Walton Beach, especially its elderly population.

14.     At all times relevant to this action, Defendants Mooney, Howard, Rivera, and Cook were employed by Defendant FWB as officers for the FWBPD.

15.     During the relevant time period, Plaintiff was an elderly gentleman, seventy-seven years of age, a United States Air Force veteran, and a longtime resident of Fort Walton Beach.

16.     On July 20, 2024, Plaintiff was driving early in the morning from his residence in Fort Walton Beach to Destin when Defendants Mooney and Howard stopped him for running a red light at the intersection of Hollywood Boulevard and Eglin Parkway in Fort Walton Beach, Florida.[1]

17.     At the commencement of the traffic stop, Plaintiff admitted to Defendant Mooney that he had run the red light. Defendant Mooney collected Plaintiff's driver's license, vehicle registration, and proof of insurance.[2] After

---

[1] Defendant Howard assisted Defendant Mooney by remaining outside his patrol car for most of the stop and watching Plaintiff as Plaintiff waited in his truck for Defendant Mooney to finish. Defendant Howard's assistance during the stop was limited to asking Plaintiff additional questions and shining his flashlight into Plaintiff's eyes while Plaintiff sat in his truck.

[2] Defendant Mooney became visibly agitated almost immediately after speaking with Plaintiff, so much so that Defendant Howard asked whether he was okay after returning to the patrol vehicle.

approximately fifteen minutes, Defendant Mooney concluded the traffic stop and issued Plaintiff a speeding ticket.

18. Notably, after handing Plaintiff the ticket, Defendant Mooney started to walk back to his vehicle and end the traffic stop, but quickly noticed that he hadn't returned Plaintiff's documents, including his license, vehicle registration, or insurance card. At this point, Defendant Mooney was visibly disturbed and had become visibly angry at Plaintiff and held a trembling tenor in his voice when he went to Plaintiff to return the documents.

19. Plaintiff then slowly left the scene of the traffic stop and drove a short distance southbound on Perry Avenue before pulling into the back parking lot of a nightclub, The Block, to check his vehicle for the insurance card that had been taken by Defendant Mooney. Plaintiff searched his vehicle but was unable to locate the insurance card. Fearing that Defendant Mooney had not returned his insurance card, Plaintiff pulled out of The Block's parking lot, making a slow left turn when it was safe to do so, and headed back north on Perry Avenue to the location where the initial traffic stop occurred. Plaintiff drove towards the scene of the traffic stop to see if Defendant Mooney or Defendant Howard were still there, in case they could help him find or return the insurance card.

20. While driving north on Perry Avenue, Plaintiff saw a patrol car drive past him heading south. Believing the patrol car belonged to either Defendant

Mooney or Defendant Howard, Plaintiff decided to make a U-turn and follow the patrol car to retrieve his insurance card. Plaintiff slowed down from below the speed limit to a very slow pace out of caution and in the interest of safety to himself and/or other drivers, and turned his wheels to the right to make a wide turn. He then turned his wheels fully to the left to allow his truck to make a broad left turn from the northbound lane into the southbound lane. As Plaintiff began the U-turn, he could see the headlights of what seemed to be two vehicles traveling south in the distance. The section of Perry Avenue where Plaintiff made the U-turn had a double yellow line, so he performed the turn at a slow speed, ensuring he could do so decisively before southbound traffic approached close enough to pose a danger to him or oncoming vehicles.

21.    Plaintiff's U-turn was executed safely and lawfully, without endangerment to any person or property, and without causing any other vehicle to brake, swerve, or react. Plaintiff ensured this by making the turn slowly and with regard to traffic and his surroundings.

22.    After completing the U-turn, the corner of Perry Avenue blocked the view of the first patrol car, so Plaintiff drove a short distance around the corner until he could see where the patrol car was.

23.    Notably, this curvature in Perry Avenue not only obstructed the view of Plaintiff in seeing where the first patrol car went, it also obstructed the view of a

southbound driver to see behind it to the part of the road where Plaintiff made the U-turn. This demonstrates that Defendant Mooney, the soon to be discovered driver of the first patrol car, did not actually see Plaintiff make the U-turn. Notably, Defendant Mooney predicated the arrest of Plaintiff as having made a U-turn, yet based on the curved nature of this part of Perry Avenue, Defendant Mooney would be unable to actually see or otherwise apprehend that a U-turn had been made over a double yellow line. Without witnessing or being able to apprehend Plaintiff's U-turn, Defendant Mooney lacked any reasonable basis (and certainly not probable cause) to have made an arrest of Plaintiff for reckless driving. Indeed, Defendant Mooney's arrest of Plaintiff for reckless driving was made without probable cause, arguable probable cause, or even a reasonable suspicion.

24.    After driving south on Perry Avenue, Plaintiff noticed that the first patrol car had already pulled into the back parking lot of The Block and was parked facing Perry Avenue. Plaintiff then proceeded to slowly drive into The Block's parking lot, next to the parked patrol car, and rolled down his window to try to speak with Defendant Mooney for the return of his insurance card or for assistance in retrieving it.

25.    Unbeknownst to Plaintiff, his insurance card had been returned to him by Defendant Mooney after the first traffic stop and was sitting on the dashboard of

his truck, such that Plaintiff did not notice it after it was returned or when he searched inside his vehicle for it.

26.    While unknown to Plaintiff at the time of the U-turn, the first patrol car that passed Plaintiff and pulled into the parking lot of The Block was Defendant Mooney. Due to the speed at which Defendant Mooney drove past Plaintiff and the slow speed at which Plaintiff made the U-turn, Defendant Mooney was unable to see Plaintiff start or make a U-turn.

27.    As Plaintiff pulled into The Block parking lot, he parked near the patrol car. When Plaintiff came to a stop, Defendant Mooney jumped out of the patrol car and started yelling at Plaintiff to get out of his vehicle. Plaintiff fully complied to all of Defendant Mooney's orders and did not resist or conduct himself in such a way that could have objectively or subjectively been considered threatening.[3] Plaintiff then attempted to ask Defendant Mooney about the location of his insurance card.

28.    However, Defendant Mooney initially refused to address the issue of insurance card and ordered Plaintiff to face away. Defendant Mooney then shoved Plaintiff against his truck and handcuffed him. Defendant Mooney's treatment of Plaintiff was sudden and Mooney used so much force in pushing Plaintiff against his

---

[3] Indeed, Plaintiff responded to Defendant Mooney's orders to get out of the car and turn around without issue, doing so with no resistance and making no indication of being a threat to himself, Mooney, or anyone else. Furthermore, Plaintiff conducted himself in the same manner at the first traffic stop, with Defendant Mooney (and Defendant Howard) being well aware that Plaintiff was an older man and was not a threat to their safety.

truck, that it caused bruises on Plaintiff's shoulders, arms, wrists, hands, knees, and legs. Additionally, Plaintiff was so frightened and startled by Defendant Mooney's unexpected and aggressive behavior and the force he used that he involuntarily defecated on himself.[4]

29.     As Defendant Mooney handled Plaintiff, Defendant Howard arrived at the scene and watched Defendant Mooney shove Plaintiff against his truck and force Plaintiff into the back of Mooney's patrol vehicle. Indeed, Defendant Howard was present from the moment Defendant Mooney caused injury to Plaintiff's arms, legs, knees, and shoulders by shoving him into the side of his truck and witnessed Mooney roughly and aggressively grab and shove Plaintiff into Mooney's patrol car.

30.     When Plaintiff asked either Defendant Mooney or Defendant Howard for an explanation for his arrest, Defendant Mooney told him the arrest was for "reckless driving", "busting U-turns", and declared, "you wanted to play these games, guess what, you win, you are winning a whole trip to jail… you wanted to play games, so now we are going to play games… you are under arrest for reckless driving."

31.     Defendant Mooney's explanation for the arrest is indicative of his malicious intentions against Plaintiff. As referenced above, Defendant Mooney

---

[4] When Plaintiff told Defendant Mooney and Howard this, Defendant Mooney mocked Plaintiff, saying, "you should probably have that checked out by a doctor," as he continued to manhandle Plaintiff.

could not possibly have observed Plaintiff make the U-turn based on the speed at which Defendant Mooney was driving *and* the curve of Perry Avenue, which obstructed the view of a southbound driver and a person making a U-turn at the spot where Plaintiff made it. Furthermore, Defendant Mooney's own words, telling Plaintiff that his arrest was for "playing games" and Plaintiff was "winning a whole trip to jail" is indicative of the fact that Defendant Mooney was making the arrest with malicious intent to punish Plaintiff and ensure he was taken to jail regardless of whether or not there was a legal basis for doing so.[5]

32.    Defendant Mooney used excessive force while handling Plaintiff, an elderly veteran, resulting in bruising to Plaintiff's shoulders, arms, wrists, hands, knees, and legs due to the overwhelming force used.[6] Defendant Mooney's conduct is both puzzling and reprehensible as the force used was excessive and extended beyond force that would be objectively or subjectively reasonable given the circumstances.[7]

---

[5] To be certain, Defendant Mooney's conduct here, having conducted a seizure of Plaintiff's person without legal justification, amounts to a Fourth Amendment violation.

[6] Plaintiff had a pre-existing knee injury that was aggravated when Defendant Mooney slammed Plaintiff against his truck while placing him under arrest. As a result, Plaintiff has experienced increased pain and further loss of motion in his knee following the incident.

[7] As discussed herein, Plaintiff is an elderly man with heart issues that made him frail and weak. Furthermore, during Plaintiff's interactions with Defendant Mooney and Defendant Howard at the first and second traffic stops, as well as Plaintiff's conduct at the Fort Walton Beach Police Station, Plaintiff never indicated any characteristics or qualities that could give Defendants a notion that he posed a threat of harm to himself or others, did not actively resist the arrest, attempt to evade the arrest by flight, and was being arrested for an alleged illegal U-turn.

33.    As Defendant Mooney handled Plaintiff, Defendant Howard remained present and watched Mooney shove Plaintiff against his truck and pull him into the back of the patrol car, causing extensive bruising to Plaintiff.

34.    Notably, at no point did Defendant Howard ever intervene or object to Defendant Mooney's treatment of Plaintiff. When Defendant Howard arrived to the scene of Plaintiff's arrest, he immediately said "what are you doing", yet took no other action. Defendant Howard had sufficient time to intervene on the arrest of Plaintiff, as well as the treatment of Plaintiff by Defendant Mooney. Indeed, by the time Defendant Howard had arrived, Plaintiff was in the process of being handcuffed and had just been slammed against his truck. Defendant Howard had the opportunity to intervene as to the arrest of Plaintiff, as to the excessive force used by Defendant Mooney in effectuating the arrest and shoving him into the back of Mooney's patrol vehicle, and by taking Plaintiff to the police station for processing at the holding cell.

35.    The force applied by Defendant Mooney was entirely unreasonable and unjustified. Defendant Mooney and Defendant Howard knew that Plaintiff was an elderly man and, based on their recent traffic stop, had no evidence suggesting that Plaintiff might pose a threat of harm to the defendants or himself. Moreover, he showed no signs of violent tendencies. In fact, Defendant Howard remarked on Plaintiff's age, noting Plaintiff appeared confused and annoyed at being stopped for a traffic infraction after running a red light, yet clearly understanding that Plaintiff

was not a violent or threatening person. This made the use of aggressive force objectively and subjectively unnecessary. Despite this awareness, Defendant Mooney handled Plaintiff roughly, using excessive force that caused bruising and sparked such fear in Plaintiff that his heart rate increased, ultimately leading to a heart attack.

36.     Notably, when Defendant Mooney was handcuffing Plaintiff and used grossly excessive force, Defendant Howard also asked Mooney why Plaintiff was being arrested and was confused about the reason for the arrest.[8]

37.     Defendant Mooney forcibly pushed Plaintiff into the back of his patrol vehicle and threatened to grab him and throw him into the backseat, despite Plaintiff not physically resisting in any manner.

38.     After Defendant Mooney had finished throwing Plaintiff into the back of his patrol vehicle with Defendant Howard watching along, Defendants Rivera and Cook arrived at the scene after Plaintiff had been shoved into the back of the patrol vehicle. Their arrival came approximately one minute after Defendant Mooney put Plaintiff in the back of his patrol vehicle. Upon their arrival, Defendants Mooney and Howard began to exasperatedly stutter through an explanation of why Plaintiff was being arrested. Defendant Mooney argued that the basis for Plaintiff's arrest

---

[8] Defendant Howard's confusion here underscores that the arrest was baseless and merely a malicious attempt to punish Plaintiff and boost Defendant Mooney's precariously situated ego.

was reckless driving while continuing to make remarks about Plaintiff "playing games." As Defendant Mooney attempted to coherently explain himself, Defendant Rivera laughed at Defendant Mooney's explanation.

39.   Defendant Rivera and Defendant Cook arrived at a such a time that they were able to observe Plaintiff detained and in visible distress in the back of Defendant Mooney's patrol vehicle. Having arrived only approximately one minute after Plaintiff was put into the back of Defendant Mooney's patrol vehicle, Defendant Rivera and defendant Cook (as well as Defendant Howard, who arrived earlier) all had ample time and opportunity to intervene here.

40.   Defendants Rivera and Cook (as well as Defendant Howard, who had arrived earlier) all affirmatively participated in the arrest of Plaintiff, and failed to intervene with ample opportunity when presented with Defendant Mooney's story and excuse to arrest Plaintiff. Indeed, Defendant Rivera and Defendant Cook (as well as Defendant Howard) all agreed with Defendant Mooney's version of the events that justified placing Plaintiff in custody and through their own actions and/or omissions allowed for the arrest to occur.

41.   Defendant Rivera and Defendant Cook (as well as Defendant Howard) had the opportunity to intervene while Plaintiff was being held in the back of Defendant Mooney's patrol vehicle and had ample time and opportunity to prevent further mistreatment and violations of Plaintiff's constitutional rights. Defendant

Rivera and Cook (as well as Defendant Howard) were positioned to push back on Defendant Mooney's narrative of the events, question whether the arrest was actually predicated on probable cause, or weigh in on Plaintiff's medical needs given his elderly status and apparent heart condition.

42.   Before leaving the scene, Defendants Mooney and Howard searched Plaintiff's truck and quickly noticed a bottle of nitroglycerin pills, and they quickly determined that Plaintiff suffered from heart problems. The time that Defendants Mooney and Howard discovered the nitroglycerin pills was at 4:49 AM.[9]

43.   Due to the stress and fear induced by the arrest and the aggressive conduct of Defendants Mooney, Plaintiff's heart rate became markedly elevated, causing Plaintiff to experience sharp, intense chest pain.

44.   Plaintiff repeatedly told Defendant Mooney that he was experiencing chest pain, had a heart condition, had a scheduled surgery in less than two weeks, and needed his nitroglycerin pills. Defendant Mooney dismissed these requests and prevented Plaintiff from accessing his heart medication.

45.   After Defendant Mooney and Plaintiff arrived at the police department, Defendant Mooney continued to handle Plaintiff aggressively, yanking him from the

---

[9] The discovery of the nitroglycerin pills was made by Defendant Howard. Defendant Mooney agreed with Defendant Howard's intuition that the presence of the pills indicated that the Plaintiff had heart problems and clearly required the pills.

patrol car, shoving him through the police department to the holding cell, and pushing him against the wall outside the holding cell.

46.    Throughout their encounter, Defendant Mooney continued to dismiss Plaintiff's concerns regarding the rough treatment and lack of access to his heart medication, including when Plaintiff asked Defendant Mooney for access to his nitroglycerin pills at approximately 4:56 AM when Plaintiff was being put in the holding cell.

47.    After removing the handcuffs—tightening them even more painfully before releasing them—Defendant Mooney searched him and placed him in lockup.

48.    As a result of the extreme physical and emotional stress inflicted on Plaintiff by Defendant Mooney and the continued withholding of his heart medication, Plaintiff's chest pain continued to worsen while he sat in the holding cell, causing extreme, paralyzing pain. Plaintiff called out to Defendant Mooney and anyone nearby for help, but was ignored and left without care for an extended period.

49.    Eventually, another police department officer noticed Plaintiff's cries for help and disregarded Defendant Mooney's insistence that Plaintiff was not in pain and was only suffering from "incarceritis." The officer called EMS to provide care for Plaintiff's severe chest pain. Plaintiff described the pain as sharp and rated it 8/10 on the pain scale.

50.    The Fort Walton Beach Fire Department arrived at the police department in response to the 911 call to Plaintiff. As the Fort Walton Beach Fire Department attempted to provide medical treatment to Plaintiff Defendant Mooney again intervened and falsely claimed that Plaintiff was "running from the police" at the time of his arrest.[10] Upon information and belief, this assertion was a thinly veiled attempt to justify Defendant Mooney's conduct and to prevent Plaintiff from receiving medical treatment for as long as possible.[11]

51.    After stabilizing Plaintiff, Defendant Mooney demanded that Plaintiff was being an "asshole," and insisted he be taken to jail and was not allowed to be brought to the hospital. Due to the significant risks Plaintiff faced if he was denied access to medical treatment, the medics with the Fort Walton Beach Fire Department overruled Defendant Mooney's demand that Plaintiff be prevented from receiving further medical care and instead be taken to jail.

52.    Indeed, the medics were delayed in rushing Plaintiff to the hospital due to Defendant Mooney's unwillingness to allow the Plaintiff to be taken for emergency treatment, despite the fact that Plaintiff had clearly communicated to Defendant Mooney and the medics the nature of his extreme pain, his denial of

---

[10] Approximately one hour had passed between Plaintiff's arrival at the police department and EMS's arrival to attend to him for the heart attack he suffered while in the holding cell.

[11] Defendant Mooney's body camera footage (as well as Plaintiff's dash camera footage) shows that Plaintiff never ran from him or any other responding officer. In fact, the only person in the footage who appeared to be out of breath was Defendant Mooney.

lifesaving medication by Mooney, and his medical history. This history included high blood pressure and a 70% blockage of his main artery, with surgery scheduled less than two weeks after the incident. Ultimately, EMS personnel had to override Defendant Mooney to transfer Plaintiff to the hospital.[12]

53.     The claim that Plaintiff was suffering from "incarceritis," when juxtaposed with Defendant Mooney's abundant knowledge of Plaintiff's elderly age, upcoming surgery, marked reliance on heart medication, and symptoms resembling those of a heart attack, demonstrates how ruthless and cruel Defendant Mooney was toward Plaintiff.[13] Indeed, Defendant Mooney was determined to and ultimately was successful in denying Plaintiff access to EMS and subsequently access to emergency treatment at from the hospital.

54.     Upon arrival at HCA Florida Fort Walton-Destin Hospital, Plaintiff was diagnosed with an acute myocardial infarction (heart attack) that had occurred while Plaintiff was detained at the Fort Walton Beach Police Department. The attending cardiologist determined that the heart attack resulted directly from trauma caused by Defendant Mooney's excessive and unlawful use of force, and the denial of his

---

[12] Defendant Mooney was aware of most if not all of these facts already, yet chose to obstruct medical attention to Plaintiff, nonetheless.

[13] Unfortunately for the people of Fort Walton Beach, this ruthless, cruel conduct is not the first time Defendant Mooney has acted this way while working as an officer for Defendant FWB.

nitroglycerin pills to treat his heart problems. As a result, Plaintiff suffered a sudden, significant spike in blood pressure, triggering the medical emergency.

55.     As a result of the heart attack, Plaintiff had to travel to the Mayo Clinic and undergo an additional heart procedure that placed a stent in his heart to stabilize it following the heart attack.

56.     Plaintiff experienced life-altering symptoms following the wrongful arrest and heart attack, including extreme stress and trauma. Plaintiff has been unable to walk or exercise as he had before the wrongful arrest. Other routine life activities have now become immensely difficult or even impossible. Specifically, Plaintiff has noticed a sharp decline in his mobility and physical independence, which has diminished his quality of life and caused him to suffer.

57.     The diminished quality of life for Plaintiff has resulted in significant and persistent emotional effects. Since the wrongful arrest and heart attack, Plaintiff has frequently experienced nightmares and difficulty sleeping. When Plaintiff is able to fall asleep, the sleep is often restless and interrupted.

58.     Plaintiff now suffers from anxiety and is in constant fear of law enforcement, something Plaintiff had never experienced before the wrongful arrest.

The sight of police vehicles, encountering police officers, hearing sirens, or seeing police lights now triggers Plaintiff and causes immense stress and apprehension.[14]

59.     The conduct of Defendant Mooney stands out due to his role in ensuring Plaintiff was arrested at all costs, even though Mooney could not have seen Plaintiff make the U-turn because he was out of the line of sight to view the U-turn. Defendant Mooney was also solely responsible for the forceful and harsh handling of Plaintiff, with force sufficient to (and did) cause extensive bruising, frighten Plaintiff to the point of defecation, and caused a physiological stress response and spike in blood pressure, triggering a cardiac event. Defendant Mooney personally oversaw Plaintiff being taken to jail and was determined that he be incarcerated, even when it became overwhelmingly obvious to others that Plaintiff was suffering a medical emergency and needed immediate medical care—all in pursuit of his depraved goal to ensure Plaintiff faced criminal charges. Furthermore, Defendant Mooney knew that Plaintiff took nitroglycerin pills to manage a heart condition, having discovered this at the scene of the arrest. Despite this knowledge, he made sure Plaintiff did not have access to the medication while in the holding cell and refused access when Plaintiff, in intense and paralyzing pain, begged Mooney and the other officers for his medicine. Ultimately, Mooney's direct actions nearly caused Plaintiff's death,

---

[14] As a veteran, Plaintiff held law enforcement officers in the utmost regard for their service to their communities. Unfortunately, this reverence for law enforcement officers has been twisted into outright fear and apprehension due to the Defendants.

driven by his morally corrupt aim to punish Plaintiff for being an "asshole," as he reportedly told the Fort Walton Beach Fire Department, who provided care following the cardiac incident.

60. Furthermore, Plaintiff has suffered additional economic and reputational harm, including being forced to undergo criminal proceedings based on Defendants Mooney's fabricated lies, which resulted in his prosecution. Although the case was eventually terminated once the District Attorney recognized its clear baselessness of the arrest, this did not negate the fact that Plaintiff was deprived of his freedom, had to hire a criminal defense attorney, and sustained life-threatening injuries while in police custody.

61. As noted above, this is not the first time Defendant Mooney has shown ruthless indifference toward the people of Fort Walton Beach. In fact, Defendant Mooney has a documented pattern of use of violating the rights of citizens, including by way of using excessive force and making false arrests while employed by Defendant FWB as an officer for FWBPD. In one instance, Defendant Mooney placed his service weapon against the back of a civilian's head who had already surrendered to his show of authority. In a separate incident, Defendant Mooney beat a motorcyclist who had surrendered to his show of authority, repeatedly punching the motorcyclist in the nose. Defendant Mooney has also been cited for making threats of serious bodily harm and even death to fellow FWBPD officers.

62. Indeed, Defendant FWB has been intimately aware of Defendant Mooney's persistent violations of the rights of the people of Fort Walton Beach, as evidenced by the various informal and formal complaints and incidents involving improper conduct and excessive force made against Defendant Mooney.

63. Furthermore, Plaintiff is the latest victim of unwarranted violence by a law enforcement officer in Okaloosa County, a troubling trend that has become increasingly frequent in recent years.

64. Defendants Mooney, Howard, Rivera, and Cook's conduct exhibited the utmost disregard for Plaintiff's rights, safety, and dignity. Defendants Mooney and Howard detained and arrested Plaintiff without justification and handled Plaintiff with extreme recklessness, certain to cause injury (thereby amounting to their affirmative participation). Defendants Rivera and Cook sat back and allowed this unjustifiable treatment to proceed and proved with explicit and/or implicit approval (thereby amounting to their failure to intervene with ample opportunity). Further, Defendant Mooney thwarted numerous attempts at medical intervention for Plaintiff when he sought medication and care for his heart problems and the resulting heart attack suffered while in custody.

65. Defendant Mooney was responsible for initiating and/or causing the continuation of criminal proceedings against Plaintiff by placing Plaintiff under arrest, personally ensuring Plaintiff was taken to the police station for holding,

providing statements, reports, and/or other information forming the basis of the charges.

66.     Now, Plaintiff brings this civil suit against Defendants FWB, Mooney, Howard, Rivera, and Cook to recover for the continuous harms Defendants have maliciously and/or tortiously caused Plaintiff.

67.     Video footage exists of certain parts of the events alleged herein, including the first traffic stop, the second traffic stop where Plaintiff was arrested, the drive from the scene of the arrest to the police station, and footage of Plaintiff being brought to the holding cell at the police station. The video footage includes body camera footage worn by Defendant Mooney, Defendant Howard, and Plaintiff's dash camera footage. The footage does not capture the entirety of the encounter, including the full extent of the force used and Plaintiff's medical distress and subsequent medical event.

**COUNT I**
**FALSE ARREST BROUGHT UNDER 42 U.S.C. § 1983**
**(Against Defendant Mooney in his Individual Capacity)**

68.     Plaintiff realleges, adopts, and incorporates by reference paragraphs 1-29 and 49-55 above as though set forth herein.

69.     The count sets forth claims against Defendant Mooney for his violation of Plaintiff's right to be free from false arrest under the Fourth and Fourteenth

Amendments to the United States Constitution. These violations were of the type and character as to which any reasonable person would be aware.

70. Defendant Mooney operated to violate Plaintiff's civil and constitutional rights. These claims are brought through 42 U.S.C. § 1983.

71. Defendant Mooney acted with bad faith or with malicious purpose, or in a manner exhibiting willful and wanton disregard of human rights, safety, and/or property.

72. Defendant Mooney, while acting under the color of state law, violated Plaintiff's clearly established rights under the Fourth and Fourteenth Amendment to the United States Constitution by intentionally and proximately causing the unlawful arrest of Plaintiff. Defendant Mooney misused his power, possessed by virtue of state law and made possible only because he was clothed with the authority of state law. Thus, the violations of Plaintiff's rights are actionable pursuant to 42 U.S.C. § 1983.

73. Defendant Mooney arrested Plaintiff for reckless driving, yet lacked probable cause or even arguable probable cause to have done so. As alleged herein, Defendant Mooney had driven past Plaintiff and based on the speed that Mooney drove and the curved nature of Perry Avenue, was unable to observe or otherwise apprehend that Plaintiff was making a U-turn over a yellow line. Despite lacking

legal justification, Defendant Mooney placed Plaintiff under arrest for reckless driving.

74.    The foregoing actions of Defendant Mooney were willful, wanton, and in reckless disregard of Plaintiff's rights, and were engaged in without any lawful justification and in the absence of probable cause. Defendant Mooney knew or should have known there was no probable cause to arrest Plaintiff, or otherwise proximately cause his arrest, given the circumstances present and the clearly established law on the proof needed to establish arguable probable cause.

75.    Based on the facts and circumstances and on applicable law, no reasonable law enforcement officer or person in Defendant Mooney's position could have concluded that there existed any probable cause to believe that Plaintiff had committed an offense for asking a law enforcement officer for the return of his property, namely an insurance card that had been seized during a traffic stop and never returned.

76.    As a direct and proximate result of Defendant Mooney's actions, Plaintiff has been damaged, which damages include: permanent physical injuries, mental anguish, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, lost wages, and loss of other emoluments. These damages have occurred in the past, are continuing in the present, and are likely to continue into the future.

WHEREFORE, Plaintiff, respectfully demands judgment against Defendant Mooney and in favor of Plaintiff as to Count I, for compensatory damages, punitive damages, declaratory relief declaring that Defendant Mooney violated the Fourth and Fourteenth Amendment rights of Plaintiff when Defendant Mooney unlawfully and without justification detained, arrested, and personally saw to the prolonged and drawn out stay in lockdown, costs, pre- and post-judgment interest, and any damages and other relief that this Court deems just, appropriate, and proper.

## COUNT II
### FALSE ARREST BROUGHT UNDER 42 U.S.C. § 1983
### (Against Defendant Howard in his Individual Capacity)

77. Plaintiff realleges, adopts, and incorporates by reference paragraphs 1-33 and 49-55 above as though set forth herein.

78. The count sets forth claims against Defendant Howard for his violation of Plaintiff's right to be free from false arrest under the Fourth and Fourteenth Amendments to the United States Constitution. These violations were of the type and character as to which any reasonable person would be aware.

79. Defendant Howard operated to violate Plaintiff's civil and constitutional rights. These claims are brought through 42 U.S.C. § 1983.

80. Defendant Howard acted with bad faith or with malicious purpose, or in a manner exhibiting willful and wanton disregard of human rights, safety, and/or property.

81.    Defendant Howard, while acting under the color of state law, violated Plaintiff's clearly established rights under the Fourth and Fourteenth Amendments to the United States Constitution by intentionally and proximately causing the unlawful arrest of Plaintiff. Defendant Howard misused his power, possessed by virtue of state law and made possible only because he was clothed with the authority of state law. Thus, the violations of Plaintiff's rights are actionable pursuant to 42 U.S.C. § 1983.

82.    Defendant Howard assisted Defendant Mooney in the arrest of Plaintiff for reckless driving, yet lacked probable cause or even arguable probable cause to have done so. As alleged herein, Defendant Mooney had driven past Plaintiff and based on the speed that Mooney drove and the curved nature of Perry Avenue, was unable to observe or otherwise apprehend that Plaintiff was making a U-turn over a yellow line. Despite lacking legal justification, Defendant Mooney placed Plaintiff under arrest for reckless driving. Defendant Howard arrived to the scene of the arrest as Plaintiff was being put in custody and assisted Defendant Mooney in making sure Plaintiff was handcuffed, submitted to their force, and put into Mooney's patrol vehicle.

83.    The foregoing actions of Defendant Howard were willful, wanton, and in reckless disregard of Plaintiff's rights, and were engaged in without any lawful justification and in the absence of probable cause. Defendant Howard knew or

should have known there was no probable cause to arrest Plaintiff, or otherwise proximately cause his arrest, given the circumstances present and the clearly established law on the proof needed to establish arguable probable cause.

84.    Based on the facts and circumstances and on applicable law, no reasonable law enforcement officer or person in Defendant Howard's position could have concluded that there existed any probable cause to believe that Plaintiff had committed an offense for asking a law enforcement officer for the return of his property, namely an insurance card that had been seized during a traffic stop and never returned.

85.    As a direct and proximate result of Defendant Howard's actions, Plaintiff has been damaged, which damages include: permanent physical injuries, mental anguish, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, lost wages, and loss of other emoluments. These damages have occurred in the past, are continuing in the present, and are likely to continue into the future.

**WHEREFORE**, Plaintiff, respectfully demands judgment against Defendant Howard and in favor of Plaintiff as to Count II, for compensatory damages, punitive damages, declaratory relief declaring that Defendant Howard violated the Fourth and Fourteenth Amendment rights of Plaintiff when Defendant Howard unlawfully and without justification detained, arrested, and personally saw to the prolonged and

drawn out stay in lockdown, costs, pre- and post-judgment interest, and any damages and other relief that this Court deems just, appropriate, and proper.

## COUNT III
## FALSE ARREST BROUGHT UNDER 42 U.S.C. § 1983
### (Against Defendant Rivera in his Individual Capacity)

86.    Plaintiff realleges, adopts, and incorporates by reference paragraphs 1-24, 25-36, and 49-55 above as though set forth herein.

87.    The count sets forth claims against Defendant Rivera for his violation of Plaintiff's right to be free from false arrest under the Fourth and Fourteenth Amendments to the United States Constitution. These violations were of the type and character as to which any reasonable person would be aware.

88.    Defendant Rivera operated to violate Plaintiff's civil and constitutional rights. These claims are brought through 42 U.S.C. § 1983.

89.    Defendant Rivera acted with bad faith or with malicious purpose, or in a manner exhibiting willful and wanton disregard of human rights, safety, and/or property.

90.    Defendant Rivera, while acting under the color of state law, violated Plaintiff's clearly established rights under the Fourth and Fourteenth Amendments to the United States Constitution by intentionally and proximately causing the unlawful arrest of Plaintiff. Defendant Rivera misused his power, possessed by virtue of state law and made possible only because he was clothed with the authority

– 29 –

of state law. Thus, the violations of Plaintiff's rights are actionable pursuant to 42 U.S.C. § 1983.

91.     The foregoing actions of Defendant Rivera were willful, wanton, and in reckless disregard of Plaintiff's rights, and were engaged in without any lawful justification and in the absence of probable cause. Defendant Rivera knew or should have known there was no probable cause to arrest Plaintiff, or otherwise proximately cause his arrest, given the circumstances present and the clearly established law on the proof needed to establish arguable probable cause.

92.     Based on the facts and circumstances and on applicable law, no reasonable law enforcement officer or person in Defendant Rivera's position have concluded that there existed any probable cause to believe that Plaintiff had committed an offense for asking a law enforcement officer for the return of his property, namely an insurance card that had been seized during a traffic stop and never returned.

93.     As a direct and proximate result of Defendant Rivera's actions, Plaintiff has been damaged, which damages include: permanent physical injuries, mental anguish, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, lost wages, and loss of other emoluments. These damages have occurred in the past, are continuing in the present, and are likely to continue into the future.

**WHEREFORE**, Plaintiff, respectfully demands judgment against Defendant Rivera and in favor of Plaintiff as to Count III, for compensatory damages, punitive damages, declaratory relief declaring that Defendant Rivera violated the Fourth and Fourteenth Amendment rights of Plaintiff when Defendant Rivera unlawfully and without justification detained, arrested, and personally saw to the prolonged and drawn out stay in lockdown, costs, pre- and post-judgment interest, and any damages and other relief that this Court deems just, appropriate, and proper.

## COUNT IV
### FALSE ARREST BROUGHT UNDER 42 U.S.C. § 1983
### (Against Defendant Cook in his Individual Capacity)

94. Plaintiff realleges, adopts, and incorporates by reference paragraphs 1-24, 35-36, and 49-55 above as though set forth herein.

95. The count sets forth claims against Defendant Cook for his violation of Plaintiff's right to be free from false arrest under the Fourth and Fourteenth Amendments to the United States Constitution. These violations were of the type and character as to which any reasonable person would be aware.

96. Defendant Cook operated to violate Plaintiff's civil and constitutional rights. These claims are brought through 42 U.S.C. § 1983.

97. Defendant Cook acted with bad faith or with malicious purpose, or in a manner exhibiting willful and wanton disregard of human rights, safety, and/or property.

98. Defendant Cook, while acting under the color of state law, violated Plaintiff's clearly established rights under the Fourth and Fourteenth Amendments to the United States Constitution by intentionally and proximately causing the unlawful arrest of Plaintiff. Defendant Cook misused his power, possessed by virtue of state law and made possible only because he was clothed with the authority of state law. Thus, the violations of Plaintiff's rights are actionable pursuant to 42 U.S.C. § 1983.

99. The foregoing actions of Defendant Cook were willful, wanton, and in reckless disregard of Plaintiff's rights, and were engaged in without any lawful justification and in the absence of probable cause. Defendant Cook knew or should have known there was no probable cause to arrest Plaintiff, or otherwise proximately cause his arrest, given the circumstances present and the clearly established law on the proof needed to establish arguable probable cause.

100. Based on the facts and circumstances and on applicable law, no reasonable law enforcement officer or person in Defendant Cook's position have concluded that there existed any probable cause to believe that Plaintiff had committed an offense for asking a law enforcement officer for the return of his property, namely an insurance card that had been seized during a traffic stop and never returned.

101.    As a direct and proximate result of Defendant Cook's actions, Plaintiff has been damaged, which damages include: permanent physical injuries, mental anguish, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, lost wages, and loss of other emoluments. These damages have occurred in the past, are continuing in the present, and are likely to continue into the future.

**WHEREFORE**, Plaintiff, respectfully demands judgment against Defendant Cook and in favor of Plaintiff as to Count IV, for compensatory damages, punitive damages, declaratory relief declaring that Defendant Cook violated the Fourth and Fourteenth Amendment rights of Plaintiff when Defendant Cook unlawfully and without justification detained, arrested, and personally saw to the prolonged and drawn out stay in lockdown, costs, pre- and post-judgment interest, and any damages and other relief that this Court deems just, appropriate, and proper.

**COUNT V**
**COMMON LAW FALSE IMPRISONMENT/ARREST**
*Pendent Claim Brought Pursuant to 28 U.S.C. § 1367(a)*
**(Against Defendant Mooney in his Individual Capacity)**

102.    Plaintiff realleges, adopts, and incorporates by reference paragraphs 1-29 and 49-55 above as though set forth herein.

103.    This count sets forth claims against Defendant Mooney for common law false imprisonment/arrest, and is pled in the alternative. For purposes of this count, Plaintiff alleges that Defendant Mooney acted in bad faith or with malicious

purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, and/or property.

104. Plaintiff is entitled to relief against Defendant Mooney in that Defendant Mooney's intentional and malicious misconduct proximately caused the unlawful detention and restraint of Plaintiff and deprivation of his liberty against his will and without any reasonable cause.

105. Specifically, this unlawful restraint and deprivation of Plaintiff's liberty was also accomplished by Defendant Mooney proximately causing Plaintiff to be confined to an area that he did not wish to be confined. Namely, when Defendant Mooney detained Plaintiff in the parking lot of The Block, placed him in the back of his patrol vehicle, and in lockup at the Fort Walton Beach Police Department.

106. Defendant Mooney intended to cause Plaintiff's confinement or had knowledge that such confinement of Plaintiff will, to a substantial certainty, result from his actions.

107. At all times relevant to this action, and at all times during which the Plaintiff was being unlawfully restrained, he was restrained against his will, without consent, and was such that he was not free to leave his place of confinement at any point.

108. The restraint and arrest of Plaintiff was unlawful and unreasonable in that it was procured without any lawful justification and in the absence of probable

cause; such arrest and confinement of Plaintiff were not otherwise privileged. Indeed, as supported by Defendant Mooney's own body camera footage and Plaintiff's dash camera footage, the basis for the arrest of Plaintiff was without legal or factual justification, and instead made in furtherance of Defendant Mooney's objective to weaponize the badge he wore as a method to personally inflict punishment upon Plaintiff through the deprivation of his liberty.

109.  As a direct and proximate result of Defendant Mooney's actions, Plaintiff has been damaged, which damages include: permanent physical injuries, mental anguish, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, lost wages, and loss of other emoluments. These damages have occurred in the past, are continuing in the present, and are likely to continue into the future.

**WHEREFORE**, Plaintiff, respectfully demands judgment against Defendant Mooney and in favor of Plaintiff as to Count V, for compensatory damages, punitive damages, declaratory relief declaring that Plaintiff's arrest lacked probable cause, violated Plaintiff's Fourth and Fourteenth Amendment rights, and constituted a wrongful arrest, costs, pre- and post-judgment interest, and any damages and other relief that this Court deems just, appropriate, and proper.

## COUNT VI
## COMMON LAW FALSE IMPRISONMENT/ARREST
*Pendent Claim Brought Pursuant to 28 U.S.C. § 1367(a)*
**(Against Defendant Howard in his Individual Capacity)**

– 35 –

110.   Plaintiff realleges, adopts, and incorporates by reference paragraphs 1-33 and 49-55 above as though set forth herein.

111.   This count sets forth claims against Defendant Howard for common law false imprisonment/arrest, and is pled in the alternative. For purposes of this count, Plaintiff alleges that Defendant Howard acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, and/or property.

112.   Plaintiff is entitled to relief against Defendant Howard in that Defendant Howard's intentional and malicious misconduct proximately caused the unlawful detention and restraint of Plaintiff and deprivation of his liberty against his will and without any reasonable cause.

113.   Specifically, this unlawful restraint and deprivation Plaintiff's liberty was also accomplished by Defendant Howard proximately causing Plaintiff to be confined to an area that he did not wish to be confined. Namely, when Defendant Howard (and Defendant Mooney) detained Plaintiff in the parking lot of The Block, assisted in the placement of Plaintiff in the back of Defendant Mooney's patrol vehicle, and assisted in Plaintiff being placed in lockup at the Fort Walton Beach Police Department.

114. Defendant Howard intended to cause Plaintiff's confinement or had knowledge that such confinement of Plaintiff will, to a substantial certainty, result from his actions.

115. At all times relevant to this action, and at all times during which the Plaintiff was being unlawfully restrained, he was restrained against his will, without consent, and was such that he was not free to leave his place of confinement at any point.

116. The restraint and arrest of Plaintiff was unlawful and unreasonable in that it was procured without any lawful justification and in the absence of probable cause; such arrest and confinement of Plaintiff were not otherwise privileged. Indeed, as supported by Defendant Howard's (and Defendant Mooney's) own body camera footage and Plaintiff's dash camera footage, the basis for the arrest of Plaintiff was without legal or factual justification, and instead made in furtherance of Defendant Howard's objective to weaponize the badge he wore as a method to personally inflict punishment upon Plaintiff through the deprivation of his liberty.

117. As a direct and proximate result of Defendant Howard's actions, Plaintiff has been damaged, which damages include: permanent physical injuries, mental anguish, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, lost wages, and loss of other emoluments. These

damages have occurred in the past, are continuing in the present, and are likely to continue into the future.

**WHEREFORE**, Plaintiff, respectfully demands judgment against Defendant Howard and in favor of Plaintiff as to Count VI, for compensatory damages, punitive damages, declaratory relief declaring that Plaintiff's arrest lacked probable cause, violated Plaintiff's Fourth and Fourteenth Amendment rights, and constituted a wrongful arrest, costs, pre- and post-judgment interest, and any damages and other relief that this Court deems just, appropriate, and proper.

**COUNT VII**
**COMMON LAW FALSE IMPRISONMENT/ARREST**
*Pendent Claim Brought Pursuant to 28 U.S.C. § 1367(a)*
**(Against Defendant Rivera in his Individual Capacity)**

118.  Plaintiff realleges, adopts, and incorporates by reference paragraphs 1-24, 35-36, and 49-55 above as though set forth herein.

119.  This count sets forth claims against Defendant Rivera for common law false imprisonment/arrest, and is pled in the alternative. For purposes of this count, Plaintiff alleges that Defendant Rivera acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, and/or property.

120.  Plaintiff is entitled to relief against Defendant Rivera in that Defendant Rivera's intentional and malicious misconduct proximately caused the unlawful

detention and restraint of Plaintiff and deprivation of his liberty against his will and without any reasonable cause.

121. Specifically, this unlawful restraint and deprivation of Plaintiff's liberty was also accomplished by Defendant Rivera proximately causing Plaintiff to be confined to an area that he did not wish to be confined. Namely, when Defendant Rivera oversaw, ratified, and approved of the conduct of Defendant Mooney and Defendant Howard in detaining Plaintiff in the parking lot of The Block, placing Plaintiff in the back of Defendant Mooney's patrol vehicle, and in being placed in lockup at the Fort Walton Beach Police Department.

122. Defendant Rivera intended to cause and allow Plaintiff's confinement or had knowledge that such confinement of Plaintiff will, to a substantial certainty, result from his actions.

123. At all times relevant to this action, and at all times during which the Plaintiff was being unlawfully restrained, he was restrained against his will, without consent, and was such that he was not free to leave his place of confinement at any point.

124. The restraint and arrest of Plaintiff was unlawful and unreasonable in that it was procured without any lawful justification and in the absence of probable cause; such arrest and confinement of Plaintiff were not otherwise privileged. Indeed, as supported by Defendant Mooney and Howard's body camera footage and

Plaintiff's dash camera footage, the basis for the arrest of Plaintiff was without legal or factual justification, and instead made in furtherance of Defendant Rivera's shared objective with Defendant Mooney and Howard to weaponize the badge he wore as a method to personally inflict punishment upon Plaintiff through the deprivation of his liberty.

125.    As a direct and proximate result of Defendant Rivera's actions, Plaintiff has been damaged, which damages include: permanent physical injuries, mental anguish, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, lost wages, and loss of other emoluments. These damages have occurred in the past, are continuing in the present, and are likely to continue into the future.

**WHEREFORE**, Plaintiff, respectfully demands judgment against Defendant Rivera and in favor of Plaintiff as to Count VII, for compensatory damages, punitive damages, declaratory relief declaring that Plaintiff's arrest lacked probable cause, violated Plaintiff's Fourth Amendment rights, and constituted a wrongful arrest, costs, pre- and post-judgment interest, and any damages and other relief that this Court deems just, appropriate, and proper.

**COUNT VIII**
**COMMON LAW FALSE IMPRISONMENT/ARREST**
*Pendent Claim Brought Pursuant to 28 U.S.C. § 1367(a)*
**(Against Defendant Cook in his Individual Capacity)**

126. Plaintiff realleges, adopts, and incorporates by reference paragraphs 1-24, 35-36, and 49-55 above as though set forth herein.

127. This count sets forth claims against Defendant Cook for common law false imprisonment/arrest, and is pled in the alternative. For purposes of this count, Plaintiff alleges that Defendant Cook acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, and/or property.

128. Plaintiff is entitled to relief against Defendant Cook in that Defendant Cook's intentional and malicious misconduct proximately caused the unlawful detention and restraint of Plaintiff and deprivation of his liberty against his will and without any reasonable cause.

129. Specifically, this unlawful restraint and deprivation of Plaintiff's liberty was also accomplished by Defendant Cook proximately causing Plaintiff to be confined to an area that he did not wish to be confined. Namely, when Defendant Cook oversaw, ratified, and approved of the conduct of Defendant Mooney and Defendant Howard in detaining Plaintiff in the parking lot of The Block, placing Plaintiff in the back of Defendant Mooney's patrol vehicle, and in being placed in lockup at the Fort Walton Beach Police Department.

130. Defendant Cook intended to cause and allow Plaintiff's confinement or had knowledge that such confinement of Plaintiff will, to a substantial certainty, result from his actions.

131. At all times relevant to this action, and at all times during which the Plaintiff was being unlawfully restrained, he was restrained against his will, without consent, and was such that he was not free to leave his place of confinement at any point.

132. The restraint and arrest of Plaintiff was unlawful and unreasonable in that it was procured without any lawful justification and in the absence of probable cause; such arrest and confinement of Plaintiff were not otherwise privileged. Indeed, as supported by Defendants Mooney and Howard's body camera footage and Plaintiff's dash camera footage, the basis for the arrest of Plaintiff was without legal or factual justification, and instead of the shared objective with Defendant Mooney and Howard to weaponize the badge he wore as a method to personally inflict punishment upon Plaintiff through the deprivation of his liberty.

133. As a direct and proximate result of Defendant Cook's actions, Plaintiff has been damaged, which damages include: permanent physical injuries, mental anguish, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, lost wages, and loss of other emoluments. These damages have

occurred in the past, are continuing in the present, and are likely to continue into the future.

**WHEREFORE**, Plaintiff, respectfully demands judgment against Defendant Cook and in favor of Plaintiff as to Count VIII, for compensatory damages, punitive damages, declaratory relief declaring that Plaintiff's arrest lacked probable cause, violated Plaintiff's Fourth Amendment rights, and constituted a wrongful arrest, costs, pre- and post-judgment interest, and any damages and other relief that this Court deems just, appropriate, and proper.

## COUNT IX
## COMMON LAW FALSE IMPRISONMENT/ARREST
### *Pendent Claim Brought Pursuant to 28 U.S.C. § 1367(a)*
**(Against Defendant FWB)**

134.   Plaintiff realleges, adopts, and incorporates by reference paragraphs 1-36 and 49-55 above as though set forth herein.

135.   This count sets forth claims against Defendant FWB for common law false imprisonment/arrest, and is pled in the alternative. For purposes of this count, Plaintiff alleges that Defendants Mooney, Howard, Rivera, and Cook, as officers, employees, and/or agents of Defendant FWB, were not acting in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

136.   Plaintiff is entitled to relief against Defendant FWB in that this Defendant is responsible for the conduct of its officers, employees, and agents,

including Defendants Mooney, Howard, Rivera, and Cook, who were acting within the course and scope of their employment.

137.   Defendant FWB, acting by and through its agents and employees, including Defendants Mooney, Howard, Rivera, and Cook, proximately caused the unlawful detention and restraint of Plaintiff and deprivation of his liberty against his will and without any reasonable cause.

138.   At all times relevant to this action, and at all times during which the Plaintiff was being unlawfully restrained, he was restrained against his will and without consent, such that he was not free to leave his place of confinement.

139.   The restraint and arrest of Plaintiff was unlawful and unreasonable in that it was procured without any lawful justification and in the absence of probable cause; and such arrest and confinement of Plaintiff was not otherwise privileged. Indeed, as supported by Defendant Mooney (and Howard's body camera footage) and Plaintiff's dash camera footage, the basis for the arrest of Plaintiff was without legal or factual justification.

140.   As a direct and proximate result of Defendants Mooney, Howard, Rivera, and Cook's actions, for which Defendant FWB is responsible, Plaintiff has been damaged, which damages include: permanent physical injuries, mental anguish, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, lost wages, and loss of other emoluments. These damages have

occurred in the past, are continuing in the present, and are likely to continue into the future.

**WHEREFORE**, Plaintiff, respectfully demands judgment against Defendant FWB and in favor of Plaintiff as to Count IX, for compensatory damages, costs, pre- and post-judgment interest, and any damages and other relief that this Court deems just, appropriate, and proper.

## COUNT X
### MALICIOUS PROSECUTION UNDER 42 U.S.C. § 1983
### (Against Defendant Mooney in his Individual Capacity)

141. Plaintiff realleges, adopts, and incorporates by reference paragraphs 1-29 and 55 above as though set forth herein.

142. The count sets forth claims against Defendant Mooney for his violation of Plaintiff's right to be free from malicious prosecution under the Fourth and Fourteenth Amendments to the United States Constitution. These violations were of the type and character as to which any reasonable person would be aware.

143. The Fourth and Fourteenth Amendments to the United States Constitution protects individuals from seizures, including seizures that result from the initiation or continuation of a criminal prosecution without probable cause, where that prosecution results in a deprivation of liberty consistent with a seizure.

144. Defendant Mooney acted in bad faith or with malicious purpose, or in a manner exhibiting willful and wanton disregard of human rights, safety, and/or property.

145. Defendant Mooney, while acting under color of state law, violated Plaintiff's clearly established right under the Fourth Amendment and Fourteenth Amendments to the United States Constitution by unlawfully and maliciously causing criminal proceedings to be instituted against him. Defendant Mooney misused his power, possessed by virtue of state law and made possible only because he was clothed with the authority of state law. Thus, the violations of Plaintiff's rights are actionable pursuant to 42 U.S.C. § 1983.

146. Defendant Mooney caused the commencement and/or continuation of criminal proceedings against Plaintiff when Defendant Mooney caused the criminal prosecution to be initiated when he placed him under arrest without lawful reason or justification.

147. There was no probable cause or reasonable basis in fact or in law for Defendant Mooney to cause commencement of the criminal proceedings against Plaintiff.

148. Defendant Mooney acted with malice in initiating the criminal proceedings against Plaintiff, as well as in instigating Plaintiff's unlawful arrest, and

Defendant Mooney knew that his actions against Plaintiff were not supported by even arguable probable cause.

149. The criminal proceedings against Plaintiff resulted in a continuing seizure under the Fourth and Fourteenth Amendments, including Plaintiff's prolonged pretrial incarceration, mandatory court appearances, and restraint on liberty, which persisted until the prosecution was terminated.

150. The District Attorney terminated the criminal charges that were brought against Plaintiff following his unlawful arrest initiated in part by Defendant Mooney. Indeed, the prosecution terminated in Plaintiff's favor due to its blatant baselessness, as supported by the facts alleged herein.

151. Based on the facts and circumstances and on applicable law, no reasonable law enforcement officer or person in Defendant Mooney's position could have concluded that there existed any probable cause to believe that Plaintiff had committed a criminal offense. The law is well settled and clearly established that the actions of Defendant Mooney constituted malicious prosecution in violation of the Fourth and Fourteenth Amendments to the United States Constitution at the time that the actions were engaged in.

152. As a direct and proximate result of Defendant Mooney's actions, Plaintiff has been damaged, which damages include: permanent physical injuries, mental anguish, loss of capacity for the enjoyment of life, embarrassment,

humiliation, loss of reputation, lost wages, and loss of other emoluments. These damages have occurred in the past, are continuing at present, and likely to continue into the future.

**WHEREFORE**, Plaintiff, respectfully demands judgment against Defendant Mooney and in favor of Plaintiff as to Count X, for compensatory damages, punitive damages, costs, pre- and post-judgment interest, and any damages and other relief that this Court deems just, appropriate, and proper.

**COUNT XI**
**MALICIOUS PROSECUTION UNDER 42 U.S.C. § 1983**
**(Against Defendant Howard in his Individual Capacity)**

153.   Plaintiff realleges, adopts, and incorporates by reference paragraphs 1-33 and 55 above as though set forth herein.

154.   The count sets forth claims against Defendant Howard for his violation of Plaintiff's right to be free from malicious prosecution under the Fourth and Fourteenth Amendments to the United States Constitution. These violations were of the type and character as to which any reasonable person would be aware.

155. The Fourth and Fourteenth Amendments to the United States Constitution protects individuals from seizures, including seizures that result from the initiation or continuation of a criminal prosecution without probable cause, where that prosecution results in a deprivation of liberty consistent with a seizure.

156.   Defendant Howard acted in bad faith or with malicious purpose, or in a manner exhibiting willful and wanton disregard of human rights, safety, and/or property.

157.   Defendant Howard, while acting under color of state law, violated Plaintiff's clearly established right under the Fourth Amendment and Fourteenth Amendments to the United States Constitution by unlawfully and maliciously causing criminal proceedings to be instituted against him. Defendant Howard misused his power, possessed by virtue of state law and made possible only because he was clothed with the authority of state law. Thus, the violations of Plaintiff's rights are actionable pursuant to 42 U.S.C. § 1983.

158.   Defendant Howard caused the commencement and/or continuation of criminal proceedings against Plaintiff when Defendant Howard caused the criminal prosecution to be initiated when he assisted Defendant Mooney in placing Plaintiff under arrest without lawful reason or justification.

159.   There was no probable cause or reasonable basis in fact or in law for Defendant Howard to cause commencement of the criminal proceedings against Plaintiff.

160.   Defendant Howard acted with malice in initiating the criminal proceedings against Plaintiff, as well as in instigating Plaintiff's unlawful arrest, and

Defendant Howard knew that his actions against Plaintiff were not supported by even arguable probable cause.

161. The criminal proceedings against Plaintiff resulted in a continuing seizure under the Fourth and Fourteenth Amendments, including Plaintiff's prolonged pretrial incarceration, mandatory court appearances, and restraint on liberty, which persisted until the prosecution was terminated.

162. The District Attorney terminated the criminal charges that were brought against Plaintiff following his unlawful arrest initiated in part by Defendant Howard. Indeed, the prosecution terminated in Plaintiff's favor due to its blatant baselessness, as supported by the facts alleged herein.

163. Based on the facts and circumstances and on applicable law, no reasonable law enforcement officer or person in Defendant Howard's position could have concluded that there existed any probable cause to believe that Plaintiff had committed a criminal offense. The law is well settled and clearly established that the actions of Defendant Howard constituted malicious prosecution in violation of the Fourth and Fourteenth Amendments to the United States Constitution at the time that the actions were engaged in.

164. As a direct and proximate result of Defendant Howard's actions, Plaintiff has been damaged, which damages include: permanent physical injuries, mental anguish, loss of capacity for the enjoyment of life, embarrassment,

humiliation, loss of reputation, lost wages, and loss of other emoluments. These damages have occurred in the past, are continuing at present, and likely to continue into the future.

**WHEREFORE**, Plaintiff, respectfully demands judgment against Defendant and in favor of Plaintiff as to Count XI, for compensatory damages, punitive damages, costs, pre- and post-judgment interest, and any damages and other relief that this Court deems just, appropriate, and proper.

## COUNT XII
## MALICIOUS PROSECUTION UNDER 42 U.S.C. § 1983
### (Against Defendant Rivera in his Individual Capacity)

165. Plaintiff realleges, adopts, and incorporates by reference paragraphs 1-12, 35-36, and 55 above as though set forth herein.

166. The count sets forth claims against Defendant Rivera for his violation of Plaintiff's right to be free from malicious prosecution under the Fourth and Fourteenth Amendments to the United States Constitution. These violations were of the type and character as to which any reasonable person would be aware.

167. The Fourth and Fourteenth Amendments to the United States Constitution protects individuals from seizures, including seizures that result from the initiation or continuation of a criminal prosecution without probable cause, where that prosecution results in a deprivation of liberty consistent with a seizure.

168. Defendant Rivera acted in bad faith or with malicious purpose, or in a manner exhibiting willful and wanton disregard of human rights, safety, and/or property.

169. Defendant Rivera, while acting under color of state law, violated Plaintiff's clearly established right under the Fourth Amendment and Fourteenth Amendments to the United States Constitution by unlawfully and maliciously causing criminal proceedings to be instituted against him. Defendant Rivera misused his power, possessed by virtue of state law and made possible only because he was clothed with the authority of state law. Thus, the violations of Plaintiff's rights are actionable pursuant to 42 U.S.C. § 1983.

170. Defendant Rivera caused the commencement and/or continuation of criminal proceedings against Plaintiff when Defendant Rivera caused the criminal prosecution to be initiated when he failed to intervene and affirmatively participated in the arrest of Plaintiff

171. There was no probable cause or reasonable basis in fact or in law for Defendant Rivera to cause commencement of the criminal proceedings against Plaintiff.

172. Defendant Rivera acted with malice in initiating the criminal proceedings against Plaintiff, as well as in instigating Plaintiff's unlawful arrest, and

Defendant Rivera knew that his actions against Plaintiff were not supported by even arguable probable cause.

173. The criminal proceedings against Plaintiff resulted in a continuing seizure under the Fourth and Fourteenth Amendments, including Plaintiff's prolonged pretrial incarceration, mandatory court appearances, and restraint on liberty, which persisted until the prosecution was terminated.

174. The District Attorney terminated the criminal charges that were brought against Plaintiff following his unlawful arrest initiated in part by Defendant Rivera. Indeed, the prosecution terminated in Plaintiff's favor due to its blatant baselessness, as supported by the facts alleged herein.

175. Based on the facts and circumstances and on applicable law, no reasonable law enforcement officer or person in Defendant Rivera's position could have concluded that there existed any probable cause to believe that Plaintiff had committed a criminal offense. The law is well settled and clearly established that the actions of Defendant Rivera constituted malicious prosecution in violation of the Fourth and Fourteenth Amendments to the United States Constitution at the time that the actions were engaged in.

176. As a direct and proximate result of Defendant Rivera's actions, Plaintiff has been damaged, which damages include: permanent physical injuries, mental anguish, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss

of reputation, lost wages, and loss of other emoluments. These damages have occurred in the past, are continuing at present, and likely to continue into the future.

**WHEREFORE**, Plaintiff, respectfully demands judgment against Defendant Rivera and in favor of Plaintiff as to Count XII, for compensatory damages, punitive damages, costs, pre- and post-judgment interest, and any damages and other relief that this Court deems just, appropriate, and proper.

**COUNT XIII**
**MALICIOUS PROSECUTION UNDER 42 U.S.C. § 1983**
**(Against Defendant Cook in his Individual Capacity)**

177. Plaintiff realleges, adopts, and incorporates by reference paragraphs 1-12, 35-36, and 55 above as though set forth herein.

178. The count sets forth claims against Defendant Cook for his violation of Plaintiff's right to be free from malicious prosecution under the Fourth and Fourteenth Amendments to the United States Constitution. These violations were of the type and character as to which any reasonable person would be aware.

179. The Fourth and Fourteenth Amendments to the United States Constitution protects individuals from seizures, including seizures that result from the initiation or continuation of a criminal prosecution without probable cause, where that prosecution results in a deprivation of liberty consistent with a seizure.

180.   Defendant Cook acted in bad faith or with malicious purpose, or in a manner exhibiting willful and wanton disregard of human rights, safety, and/or property.

181.   Defendant Cook, while acting under color of state law, violated Plaintiff's clearly established right under the Fourth Amendment and Fourteenth Amendments to the United States Constitution by unlawfully and maliciously causing criminal proceedings to be instituted against him. Defendant Cook misused his power, possessed by virtue of state law and made possible only because he was clothed with the authority of state law. Thus, the violations of Plaintiff's rights are actionable pursuant to 42 U.S.C. § 1983.

182.   Defendant Cook caused the commencement and/or continuation of criminal proceedings against Plaintiff when Defendant Cook caused the criminal prosecution to be initiated when he failed to intervene and affirmatively participated in the arrest of Plaintiff.

183.   There was no probable cause or reasonable basis in fact or in law for Defendant Cook to cause commencement of the criminal proceedings against Plaintiff.

184.   Defendant Cook acted with malice in initiating the criminal proceedings against Plaintiff, as well as in instigating Plaintiff's unlawful arrest, and

Defendant Cook knew that his actions against Plaintiff were not supported by even arguable probable cause.

185. The criminal proceedings against Plaintiff resulted in a continuing seizure under the Fourth and Fourteenth Amendments, including Plaintiff's prolonged pretrial incarceration, mandatory court appearances, and restraint on liberty, which persisted until the prosecution was terminated.

186. The District Attorney terminated the criminal charges that were brought against Plaintiff following his unlawful arrest initiated in part by Defendant Cook. Indeed, the prosecution terminated in Plaintiff's favor due to its blatant baselessness, as supported by the facts alleged herein.

187. Based on the facts and circumstances and on applicable law, no reasonable law enforcement officer or person in Defendant Cook's position could have concluded that there existed any probable cause to believe that Plaintiff had committed a criminal offense. The law is well settled and clearly established that the actions of Defendant Cook constituted malicious prosecution in violation of the Fourth and Fourteenth Amendments to the United States Constitution at the time that the actions were engaged in.

188. As a direct and proximate result of Defendant Cook's actions, Plaintiff has been damaged, which damages include: permanent physical injuries, mental anguish, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss

of reputation, lost wages, and loss of other emoluments. These damages have occurred in the past, are continuing at present, and likely to continue into the future.

**WHEREFORE**, Plaintiff, respectfully demands judgment against Defendant and in favor of Plaintiff as to Count XIII, for compensatory damages, punitive damages, costs, pre- and post-judgment interest, and any damages and other relief that this Court deems just, appropriate, and proper.

## COUNT XIV
## COMMON LAW MALICIOUS PROSECUTION
### *Pendent Claim Brought Pursuant to 28 U.S.C. § 1367(a)*
**(Against Defendant Mooney in his Individual Capacity)**

189. Plaintiff realleges, adopts, and incorporates by reference paragraphs 1-29 and 55 above as though set forth herein.

190. This count sets forth claims against Defendant Mooney for common law malicious prosecution, and is pled in the alternative. For purposes of this count, Plaintiff alleges that Defendant Mooney acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, and/or property.

191. Defendant Mooney caused the commencement and/or continuation of criminal proceedings against Plaintiff.

192. There was no probable cause or reasonable basis in fact or law for Defendant Mooney to cause commencement of the criminal proceedings against Plaintiff.

193. Defendant Mooney acted with malice in initiating the criminal proceedings against Plaintiff, as well as in instigating Plaintiff's unlawful arrest, and Defendant Mooney knew that his actions against Plaintiff were not supported by even arguable probable cause.

194. As a direct and proximate result of Defendant Mooney's actions, Plaintiff has been damaged, which damages include: permanent physical injuries, mental anguish, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, lost wages, and loss of other emoluments. These damages have occurred in the past, are continuing in the present, and likely to continue into the future.

**WHEREFORE**, Plaintiff, respectfully demands judgment against Defendant Mooney and in favor of Plaintiff as to Count XIV, for compensatory damages, punitive damages, costs, pre- and post-judgment interest, and any damages and other relief that this Court deems just, appropriate, and proper.

### COUNT XV
### COMMON LAW MALICIOUS PROSECUTION
*Pendent Claim Brought Pursuant to 28 U.S.C. § 1367(a)*
**(Against Defendant Howard in his Individual Capacity)**

195. Plaintiff realleges, adopts, and incorporates by reference paragraphs 1-33 and 55 above as though set forth herein.

196. This count sets forth claims against Defendant Howard for common law malicious prosecution, and is pled in the alternative. For purposes of this count,

Plaintiff alleges that Defendant Howard acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, and/or property.

197. Defendant Howard caused the commencement and/or continuation of criminal proceedings against Plaintiff.

198. There was no probable cause or reasonable basis in fact or law for Defendant Howard to cause commencement of the criminal proceedings against Plaintiff.

199. Defendant Howard acted with malice in initiating the criminal proceedings against Plaintiff, as well as in instigating Plaintiff's unlawful arrest, and Defendant Howard knew that his actions against Plaintiff were not supported by even arguable probable cause.

200. As a direct and proximate result of Defendant Howard's actions, Plaintiff has been damaged, which damages include: permanent physical injuries, mental anguish, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, lost wages, and loss of other emoluments. These damages have occurred in the past, are continuing in the present, and likely to continue into the future.

**WHEREFORE**, Plaintiff, respectfully demands judgment against Defendant Howard and in favor of Plaintiff as to Count XV, for compensatory damages,

punitive damages, costs, pre- and post-judgment interest, and any damages and other relief that this Court deems just, appropriate, and proper.

### COUNT XVI
### COMMON LAW MALICIOUS PROSECUTION
*Pendent Claim Brought Pursuant to 28 U.S.C. § 1367(a)*
**(Against Defendant Rivera in his Individual Capacity)**

201.   Plaintiff realleges, adopts, and incorporates by reference paragraphs 1-12, 35-36, and 55 above as though set forth herein.

202.   This count sets forth claims against Defendant Rivera for common law malicious prosecution, and is pled in the alternative. For purposes of this count, Plaintiff alleges that Defendant Rivera acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, and/or property.

203.   Defendant Rivera caused the commencement and/or continuation of criminal proceedings against Plaintiff.

204.   There was no probable cause or reasonable basis in fact or law for Defendant Rivera to cause commencement of the criminal proceedings against Plaintiff.

205.   Defendant Rivera acted with malice in initiating the criminal proceedings against Plaintiff, as well as in instigating Plaintiff's unlawful arrest, and Defendant Rivera knew that his actions against Plaintiff were not supported by even arguable probable cause.

206.   As a direct and proximate result of Defendant Rivera's actions, Plaintiff has been damaged, which damages include: permanent physical injuries, mental anguish, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, lost wages, and loss of other emoluments. These damages have occurred in the past, are continuing in the present, and likely to continue into the future.

**WHEREFORE**, Plaintiff, respectfully demands judgment against Defendant Rivera and in favor of Plaintiff as to Count XVI, for compensatory damages, punitive damages, costs, pre- and post-judgment interest, and any damages and other relief that this Court deems just, appropriate, and proper.

**COUNT XVII**
**COMMON LAW MALICIOUS PROSECUTION**
***Pendent Claim Brought Pursuant to 28 U.S.C. § 1367(a)***
**(Against Defendant Cook in his Individual Capacity)**

207.   Plaintiff realleges, adopts, and incorporates by reference paragraphs 1-12, 35-36, and 55 above as though set forth herein.

208.   This count sets forth claims against Defendant Cook for common law malicious prosecution, and is pled in the alternative. For purposes of this count, Plaintiff alleges that Defendant Cook acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, and/or property.

209. Defendant Cook caused the commencement and/or continuation of criminal proceedings against Plaintiff.

210. There was no probable cause or reasonable basis in fact or law for Defendant Cook to cause commencement of the criminal proceedings against Plaintiff.

211. Defendant Cook acted with malice in initiating the criminal proceedings against Plaintiff, as well as in instigating Plaintiff's unlawful arrest, and Defendant Cook knew that his actions against Plaintiff were not supported by even arguable probable cause.

212. As a direct and proximate result of Defendant Cook's actions, Plaintiff has been damaged, which damages include: permanent physical injuries, mental anguish, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, lost wages, and loss of other emoluments. These damages have occurred in the past, are continuing in the present, and likely to continue into the future.

**WHEREFORE**, Plaintiff, respectfully demands judgment against Defendant Cook and in favor of Plaintiff as to Count XVII, for compensatory damages, punitive damages, costs, pre- and post-judgment interest, and any damages and other relief that this Court deems just, appropriate, and proper.

## COUNT XVIII
## EXCESSIVE FORCE UNDER 42 U.S.C. § 1983

**(Against Defendant Mooney in his Individual Capacity)**

213.   Plaintiff realleges, adopts, and incorporates by reference paragraphs 1-12, 25-35, 37-38, and 49-54 above as though set forth herein.

214.   At all times material, Defendant Mooney was a police officer acting under the color of state law.

215.   During the course of Defendant Mooney's seizure and arrest of Plaintiff, Defendant Mooney used objectively unreasonable and excessive force against Plaintiff.

216.   Specifically, Defendant Mooney physically engaged Plaintiff in a manner that was unnecessary, disproportionate, and excessive under the circumstances. This included Defendant Mooney aggressively handling Plaintiff when he placed Plaintiff under arrest and shoved him against his truck and into the back of his patrol car, applying physical force beyond that which was necessary to effectuate a lawful detention, and the continued application of force despite Plaintiff's clear and obvious medical distress which manifested itself in the severe, debilitating heart pain Plaintiff suffered while in police custody and specifically the custody of Defendant Mooney.

217.   Defendant Mooney lacked justification for the force used upon Plaintiff. Defendant Mooney used excessive force on Plaintiff beginning when Mooney placed Plaintiff under arrest and shoved him into his truck and placed him

in custody. Defendant Mooney continued to handle Plaintiff roughly by pushing and shoving Plaintiff into the back of Mooney's patrol vehicle, while making threats to throw Plaintiff in the back of the patrol vehicle if he did not immediately comply. Defendant Mooney continued to use rough, unjustified, and excessive force upon Plaintiff when he pulled him from his patrol vehicle, pushed Plaintiff through the Fort Walton Beach Police Department and into the holding cell, including when he conspicuously tightened Plaintiff's handcuffs before taking them off.

218. Defendant Mooney was personally and directly aware that Plaintiff did not pose an immediate threat to the safety of Mooney, other officers, or other civilians. Plaintiff was not actively resisting the arrest in a manner justifying such force. Furthermore, Defendant Mooney's usage of force exceeded that reasonably necessary under the circumstances.

219. Indeed, as Defendant Mooney was well aware, Plaintiff was an elderly man, who displayed no traits, characteristics, or tendencies that would give Defendant Mooney reason to utilize immense force to effectuate a show of authority or maintain control over Plaintiff once he was placed under arrest. Defendant Mooney was also aware that Plaintiff had health problems and that he was in a weakened state, such that in this circumstance, minimal force would be necessary to place Plaintiff under arrest and maintain control of Plaintiff while under custody. Additionally, Defendant Mooney was aware that in addition to Plaintiff's elderly

and weakened state, Plaintiff was terrified, as Plaintiff had embarrassingly admitted to having defecated in his pants at the outset of the arrest, to which Defendant Mooney callously acknowledged, yet continued to push Plaintiff against the side of his truck, shove Plaintiff into the back of his patrol vehicle, yank Plaintiff out of his patrol vehicle and continue to push Plaintiff through the Fort Walton Beach Jail and to the holding cell.

220.   As a direct and proximate result of Defendant Mooney's use of force, Plaintiff suffered serious physical injury, including the onset of severe chest pain, which culminated in a myocardial infarction.

221.   The Fort Walton Beach Fire Department noted when responding to the 911 call they received to treat Plaintiff while in custody at the Fort Walton Beach Jail that apparently Plaintiff's chest pain began when the officers were "roughing him up."

222.   Plaintiff's symptoms were consistent with a cardiac event requiring emergency medical treatment, including administration of aspirin, nitroglycerin, and being transported to the hospital and diagnosed with having suffered a myocardial infarction.

223.   Defendant Mooney's force therefore caused and/or substantially contributed to Plaintiff's medical emergency, which included worsening cardiac symptoms.

224. Defendant Mooney's actions constituted an unreasonable seizure in violation of Plaintiff's rights under the Fourth Amendment to the United States Constitution.

225. The force used was objectively unreasonable under clearly established law governing the use of force during an arrest.

226. Defendant Mooney acted intentionally, willfully, maliciously, and/or with reckless disregard for Plaintiff's constitutional rights.

227. As a direct and proximate result of Defendant Mooney's actions, Plaintiff has been damaged, which damages include: permanent physical injuries, mental anguish, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, lost wages, and loss of other emoluments. These damages have occurred in the past, are continuing in the present, and likely to continue into the future.

**WHEREFORE**, Plaintiff, **respectfully** demands judgment against Defendant Mooney and in favor of Plaintiff as to Count XVIII, for compensatory damages, punitive damages, costs, pre- and post-judgment interest, and any damages and other relief that this Court deems just, appropriate, and proper**.**

## COUNT XIX
## DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS UNDER 42 U.S.C. § 1983
### (Against Defendant Mooney in his Individual Capacity)

228.  Plaintiff realleges, adopts, and incorporates by reference paragraphs 1-12 and 37-54 above as though set forth herein.

229.  42 U.S.C. § 1983 provides in part that: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress….".

230.  Plaintiff is a citizen of the United States and thus entitled to the full benefits and equal protection of the Federal Constitution and laws and regulations enacted thereunder.

231.  Defendant Mooney is a person under 42 U.S.C. § 1983.

232.  Defendant was, at all times relevant, acting under the color of ordinances, regulations, customs, and laws of the State of Florida.

233.  At all times relevant to this amended complaint, Plaintiffs had clearly established constitutional rights, including the right under the Fourteenth Amendment to not be subjected to unconstitutional policies, practices, and/or customs.

– 67 –

234. Defendant Mooney knew or should have known of these rights during the time period giving rise to this Amended Complaint, as they are clearly established.

235. Defendant Mooney's conduct with respect to his affirmative and active role in preventing Plaintiff from having access to medical attention and his heart medication, as described herein, deprived Plaintiff of his constitutional and statutory rights, resulting in pain, suffering, and sickness, and causing Plaintiff damages.

236. Defendant Mooney intentionally, knowingly, and purposely deprived Plaintiff of their clearly established rights, privileges, and immunities as secured by the Constitution and laws of the United States in violation of 42 U.S.C. § 1983.

237. Defendant Mooney's conduct as alleged in the amended complaint exhibited deliberate indifference to the constitutional rights of Plaintiff which were the moving forces behind and proximately caused the violations of Plaintiff's constitutional rights as set forth herein.

238. Defendant Mooney was explicitly aware of Plaintiff's heart conditions and his need for nitroglycerin pills. Defendant Mooney first learned of Plaintiff's heart condition shortly after searching the Plaintiff's vehicle, where he and Defendant Howard found the nitroglycerin pills and confirmed that Plaintiff had heart problems. Plaintiff then informed Defendant Mooney that he had heart issues and needed his nitroglycerin pills to manage his condition. With this clear and

unambiguous knowledge of Plaintiff's immediate need for his medication, Defendant Mooney personally prevented Plaintiff from accessing his nitroglycerin pills, even when Plaintiff began experiencing severe, sharp chest pains after being placed in custody. Defendant Mooney also ensured that EMS services were delayed as long as possible, despite Plaintiff's requests for immediate medical treatment for his intense heart pain. After another officer contacted EMS, Defendant Mooney continued to obstruct care when EMS—the Fort Walton Beach Fire Department— arrived at the jail to assist Plaintiff. Defendant Mooney even tried to prevent Plaintiff from being taken to the hospital for urgent treatment after the Fort Walton Beach Fire Department examined him and determined that his symptoms, combined with the fact that he had not been able to take his nitroglycerin pills due to Defendant Mooney's actions, indicated that Plaintiff had suffered a heart attack while in police custody. This conduct by Defendant Mooney amounted to a clear, deliberate indifference to Plaintiff's constitutional rights.

239. Indeed, the conduct of Defendant Mooney amounted to clear, deliberate indifference to the constitutional rights of Plaintiff, which were the moving force behind and proximately causing the violations of their constitutional rights as set forth herein.

240. Plaintiff's extended pain, suffering, and the resulting heart attack was caused by Defendant Mooney's unconstitutional conduct.

241. Defendant Mooney's conduct shows a complete indifference and conscious disregard of the health and safety of Plaintiff.

242. Defendant Mooney was aware of Plaintiff's heart problems through circumstantial evidence, such as the nitroglycerin pills found in Plaintiff's truck, and direct evidence, including the Plaintiff's own words to Defendant Mooney expressing his need for the medication and mentioning his heart issues. Defendant Mooney also reiterated this information after the fire department's evaluation and treatment of Plaintiff at the jail confirmed it.

243. As a direct and proximate result of the unconstitutional conduct of Defendant Mooney as described above, Plaintiff has suffered actual physical injury, emotional pain and suffering, economic damages, loss of the capacity for the enjoyment of life, and other tangible and intangible damages and are entitled to recover damages from Defendant in an amount to be proven at trial. Plaintiff is entitled to attorneys' fees under 42 U.S.C. §1988.

**WHEREFORE**, Plaintiff, respectfully demands judgment against Defendant Mooney and in favor of Plaintiff as to Count XIX for compensatory damages, punitive damages, costs, pre- and post-judgment interest, and any damages and other relief that this Court deems just, appropriate, and proper.

## COUNT XX
### FAILURE TO INTERVENE UNDER 42 U.S.C. § 1983
### (Against Defendant Howard in his Individual Capacity)

244. Plaintiff realleges, adopts, and incorporates by reference paragraphs 1-12, 25-33, 37-41, and 49-54 above as though set forth herein.

245. At all times material, Defendant Howard was a law enforcement officer acting under the color of state law.

246. As alleged herein, Defendant Mooney used excessive and objectively unreasonable force against Plaintiff.

247. Defendant Howard was present at the scene of the arrest of Plaintiff and observed Defendant Mooney use excessive force against Plaintiff.

248. Defendant Howard was aware that Plaintiff had heart problems and required nitroglycerin pills to treat his condition. Defendant Howard was also aware Plaintiff was terrified at the scene of the arrest, as Plaintiff told both Howard and Defendant Mooney that he had defecated in his pants following the force used upon him by Defendant Mooney.

249. Defendant Howard had a realistic and reasonable opportunity to intervene to prevent or stop the use of excessive force and/or to mitigate Plaintiff's injuries. Indeed, Defendant Howard arrived at the back parking lot of The Block as Defendant Mooney executed his show of authority and shoved Plaintiff into the side of his truck in order to place him in handcuffs. Defendant Howard witnessed Defendant Mooney use force sufficient to cause extensive bruising and injury to Plaintiff's arms, shoulders, legs, and knees. Defendant Howard then witnessed

Defendant Mooney push Plaintiff into the back of his patrol vehicle and threaten greater force upon Plaintiff.

250. Despite these opportunities, Defendant Howard failed to take any reasonable steps to intervene, which includes a failure to stop or limit Defendant Mooney's use of force, separate Plaintiff from the use of force, or otherwise protect Plaintiff from harm to his current injuries and potential injuries arising from his heart condition.

251. Defendant Howard's failure to intervene directly and proximately caused Plaintiff to suffer injury, including physical harm, emotional trauma, and medical complications, including the myocardial infarction and subsequent heart surgery to address the medical event.

252. Defendant Howard's conduct violated Plaintiff's rights under the Fourth Amendment to be free from excessive force.

253. As a direct and proximate result of Defendant Howard's actions, Plaintiff has been damaged, which damages include: permanent physical injuries, mental anguish, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, lost wages, and loss of other emoluments. These damages have occurred in the past, are continuing in the present, and likely to continue into the future.

**WHEREFORE**, Plaintiff, respectfully demands judgment against Defendant Howard and in favor of Plaintiff as to Count XX, for compensatory damages, punitive damages, costs, pre- and post-judgment interest, and any damages and other relief that this Court deems just, appropriate, and proper.

## COUNT XXI
### FAILURE TO INTERVENE UNDER 42 U.S.C. § 1983
### (Against Defendant Rivera in his Individual Capacity)

254.  Plaintiff realleges, adopts, and incorporates by reference paragraphs 1-12, 35-41, and 49-55 above as though set forth herein.

255.  At all times material, Defendant Rivera was a law enforcement officer acting under the color of state law.

256.  As alleged herein, Defendant Mooney used excessive and objectively unreasonable force against Plaintiff.

257.  Defendant Rivera was present and observed, or reasonably should have observed, Defendant Mooney's use of excessive force.

258.  Defendant Rivera was aware of the basis for Defendant Mooney's arrest of Plaintiff. Defendant Rivera was also aware of Plaintiff's demeanor before, during, and after the arrest, and knew that the force needed to apprehend Plaintiff was minimal, and that Defendant Mooney had used an objectively excessive amount of force in placing Plaintiff in custody.

259. Defendant Rivera was sufficiently present at the scene of the arrest to have intervened. Defendant Mooney had not yet driven away from the scene of the arrest with Plaintiff, and therefore Defendant Rivera had the opportunity to challenge the veracity of the allegations and arrest before Defendant Mooney left the scene of the arrest with Plaintiff.

260. Defendant Rivera had a realistic and reasonable opportunity to intervene to prevent or stop the use of excessive force and/or to mitigate Plaintiff's injuries. Indeed, Defendant Rivera arrived at the back parking lot of The Block and was told by Defendant Mooney and Defendant Howard the events that had occurred.

261. Despite these opportunities, Defendant Rivera failed to taken any reasonable steps to intervene, which included a failure to limit Defendant Mooney's placement of Plaintiff in custody, Defendant Mooney's arrest of Plaintiff, and to otherwise protect Plaintiff from harm as to his current injuries and potential injuries arising from his heart condition.

262. Defendant Rivera's failure to intervene directly and proximately caused Plaintiff to suffer injury, including physical harm, emotional trauma, and medical complications, including the myocardial infarction and subsequent heart surgery to address the medical event.

263. Defendant Rivera's conduct violated Plaintiff's rights under the Fourth Amendment to be free from excessive force.

264.    As a direct and proximate result of Defendant Rivera's actions, Plaintiff has been damaged, which damages include: permanent physical injuries, mental anguish, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, lost wages, and loss of other emoluments. These damages have occurred in the past, are continuing in the present, and likely to continue into the future.

**WHEREFORE**, Plaintiff, respectfully demands judgment against Defendant Rivera and in favor of Plaintiff as to Count XXI, for compensatory damages, punitive damages, costs, pre- and post-judgment interest, and any damages and other relief that this Court deems just, appropriate, and proper.

## COUNT XXII
### FAILURE TO INTERVENE UNDER 42 U.S.C. § 1983
### (Against Defendant Cook in his Individual Capacity)

265.    Plaintiff realleges, adopts, and incorporates by reference paragraphs 1-12, 35-41, and 49-55 above as though set forth herein.

266.    At all times material, Defendant Cook was a law enforcement officer acting under the color of state law.

267.    As alleged herein, Defendant Cook used excessive and objectively unreasonable force against Plaintiff.

268.    Defendant Cook was present and observed, or reasonably should have observed, Defendant Mooney's use of excessive force.

269.   Defendant Cook was aware of the basis for Defendant Mooney's arrest of Plaintiff. Defendant Cook was also aware of Plaintiff's demeanor before, during, and after the arrest, and knew that the force needed to apprehend Plaintiff was minimal, and that Defendant Mooney had used an objectively excessive amount of force in placing Plaintiff in custody.

270.   Defendant Cook was sufficiently present at the scene of the arrest to have intervened. Defendant Mooney had not yet driven away from the scene of the arrest with Plaintiff, and therefore Defendant Cook had the opportunity to challenge the veracity of the allegations and arrest before Defendant Mooney left the scene of the arrest with Plaintiff.

271.   Defendant Cook had a realistic and reasonable opportunity to intervene to prevent or stop the use of excessive force and/or to mitigate Plaintiff's injuries. Indeed, Defendant Cook arrived at the back parking lot of The Block and was told by Defendant Mooney and Defendant Howard the events that had occurred.

272.   Despite these opportunities, Defendant Cook failed to taken any reasonable steps to intervene, which included a failure to limit Defendant Mooney's placement of Plaintiff in custody, Defendant Mooney's arrest of Plaintiff, and to otherwise protect Plaintiff from harm as to his current injuries and potential injuries arising from his heart condition.

273. Defendant Cook's failure to intervene directly and proximately caused Plaintiff to suffer injury, including physical harm, emotional trauma, and medical complications, including the myocardial infarction and subsequent heart surgery to address the medical event.

274. Defendant Cook's conduct violated Plaintiff's rights under the Fourth Amendment to be free from excessive force.

275. As a direct and proximate result of Defendant Cook's actions, Plaintiff has been damaged, which damages include: permanent physical injuries, mental anguish, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, lost wages, and loss of other emoluments. These damages have occurred in the past, are continuing in the present, and likely to continue into the future.

**WHEREFORE**, Plaintiff, respectfully demands judgment against Defendant Cook and in favor of Plaintiff as to Count XXII, for compensatory damages, punitive damages, costs, pre- and post-judgment interest, and any damages and other relief that this Court deems just, appropriate, and proper.

**COUNT XXIII**
**NEGLIGENCE**
*Pendent Claim Brought Pursuant to 28 U.S.C. § 1367(a)*
**(Against Defendant FWB)**

276. Plaintiff realleges, adopts, and incorporates by reference paragraphs 1-12 and 25-57 above as though set forth herein.

277. This count sets forth a claim against Defendant FWB for negligence under the common law of Florida. At all times material hereto, Defendants Mooney, Howard, Rivera, and Cook were acting within the course and scope of their employment with Defendant FWB.

278. Defendant FWB knew or should have known that Plaintiff was within a zone of risk related to contact with its agents/employees.

279. Defendant FWB owed a duty of care to the Plaintiff based on the nature of the relationship between it and Plaintiff, and/or Defendant FWB had a special relationship with Plaintiff and consequently, a duty of care was attendant thereto. Alternatively, legal duties devolved upon Defendant FWB because Plaintiff was in the foreseeable zone of risk to be harmed by the actions of its officers, employees or agents, including by the actions of Defendants Mooney, Howard, Rivera, and Cook—specifically when Defendants Mooney and Howard conducted a traffic stop on Plaintiff, subsequently arrested Plaintiff when he sought the return of his proof of insurance, and when Defendants Mooney, Howard, Rivera, and Cook all affirmatively participated and/or failed to intervene with ample opportunity to the scheme to arrest Plaintiff without a basis.

280. Defendant FWB breached its duty of care to Plaintiff by negligently failing to monitor the actions, inactions, and overall performance of its officers, employees, and agents, including Defendants Mooney, Howard, and Cook.

281.    The actions of Defendant FWB complained of in this count were taken in the course and performance of "operational" functions, i.e., functions that are not necessary to or inherent in policymaking or planning, and which merely reflected secondary decisions as to how existing policies and plans were to be implemented.

282.    As a direct and proximate result of Defendant FWB's unlawful acts and omissions, Plaintiff sustained damages, including mental anguish, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, loss of employment opportunities, lost wages, and loss of other emoluments. These damages have occurred in the past, are continuing at present, and likely to continue into the future.

**WHEREFORE**, Plaintiff, respectfully demands judgment against Defendant and in favor of Plaintiff as to Count XXIII, for compensatory damages, costs, pre- and post-judgment interest, and any damages and other relief that this Court deems just, appropriate, and proper.

**COUNT XXIV**
**NEGLIGENT SUPERVISION/RETENTION**
*Pendent Claim Brought Pursuant to 28 U.S.C. § 1367(a)*
**(Against Defendant FWB)**

283.    Plaintiff realleges, adopts, and incorporates by reference paragraphs 1-12, 35-41, and 49-57 above as though set forth herein.

284.    This count sets forth a claim against Defendant FWB for negligent supervision/retention under the common law of Florida.

285. Defendant FWB breached its duty to properly supervise/retain Defendant Mooney.

286. The breach of this duty to properly supervise and retain Defendant Mooney resulted in damages and injury to Plaintiff. Defendant FWB knew or should have known that the actions, omissions, and derelictions of officers, employees, and agents could cause injury to Plaintiff.

287. Defendant FWB breached its duties to supervise and retain its employees and agents, namely Defendant Mooney.

288. Defendant FWB was aware and knowledgeable to Defendant Mooney's unfitness and documented history of Fourth Amendment violations that amounted excessive force and false arrest complaints and incidents.

289. Despite this knowledge, Defendant FWB failed to act in such a way as to discipline or correct Defendant Mooney's known conduct and unfitness, and instead permitted Defendant Mooney to continue as an officer.

290. As a direct and proximate result of the above unlawful acts and omissions, Plaintiff sustained damages, including mental anguish, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, loss of employment opportunities, lost wages, and loss of other emoluments. These damages have occurred in the past, are continuing at present, and likely to continue into the future.

**WHEREFORE**, Plaintiff, respectfully demands judgment against Defendant and in favor of Plaintiff as to Count XXIV, for compensatory damages, costs, pre- and post-judgment interest, and any damages and other relief that this Court deems just, appropriate, and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, Darryl White, requests a trial by jury on all issues so triable.

DATED this 6th day of April, 2026.

Respectfully submitted,

**ANDREWS LAW FIRM**
822 North Monroe Street
Tallahassee, Florida 32303
**T:** (850) 681-6416 | **F:** (850) 681-6984

*/s/ Ryan J. Andrews*
RYAN J. ANDREWS (FBN 104703)
DAVID A. WEISZ (FBN 1023229)
ryan@andrewslaw.com
david@andrewslaw.com
service@andrewslaw.com
*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been

served through the CM/ECF portal, and or electronic mail, on this 6th day of April,

2026 to all parties.

Alyssa M. Yarbrough (FBN 103407)
Timothy M. Warner (FBN  0642363)
William G. Warner (FBN 0346829)
Justina CJ Turner (FBN  99808)
Jennifer A.J. Hawkins (FBN 17694)
**WARNER LAW FIRM, P.A.**
501 W. 11th Street, Suite A
Panama City, FL 32401
Phone No. (850) 784-7772
pleadings@warnerlaw.us
*Counsel for Defendants*

*/s/ Ryan J. Andrews*
RYAN J. ANDREWS