UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DARRYL WHITE,

     **Plaintiff,**

v.                                    CASE No. 3:26-cv-806-TKW-ZCB

CITY OF FORT WALTON
BEACH, *et al.*,

     **Defendants.**

_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT

Plaintiff, Darryl White, by and through the undersigned counsel, pursuant to Fed. R. C. P. 12(b)(6) and N.D. Fla. Loc. R. 7.1, hereby files this Response in Opposition to Defendants' Motion to Dismiss Complaint and Memorandum of Law in Support, [ECF No. 14], and in support thereof, states as follows:

## I. INTRODUCTION

This case involves events that led to White, a then 77-year-old veteran, being hospitalized with a heart attack, caused in substantial part by the Defendants' unlawful conduct. White was stopped for a red light violation, then arrested for an offense the officer could not have witnessed. White was physically assaulted and mistreated, denied medication despite pleas, and left in a cell with chest pain dismissed by Defendants as fake. When EMS arrived, Defendant Mooney—the main

offender—tried to prevent hospital transport. Ultimately, and as a result, White suffered a heart attack requiring emergency surgery.

Defendants move to dismiss all twenty-four counts under Rule 12(b)(6), relying on video evidence they claim contradict White's allegations. However, the well-pled Amended Complaint makes clear that the video does not show the full extent of the force, White's medical distress, or the denial of his medication and delay of medical attention, and furthermore White's allegations are **supported** by these identified videos. Defendants also impermissibly ask the Court to resolve factual disputes—such as what Defendant Mooney saw from his patrol car at 4:30 a.m.—which is plainly beyond the scope of a Rule 12(b)(6) motion.

Assuming all well-pleaded factual allegations and inferences as true and favoring Plaintiff, the Amended Complaint states claims for false arrest, excessive force, indifference to medical needs, failure to intervene, malicious prosecution, and related state-law claims. Therefore, Defendants' Motion should be denied.

## II.    MOTION TO DISMISS STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 557).

"In ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court is generally limited to the four corners of the complaint and documents attached thereto." *Blackshear v. City of Miami Beach*, 799 F. Supp. 2d 1338, 1343 (S.D. Fla. 2011) (citing *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000)). A court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Id*. (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp.*,

3

550 U.S. at 555 (stating that "[f]actual allegations must be enough to raise a right to relief above the speculative level").

When considering a Rule 12(b)(6) motion to dismiss, the district court must accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff, and accept all reasonable inferences drawn therefrom. *See Fla. State Conf. of the NAACP v. Lee*, 566 F. Supp. 3d 1262, 1297 (N.D. Fla. 2021). Dismissal is not appropriate unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims in the complaint. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). Thus, the inquiry is not whether the plaintiff will prevail on his claims, "but whether the allegations are sufficient to allow them to conduct discovery in attempt to prove their allegations." *McReynolds v. Ala. Dep't of Youth Servs.*, 204 F. App'x 819, 821 (11th Cir. 2006). This inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "The Plaintiff does not need to prove his case at this point; a complaint is sufficient if it 'identif[ies] facts that are suggestive enough to render [the claim] plausible.'" *Robinson v. Alexander City*, No. 3:18-cv-156-ECM, 2019 U.S. Dist. LEXIS 40034, at *6 (M.D. Ala. Mar. 13, 2019) (citing *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1296 (11th Cir. 2017)). Factual issues and disputes cannot by resolved by a court on a

motion to dismiss. *See Brucker v. City of Doraville*, 391 F. Supp. 3d 1207, 1217 (N.D. Ga. 2019) (citing *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 241 (1980)).

## III. WHITE HAS PLAUSIBLY ALLEGED THAT HIS ARREST FOR RECKLESS DRIVING LACKED PROBABLE CAUSE

"The Eleventh Circuit has concluded that the standard for determining the existence of probable cause is the same under both Florida and federal law — whether a reasonable man would have believed probable cause existed had he known all of the facts known by the officer." *Siler v. Floyd*, No. 3:10-cv-289/RS-EMT, 2010 U.S. Dist. LEXIS 131992, at *9 (N.D. Fla. Dec. 14, 2010) (citations omitted). A plaintiff bears the burden of demonstrating that probable cause was absent in order to prevail on a § 1983 claim. *See id*. An officer who makes an arrest without probable cause is still protected if arguable probable cause existed for the arrest. *See Kingsland v. City of Miami*, 382 F. 3d 1220, 1232 (11th Cir. 2004). The existence of arguable probable cause is determined if "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff." *Siler*, 2010 U.S. Dist. LEXIS 131992, at *10.

Here, the Defendants claim probable cause for reckless driving based on White's allegations, but this misreads the Amended Complaint. The initial red-light stop was completed *before* the disputed conduct. [ECF 12, ¶¶ 16–17]. The later stop and White's arrest for *reckless driving* is a separate event with its own probable

5

cause requirement, which is lacking based on White's allegations. White's Amended Complaint specifically alleges that Defendant Mooney could not have observed or reasonably apprehended the U-turn underlying the reckless-driving arrest, and thereby lacked probable cause for the arrest. [ECF 12, ¶¶ 20–23, 26]. These well-pled factual allegations must be accepted as true on a motion to dismiss. Indeed, the Court cannot resolve factual issues at this stage, including whether Defendant Mooney saw or recognized that White made a U-turn across a double yellow line and drove recklessly. *Blackshear v. City of Miami Beach*, 799 F. Supp. 2d 1338, 1344 (S.D. Fla. 2011). White alleges that Mooney did not (and could not) see or realize the U-turn, demonstrating the arrest lacked probable cause. [ECF 12, ¶ 23].

Furthermore, Defendant Mooney's own words support White's claim that probable cause was absent. When asked why White was being arrested, Mooney cited "reckless driving" and "busting U-turns," but also said the arrest was because White "wanted to play games" and was "winning a whole trip to jail." [ECF 12, ¶ 30]. Mooney's reference to a traffic violation he could not have observed, while also claiming the arrest was for White's conduct (*i.e.*, rather than driving), shows the purported violation was not a sufficient basis for probable cause. Instead, the arrest appears to be a retaliatory pretext for White's prior conduct, which the Fourth Amendment prohibits when unsupported by probable cause. *See Nunnelee v. Morgan*, No. 3:11-cv-481, 2013 U.S. Dist. LEXIS 94595, at *21 (N.D. Fla. May 31,

2013). White's allegations to this effect, and inferences therefrom, thus further preclude dismissal.

Defendants rely on *Baxter v. Roberts*, 54 F.4th 1241, 1256 (11th Cir. 2022), for the notion that probable cause existed, making the arrest lawful. In *Baxter,* the officer observed the vehicle swerve and strike lines before stopping it. This is readily distinguishable, however, as White alleges Mooney did not (and could not) see or detect White's U-turn, so Mooney lacked probable cause. [ECF 12, ¶¶ 20–21, 23, 26].

Defendants also cite *Johnson v. City of Atlanta*, 107 F.4th 1292 (11th Cir. 2024), to support their argument that video evidence purportedly demonstrates probable cause. A district court can consider extrinsic materials on a motion to dismiss **only** if they are central to the plaintiff's claim and its authenticity is unchallenged. *Jackson v. City of Atlanta*, 97 F.4th 1343, 1348 (11th Cir. 2024). However, when video footage meets these criteria, ambiguities are construed in favor of the plaintiff. *Castro-Reyes v. City of Opa-Locka*, 166 F.4th 886, 890 (11th Cir. 2026). If no video exists or it does not answer all questions, evidence is viewed in the light most favorable to the non-moving party. *Id.*

The standard for replacing a plaintiff's factual allegations with video evidence is strict. Video can only do so when it "obviously contradicts" the allegations, with no room for credibility judgments or reasonable inferences. *Jackson*, 97 F.4th at

1350. This narrow exception to Rule 12(b)(6) requires courts to accept well-pleaded allegations as true. Courts note that silent, blurry, or obstructed videos do not obviously contradict the plaintiff's account and should be interpreted in their favor. *See Castro-Reyes*, 166 F.4th at 890.

The video evidence submitted by Defendants does not satisfy these criteria and cannot support dismissal. Critically, no footage before this Court depicts Mooney's vantage point on the curved portion of Perry Avenue at the time White made his U-turn, which is the central ***factual*** question underlying every false arrest and probable cause issue and argument in this case. A video that fails to capture the disputed and decisive vantage point plainly cannot overcome over well-pled allegations about what that vantage point did or did not permit Mooney to observe. Moreover, the Amended Complaint expressly alleges that the footage does not capture the full extent of the force used or White's medical deterioration in his holding cell. [ECF 12, ¶ 67]. Where video does not answer all material questions or resolve all material details of the encounter, the Court reviews that evidence in the light most favorable to White—***not*** the Defendants. *Castro-Reyes*, 166 F.4th at 890.

The video footage contains exactly the sort of ambiguities, gaps, and incomplete depictions that the Eleventh Circuit has held must be construed in Plaintiff's favor at the pleading stage. *Id*. Accordingly, that evidence either cannot be considered here at all, or else must be viewed in White's favor. In that light, it

8

does not obviously contradict a single allegation in the Amended Complaint. Therefore, dismissal on the basis of that footage is not appropriate and the absence of probable cause has been sufficiently pled at this stage.

## IV.    DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY AS TO FEDERAL CLAIMS

"[Q]ualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Blackshear v. City of Miami Beach*, 799 F. Supp. 2d 1338, 1343–44 (S.D. Fla. 2011). To receive the protection of qualified immunity "the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Id*. at 1344. Discretionary authority includes the job-related powers and responsibilities that the public official has in the general fulfilment of his official duties. *O'Rourke v. Hayes*, 378 F.3d 1201, 1205 (11th Cir. 2004). After the defendant establishes this, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). A plaintiff may establish this by showing that (1) the facts, as alleged and viewed in the light most favorable to [him], established a constitutional violation and - if so, (2) the constitutional right violated was clearly established." *See Perez v. Suszczynski*, 809 F.3d 1213, 1218 (11th Cir. 2016). "To be clearly established, a right must be well-established enough 'that every reasonable

9

official would have understood that what he is doing violates that right.'" *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018). This means that the "existing precedent must have placed the statutory or constitutional question beyond debate' and thus given the official fair warning that his conduct violated the law." *Id*.

In the Eleventh Circuit, a "law can be 'clearly established' for purposes of analysis on the applicability of qualified immunity only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." *Hannah v. Armor Corr. Health Servs.*, 792 F. App'x 742, 744 (11th Cir. 2019). The Eleventh Circuit has clearly established that alleged constitutional rights are violated when plaintiff has alleged violations of their fourth and/or fourteenth amendment rights brought under 42 U.S.C. § 1983 right to be free of false arrest/imprisonment, excessive force, malicious prosecution, deliberate indifference to serious medical needs and failure to intervene. *See, e.g., Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990) (false arrest); *Sebastian v. Ortiz*, 918 F.3d 1301, 1312 (11th Cir. 2019) (excessive force); *Skop v. City of Atlanta*, 485 F.3d 1130, 1144 (11th Cir. 2007) (malicious prosecution); *Hannah*, 792 F. App'x at 746 (deliberate indifference to serious medical needs); *Nute v. White*, 152 F.4th 1311, 1322 (11th Cir. 2025) (failure to intervene).

"In determining whether an official is entitled to qualified immunity, however, the issue is not actual probable cause, but the lesser standard of arguable

10

probable cause." *Blackshear*, 799 F. Supp. 2d 1338, 1346. For this standard to be met, "the facts and circumstances must be such that the officer reasonably could have believed that probable cause existed." *Id*. However, the heightened pleading standard that once was required in the Eleventh Circuit is no longer recognized as it relates to cases governed by Rule 8(a)(2), including civil rights complaints. *See Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010); *see also Hoefling v. City of Miami*, 811 F.3d 1271, 1276 (11th Cir. 2016). Accordingly, "at the pleading stage . . . the Court must simply determine whether [the plaintiff] has alleged sufficient facts to meet the *Twombly-Iqbal* 'plausibility' standard" in order to prevent qualified immunity from applying to an individual defendant." *Blackshear*, 799 F. Supp. 2d 1338, 1344.

Crucial to the determination of whether an officer has sufficient information to initiate a traffic stop is if the arresting officer has ***actually observed*** the violation. *See Bender v. State*, 737 So. 2d 1181, 1181 (Fla. 1st DCA 1999). Indeed, the Supreme Court has stated that "the foremost method of enforcing traffic and vehicle safety regulations . . . is acting upon observed violations." *Delaware v. Prouse*, 440 U.S. 648, 659 (1979). Whether an officer has probable cause to make a traffic stop is judged not by the officer's subjective belief, but by an objective standard based on the observed violations. *See Bender*, 737 So. 2d 1181, 1181–82 (citing *Terry v. Ohio*, 392 U.S. 1 (1968)).

11

White's Amended Complaint alleges that Defendant Mooney did not act upon observed violations, as the curvature of Perry Avenue made it impossible for Mooney to see White make the U-turn, which he used to justify his warrantless arrest. [ECF 12, ¶ 23]. Mooney ostensibly acted on a subjective belief, as his own words show, that White had committed a traffic infraction warranting an arrest. Because Mooney lacked observed facts for reckless driving, he lacked probable cause. *See Blackshear*, 799 F. Supp. 2d 1338, 1346 (insufficient info for arguable probable cause where conduct was only intended, not observed). Therefore, Defendants are not protected by immunity since probable cause is required.

White has adequately pleaded all necessary elements for each federal claim against each defendant. A claim is stated for every count, and qualified immunity does not apply to the Defendants regarding any federal claims.

1. Individual Defendants are not entitled to Qualified Immunity as it relates to False Arrest (Counts I–IV).

An officer may arrest a suspect without a warrant only if there is probable cause to believe that the suspect has committed or is committing an offense. *See Rodriguez v. Gomez*, 645 F. Supp. 3d 1343, 1348 (S.D. Fla. 2022). The right to be free from arrest without probable cause is a well-established Fourth Amendment right. S*ee Siler v. Floyd*, No. 3:10-cv-289/RS-EMT, 2010 U.S. Dist. LEXIS 131992, at *11 (N.D. Fla. Dec. 14, 2010). For qualified immunity purposes, the relevant question is whether arguable probable cause existed—whether reasonable officers

in the same circumstances and possessing the same knowledge could have believed that probable cause existed to arrest. *See Blackshear v. City of Miami Beach*, 799 F. Supp. 2d 1338, 1346 (S.D. Fla. 2011).

As established, *supra* at § III, Defendant Mooney could not have observed the U-turn due to the physical curvature of the Perry Avenue, [ECF 12, ¶¶ 22–23], and his own statements demonstrate a retaliatory, rather than law enforcement purpose, for the arrest. [ECF 12, ¶¶ 30]. Without observing the factual predicate for the charge and an apparent retaliatory motive, Mooney lacked not only probable cause, but arguable probable cause as well. *See Blackshear*, 799 F. Supp. 2d at 1346.

Defendants Howard, Rivera, and Cook lacked independent knowledge of any conduct that would establish arguable probable cause. Howard was present during the arrest but had no independent basis to believe the reckless driving charge was supported. [ECF 12, ¶¶ 29, 33, 36]. Rivera and Cook arrived after White was already in the patrol vehicle, and was informed of the basis of the arrest, and ratified the detention without independent observation to support it. [ECF 12, ¶¶ 38–41]. As none of these Defendants possessed sufficient facts to give a reasonable officer arguable probable cause, each is denied Qualified Immunity on Counts I–IV.

2. <u>Individual Defendants are not entitled to Qualified Immunity as it relates to Malicious Prosecution (Count X–XIII).</u>

The Eleventh Circuit has identified malicious prosecution as a viable constitutional tort cognizable under § 1983, combining Fourth Amendment elements

with those of the common law tort. *Gervin v. Florence*, 139 F.4th 1236, 1247 (11th Cir. 2025). An officer who lacks arguable probable cause for the underlying arrest also lacks qualified immunity on the resulting malicious prosecution claim. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1144–45 (11th Cir. 2007).

That logic applies here with full force. As established, *supra* at §§ III & IV, no Individual Defendant possessed arguable probable cause for White's arrest. Mooney lacked any observed predicate for the reckless driving charge and verbalized a retaliatory rather than law enforcement motive. [ECF 12, ¶¶ 22–23, 30]. Howard participated in the arrest with knowledge of its questionable basis. [ECF 12, ¶¶ 29, 33–34]. Rivera and Cook arrived, found the stated basis implausible, and ratified the detention anyway. [ECF 12, ¶¶ 38–41]. The absence of arguable probable cause as to each Defendant simultaneously defeats qualified immunity on both the false arrest and malicious prosecution counts. Accordingly, no individual defendant is entitled to qualified immunity on Counts X–XIII.

3. <u>Defendant Mooney is not entitled to Qualified Immunity and White States a Claim for Excessive Force (Count XVIII).</u>

To establish an excessive force claim in the pretrial detainee context, a plaintiff must demonstrate that the use of force was objectively unreasonable under the totality of circumstances, such as the relationship between the need for force and the amount used, the extent of injury, efforts to temper force, the severity of the offense, the threat reasonably perceived, and if plaintiff was actively resisting. *See*

*Lombardo v. City of St. Louis*, 594 U.S. 464, 467 (2021); *see also Castro-Reyes v. City of Opa-Locka*, 166 F.4th 886, 903 (11th Cir. 2026). "[A]n officer cannot continue to use force after there is no longer a need for it, *see Robinson v. Lambert*, 753 F. App'x 777, 782 (11th Cir. 2018), and threatening comments serve as circumstantial evidence of the intent underlying force used. *See Cockrell v. Sparks*, 510 F.3d 1307, 1312 (11th Cir. 2007).

Every *Lombardo* factor weighs against Mooney's assertion of qualified immunity on White's excessive force claim. White was a 77-year-old veteran arrested for an alleged traffic infraction, and who did not resist, threaten, or pose any danger at any point during the encounter. [ECF 12, ¶ 32 n.3]. Mooney knew from the prior traffic stop that White was elderly, cooperative, and non-threatening. [ECF 12, ¶ 35]. Despite this, Mooney shoved White against his truck with sufficient force to cause bruising across six areas of his body, causing White to involuntarily defecate from fear. [ECF 12, ¶¶ 28–29]. Mooney then threatened to increase the force if White did not immediately comply (even though he had and was at all relevant times). [ECF 12, ¶ 37]. The force continued at the police station where Mooney yanked White from the patrol car, shoved him through the building, pushed him against the wall, and tightened his handcuffs before removal. [ECF 12, ¶¶ 45–47]. The EMS noted that White's chest pain began when officers were roughing him

up, and his cardiologist attributed the resulting heart attack directly to Mooney's unlawful force and conduct. [ECF 12, ¶¶ 54, 221].

Defendants invoke *Nolin v. Isbell*, 207 F.3d 1253 (11th Cir. 2000), and the *de minimis* force doctrine. That doctrine applies to minor injuries incidental to lawful arrests—not to force causing bruising across six body parts, involuntary defecation, knee aggravation, and a myocardial infarction requiring emergency stent surgery. *See Wheat v. Day*, 859 F. App'x 885, 887 (11th Cir. 2021). Defendants also compare these facts to *Gold v. City of Miami*, 121 F.3d 1442 (11th Cir. 1997), which involved only tight handcuffs. White's allegations go far beyond tight handcuffs. Since at least 2014 the Eleventh Circuit has clearly established that officers cannot use gratuitous force on a non-resisting individual who poses no threat. *Castro-Reyes*, 166 F.4th at 903. No reasonable officer could have believed the force used against a compliant 77-year-old arrested for a traffic infraction was constitutionally permissible. Defendant Mooney is not entitled to qualified immunity on Count XVIII.

4. <u>Defendant Mooney is not entitled to Qualified Immunity and White States a Claim for Deliberate Indifference to Serious Medical Needs (Count XIX).</u>

The Fourteenth Amendment prevents deliberate indifference to a pretrial detainee's serious medical needs. *See Jackson v. West*, 787 F.3d 1345, 1352 (11th Cir. 2015). A plaintiff must allege an objectively serious medical need and a subjective deliberate indifference. *See Brown v. Johnson*, 387 F.3d 1344, 1351 (11th

16

Cir. 2004). This is typically seen through a defendant's knowledge of a serious risk, disregard of that risk, and conduct more than negligence. *Hannah v. Armor Corr. Health Servs.*, 792 F. App'x 742, 744–45 (11th Cir. 2019).

Both components are satisfied here. White suffered a physician-diagnosed myocardial infarction in Mooney's custody, and attributed to Mooney's unlawful conduct, requiring emergency stent surgery at the Mayo Clinic, and had cardiac surgery scheduled within two weeks of the arrest. [ECF 12, ¶¶ 52, 54–55]. Severe chest pain in an elderly man with a known cardiac condition and upcoming surgery is precisely the condition "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). The objective prong is satisfied beyond reasonable dispute.

The subjective prong is established through a specific six-step sequence. *First*, Mooney and Howard discovered nitroglycerin pills and concluded White had heart problems. [ECF 12, ¶ 42]. *Second*, White explicitly told Mooney he had a heart condition with surgery scheduled within two weeks. [ECF 12, ¶ 44]. *Third*, White repeatedly begged for his medication as his chest pain worsened in the holding cell. [ECF 12, ¶¶ 44, 46, 48]. *Fourth*, Mooney personally blocked White's access to his nitroglycerin pills despite this knowledge. [ECF 12, ¶ 44]. *Fifth*, when another officer attempted to call EMS, Mooney interfered and delayed medical care for approximately one hour. [ECF 12, ¶¶ 48–50]. *Sixth*, when EMS finally arrived,

17

Mooney falsely told them White had been fleeing police, insisted White only had so-called "incarceritis," and attempted to prevent hospitalization—which EMS overrode. [ECF 12, ¶¶ 48–52].

Defendants argue the so-called "incarceritis" statement shows Mooney did not believe White was seriously ill. Quite the contrary, this argument misconstrues the true meaning and significance of the statement. An officer who finds a detainee's cardiac medication, is told of a scheduled cardiac surgery, watches the detainee experience worsening chest pain for an hour, and then characterizes those symptoms as fake is not ignorant of the risk—he is consciously disregarding it. That is deliberate indifference. No reasonable officer who possessed Mooney's knowledge could have believed his conduct was constitutionally permissible. Mooney is not entitled to qualified immunity on Count XIX.

     5. <u>Defendants Howard, Rivera, and Cook are not entitled to Qualified Immunity and White States Viable Failure to Intervene Claims (Counts XX–XXII).</u>

The Eleventh Circuit has long established that an officer present at a scene who fails to take reasonable steps to protect the victim of another officer's excessive force can be held liable for his nonfeasance. *Nute v. White*, 152 F.4th 1311, 1319 (11th Cir. 2025). The duty derives from the Constitution, not supervisory authority, and applies to every officer present during an ongoing constitutional violation who has a realistic opportunity to act. *Id.* at 1320. An officer satisfies the duty through

18

verbal intervention alone—telling another officer to stop is sufficient. *Id.* at 1321–22. An officer cannot voluntarily leave a scene of ongoing force to avoid the duty. *Id.* at 1321. The principle has been clearly established in this Circuit for decades. *Helm v. Rainbow City*, 989 F.3d 1265, 1277–78. (11th Cir. 2021).

White's case is distinguishable from the allegations in *Jackson v. City of Atlanta*, where the court dismissed a failure-to-intervene claim because the entire use of force lasted nine seconds while the officer was simultaneously managing a potentially dangerous unknown suspect on the other side of a vehicle during widespread civil unrest at 1:00 a.m. 97 F.4th 1343, 1362–63 (11th Cir. 2024). None of those circumstances are present here. Mooney's force was not a nine-second event—it extended from the parking lot through transport to the police station and into the holding cell. Howard was not managing a separate suspect. Rivera and Cook faced no competing obligation preventing intervention. As such, this case is more closely analogous to *Nute* and *Priester v. City of Riviera Beach*, 208 F.3d 919, 925 (11th Cir. 2000) (plaintiff alleged that a law enforcement canine attacked him for an extended period of time despite, without law enforcement intervention and despite his submission to authority), and distinguishable from *Jackson*.

Defendant Howard arrived while Mooney was actively shoving White against his truck, recognized something was wrong—asking "what are you doing"—yet took no action to stop the force, object to the arrest, or protect White despite knowing

of his cardiac condition. [ECF 12, ¶¶ 29, 33–34, 42]. Howard had every opportunity to intervene verbally at minimum and knowingly did nothing.

Defendants Rivera and Cook arrived while White remained detained in the patrol car before Mooney left the scene—the constitutional violation was ongoing. [ECF 12, ¶¶ 38–41]. Rivera found Mooney's explanation implausible enough to laugh at it yet ratified the detention anyway. [ECF 12, ¶ 38]. Both had a realistic opportunity to challenge the continued unlawful detention and use of forces, but knowingly failed to act. Each of these defendants is denied qualified immunity and White states viable claims on Counts XX–XXII.

## V.  INDIVIDUAL DEFENDANTS ARE NOT ENTITLED TO STATE-AGENT IMMUNITY AS TO STATE LAW CLAIMS

"Under Florida Law, a police officer 'may not be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function,' except if the officer 'acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.'" *Castro-Reyes v. City of Opa-Locka*, 166 F.4th 886, 903 (quoting Fla. Stat. § 768.28(9)(a)). Therefore, individual officers will not be entitled to the protections of state-agent immunity from state law claims if a plaintiff demonstrates "actual malice," defined as acting with "ill will, hatred, spite, or an evil intent"; that the officer's conduct was "worse than gross negligence"; that the conduct was "more

20

reprehensible and unacceptable than mere intentional conduct"; or that the officer acted "with a conscious and intentional indifference to consequences and with the knowledge that damage was likely to be done to persons or property." *Id*. Florida courts have found allegations of an officer's conduct to have sufficient malice or wanton disregard when using significant force without understanding the situation or if the suspect is restrained. *See id*. at 904.

A plaintiff need not use the precise statutory language of Florida's state-agent immunity statute to overcome this immunity at the pleading stage. It is sufficient to allege facts from which a reasonable inference of bad faith or malicious purpose can be drawn. *Envtl. Health Testing, LLC v. Lake Cnty. Sch. Bd.*, 2011 U.S. Dist. LEXIS 166059, at *20 (M.D. Fla. Sept. 28, 2011). Only after the completion of discovery and the presentation of all relevant evidence can the trier of fact determine whether or not immunity will apply. *Id*. Because "the standard for probable cause is the same under Florida and federal law," *Land v. Sheriff of Jackson Cty. Fla.*, 85 F.4th 1121, 1130 (11th Cir. 2023), the lack of probable cause under federal law also applies to Florida claims.

The same facts that defeat qualified immunity on Counts I–IV and Counts X–XIII simultaneously satisfy the bad faith and malicious purpose exception to state-agent immunity on Counts V–VIII and Counts XIV–XVII. Mooney's verbalized retaliatory intent in declaring that the arrest was motivated in part because White

purportedly "wanted to play games" and was "winning a whole trip to jail," [ECF 12, ¶ 30], is direct evidence of malicious purpose under any of the four alternative definitions recognized in *Castro-Reyes*. Howard's participation in an arrest he openly questioned, and Rivera and Cook's ratification of a detention that was found implausible enough to laugh at, plausibly satisfy the conscious indifference standard. The bad faith determination as to each defendant presents factual issues that cannot be resolved against White at this stage.

## VI.    THE CITY IS NOT ENTITLED TO SOVEREIGN IMMUNITY AND WHITE STATES CLAIMS AGAINST THE CITY (COUNTS IX, XXIII, XXIV)

Florida municipalities have waived sovereign immunity for acts of officers committed within the scope of employment where a private person would be liable, excluding only acts committed in bad faith, with malicious purpose, or in wanton and willful disregard of human rights. Fla. Stat. § 768.28(1), (9)(a). This exclusion operates in one of two ways—either the agency is liable for within-scope conduct or the individual officer is personally liable for bad faith conduct, but not both simultaneously, and which side applies is ordinarily a jury question that cannot be resolved by dismissal. *See McGhee v. Volusia Cnty.*, 679 So. 2d 729, 733 (Fla. 1996). Rule 8(d)(2) expressly permits White to plead individual bad faith liability and City respondeat superior liability in the alternative without electing between them at the pleading stage. *See Envtl. Health Testing, LLC v. Lake Cnty. Sch. Bd.*, 2011 U.S.

22

Dist. LEXIS 166059, at *19–20 (M.D. Fla. Sept. 28, 2011). The waiver applies to both negligent and intentional torts, and to operational rather than discretionary governmental functions. *See Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1264, 1265 (11th Cir. 2001).

    1.  <u>Count IX — Common Law False Arrest/Imprisonment</u>

Count IX is expressly pled in the alternative—if it is ultimately determined that the Individual Defendants' conduct does not rise to the level of bad faith sufficient for personal liability, the City bears liability for the same within-scope conduct. [ECF 12, ¶ 135]. This directly addresses *Ghandour v. City of Miami*, 710 F. Supp. 3d 1188, 1195 (S.D. Fla. 2024), which dismissed city claims specifically because they were not pleaded in the alternative. White has done what the *Ghandour* plaintiff failed to do. Furthermore, under *McGhee*, the officers' arrest of White— even if lawful—constitutes an abuse of lawful authority rather than a usurpation of power they did not possess, creating a jury question on agency liability that cannot be resolved on a motion to dismiss. 679 So. 2d at 732–33. White was physically seized, handcuffed, transported to a holding cell, and confined against his will without his consent—the elements of false imprisonment are adequately pleaded. [ECF 12, ¶¶ 28, 37, 45–48].

23

2.  Count XXIII — Negligence

When law enforcement officers take affirmative action placing a person in a specific zone of risk, a duty of reasonable care arises. *Kaisner v. Kolb*, 543 So. 2d 732, 735–36 (Fla. 1989). Count XXIII is not premised on negligent commission of an intentional tort—and therefore, *City of Miami v. Sanders*, 672 So. 2d 46 (Fla. 3d DCA 1996), does not apply—but rather, on the City's independent failure to exercise reasonable care over White's known medical needs once he was in custody. Once the officers took White into custody, discovered his nitroglycerin pills, and were informed of his cardiac condition and upcoming surgery, a specific zone of risk arose imposing a custodial duty of care. [ECF 12, ¶¶ 42–44]. That duty was breached by knowingly denying White his medication, blocking EMS for one hour, and attempting to prevent hospitalization. [ECF 12, ¶¶ 44, 48–52]. Indeed, the cardiologist directly attributed White's heart attack to those breaches. [ECF 12, ¶¶ 54–55, 221]. These individual operational decisions about a specific detainee's medical access are not discretionary governmental functions. *See Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1265 (11th Cir. 2001). Sovereign immunity does not bar Count XXIII and the elements are adequately pleaded.

3.  Count XXIV — Negligent Supervision/Retention

Negligent supervision and retention claims implicate operational rather than discretionary functions and fall within the Section 768.28 waiver as a matter of law.

24

*See Asia v. City of Miami Gardens*, 2016 U.S. Dist. LEXIS 23032, at *9–10 (S.D. Fla. Feb. 25, 2016). The City's scope-of-employment argument fundamentally misapplies the doctrine—the scope-of-employment element refers to the period during which the employer became aware of the employee's unfitness, not whether the tortious act was within scope. *Id.* at *19 n.2. This is direct liability based on the City's own pre-tort retention and supervision decisions, not vicarious liability. *Id.* The Amended Complaint alleges Mooney had a documented history of placing a weapon to a civilian's head, beating a surrendered motorcyclist, and making death threats to fellow officers—all known to the City through formal and informal complaints, yet the City failed to discharge, discipline, or reassign him. [ECF 12, ¶¶ 61–62]. Unlike in *Asia*, where prior complaints were investigated and found unsubstantiated, White's allegations involve specific documented incidents of the same character as the conduct alleged here, satisfying the notice and proximate cause elements at the pleading stage. *See N.R. v. Sch. Bd. of Okaloosa Cnty.*, 418 F. Supp. 3d 957, 996 (N.D. Fla. 2019). Sovereign immunity does not bar Count XXIV and the elements are likewise adequately pled.

## VII. WHITE ADEQUATELY STATES CLAIMS FOR MALICIOUS PROSECUTION AGAINST INDIVIDUAL DEFENDANTS MOONEY, HOWARD, RIVERA, AND COOK

Under Florida law, malicious prosecution requires: (1) commencement or continuation of criminal proceedings against the plaintiff; (2) the defendant was the

25

legal cause of that proceeding; (3) favorable termination; (4) absence of probable cause; (5) malice; and (6) damages. *See Alamo Rent-A-Car, Inc. v. Mancusi*, 632 So. 2d 1352, 1355 (Fla. 1994). The Section 1983 malicious prosecution claims in Counts X–XIII require these same elements, plus a Fourth Amendment seizure arising from the judicial proceeding itself. *Williams v. Aguirre*, 965 F.3d 1147, 1157 (11th Cir. 2020). The state law claims in Counts XIV–XVII require only the common law elements. *Alamo Rent-A-Car*, 632 So. 2d at 1355.

Each element is adequately pleaded. Criminal proceedings were commenced against White following his arrest. [ECF 12, ¶ 60]. Mooney caused the prosecution by arresting White without probable cause and providing the reports forming the basis of the charges [ECF 12, ¶¶ 23, 26, 30–31, 64–65].; Howard facilitated the arrest [ECF 12, ¶¶ 29, 33–34, 82]; Rivera and Cook ratified the detention preventing White's pre-charge release—each satisfying legal causation. [ECF 12, ¶¶ 38–41]; *See Blackshear v. City of Miami Beach*, 799 F. Supp. 2d 1338, 1347–48 (S.D. Fla. 2011). The District Attorney terminated the proceedings as baseless—constituting favorable termination. [ECF 12, ¶¶ 60, 150, 162, 174, 186]. *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004). Probable cause was absent for the reasons established herein, *supra* at § III. Malice is inferred from that absence and confirmed by Mooney's own retaliatory statements—legal malice need not be proven directly (or at all on the pleadings). *Alamo Rent-A-Car*, 632 So. 2d at 1357.

White has alleged extensive damages including his heart attack, emotional harm, and legal fees. [ECF 12, ¶¶ 54–60].

For the Section 1983 claims, the post-arrest criminal proceedings including mandatory court appearances and pretrial liberty restrictions constitute the required Fourth Amendment seizure independent of the underlying arrest. *Blackshear*, 799 F. Supp. 2d at 1347–49; [ECF 12, ¶ 149]. White has adequately stated claims on Counts X–XVII and XIV–XVII.

## VIII. WHITE STATES CLAIMS FOR FALSE ARREST AGAINST DEFENDANTS

The elements and probable cause standard for Florida common law false imprisonment are identical to those governing the federal false arrest claims. *Land v. Sheriff of Jackson Cnty. Fla.*, 85 F.4th 1121, 1130 (11th Cir. 2023). White was physically seized, handcuffed, transported to the police department, and confined against his will—all without his consent and without probable cause as established in Section III. [ECF 12, ¶¶ 28, 37, 45–48]. The same absence of probable cause that defeats qualified immunity on Counts I–IV establishes the unlawful restraint element of false imprisonment on Counts V–VIII as to each Individual Defendant for the same reasons outlined above.

The state-agent immunity argument for the Individual Defendants is addressed herein, *supra* at § V. As established there, Mooney's verbalized retaliatory intent satisfies the bad faith exception, and the determination is a jury question that

cannot be resolved at the pleading stage. *See Willingham v. City of Orlando*, 929 So. 2d 43, 48 (Fla. 5th DCA 2006).

Count IX against the City is pleaded in the alternative. If the Individual Defendants' conduct does not rise to the level of bad faith, the City bears respondeat superior liability for the same within-scope conduct. [ECF 12, ¶ 135]. As also established herein, *supra* at § VI, this alternative pleading structure directly addresses the *Ghandour* concern and the *McGhee* binary. *Ghandour v. City of Miami*, 710 F. Supp. 3d 1188, 1195 (S.D. Fla. 2024); *McGhee v. Volusia Cnty.*, 679 So. 2d 729, 733 (Fla. 1996). Indeed, White has adequately pleaded the elements of false imprisonment as to all Defendants on Counts V–IX.

## IX.   THE AMENDED COMPLAINT IS NOT A SHOTGUN PLEADING

The Eleventh Circuit has identified four categories of shotgun pleadings: complaints with multiple counts that each adopt all preceding allegations; complaints with conclusory and vague facts not connected to a particular cause of action; complaints that fail to separate causes of action into distinct counts; and complaints combining multiple claims against multiple defendants without specifying which defendant is responsible for which act. *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F. 3d 1313, 1321–23 (11th Cir. 2015). Dismissal for shotgun pleading is appropriate only where it is virtually impossible to know which

factual allegations are intended to support which claims for relief. *Harvard v. Inch*, 411 F. Supp. 3d 1220, 1233 (N.D. Fla. 2019) (citing *Weiland*, 792 F.3d at 1325).

White's twenty-four counts are organized into individually numbered counts, each identifying the specific defendants against whom that count is brought, the specific constitutional or common law basis for each claim, and the specific factual allegations supporting it. Defendants plainly understood the claims against them—their Motion addresses each count substantively in turn, which itself demonstrates the Amended Complaint gave adequate notice. *See N.R. v. Sch. Bd. of Okaloosa Cnty.*, 418 F. Supp. 3d 957, 977 n.13 (N.D. Fla. 2019) (declining to dismiss 99-page, 17-count complaint as shotgun pleading, even despite acknowledging complaint's organizational imperfections, where each count did not incorporate prior counts and defendants were able to respond to allegations). Where defendants can identify and respond substantively to every claim asserted—as they have done here—dismissal for shotgun pleading is not warranted.

## X.   CONCLUSION

Based on the foregoing, Defendant fails to demonstrate that it is entitled to dismissal as a matter of law on *any* of the claims asserted against it. As a result, the Defendant's Motion to Dismiss should be denied in its entirety. To the extent this Court grants Defendant's Motion to Dismiss, Plaintiff requests leave to file a Second Amended Complaint.

Respectfully submitted this 22nd day of May, 2026.

Respectfully submitted,

**ANDREWS LAW FIRM**
822 North Monroe Street
Tallahassee, Florida 32303
**T:** (850) 681-6416 | **F:** (850) 681-6984

*/s/ Ryan J. Andrews*
RYAN J. ANDREWS (FBN 104703)
DAVID A. WEISZ (FBN 1023229)
GEORGE E. MCCANN (FBN 1072064)
ryan@andrewslaw.com
david@andrewslaw.com
george@andrewslaw.com
service@andrewslaw.com
*Counsel for Plaintiff*

**CERTIFICATE OF RULE 7.1(F) COMPLIANCE**

In compliance with Local Rule 7.1(F) for the United States District Court of the Northern District of Florida, this motion and memorandum contain 7,008 words.

30

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been

served through the CM/ECF portal, which will serve all counsel of record, on this

22nd day of May, 2026.

Alyssa M. Yarbrough (FBN 103407)
William G. Warner (FBN 0346829)
**WARNER LAW FIRM, P.A.**
501 W. 11th Street, Suite A
Panama City, FL 32401
Phone No. (850) 784-7772
pleadings@warnerlaw.us

*/s/ Ryan J. Andrews*
RYAN J. ANDREWS

31