UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**DARRYL WHITE**,

    **Plaintiff**,

**v.**                                    **Case No. 3:26-cv-806-TKW-ZCB**

**CITY OF FORT WALTON BEACH,
et al.**,

    **Defendants**.

_____/

## ORDER ON MOTION TO DISMISS

This case is before the Court based on Defendants'[1] motion to dismiss (Doc. 14).  Upon due consideration of the motion, Plaintiff's response in opposition (Doc. 22), the amended complaint (Doc. 12), and the videos submitted by Defendants (Docs. 6-1 through 6-5),[2] the Court finds that the motion is due to be granted in part and denied in part.

### Facts

On July 20, 2024, around 4:30 a.m., Plaintiff was driving from Fort Walton Beach to Destin when he was pulled over by Officer Mooney and Officer Howard

---

[1] The City of Fort Walton Beach (FWB) and FWB police officers Patrick Mooney, Austin Howard, Ritchie Rivera, and Michael Cook (the Officer Defendants).

[2] The Court can consider the videos at this stage of the case because they are central to Plaintiff's claims and their authenticity is not challenged.  *See Swinford v. Santos*, 121 F.4th 179, 187 (11th Cir. 2024); *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024).

for running a red light. Plaintiff admitted to the infraction and Officer Mooney issued Plaintiff a citation and returned his documents.

After the traffic stop, Plaintiff drove a short distance before pulling over to check whether Officer Mooney had returned his insurance card. Plaintiff was unable to locate the card and assumed that Officer Mooney had forgotten to return it.[3]

As Plaintiff was driving back to the location of the traffic stop, he passed Officer Mooney's patrol car driving in the opposite direction. Plaintiff then made a U-turn to catch up to Officer Mooney.[4]

Shortly after making the U-turn, Plaintiff located Officer Mooney in a parking lot and stopped next to his patrol car. When Plaintiff stopped, Officer Mooney jumped out of his patrol car and yelled at Plaintiff to get out of his truck. Plaintiff complied.

Officer Mooney "shoved" Plaintiff against his truck and handcuffed him. Plaintiff claims the shove left bruises on his shoulders, arms, wrists, hands, knees, and legs, and that he was so startled by Officer Mooney's actions that he involuntarily defecated on himself.

---

[3] It turned out that Officer Mooney had returned the insurance card to Plaintiff and it was located on the dashboard of his truck.

[4] It is undisputed that Plaintiff made the U-turn (it is clearly shown on the dash camera video from his truck) and there does not appear to be any dispute that it was an illegal U-turn. However, Plaintiff claims that there is no way that Officer Mooney could have seen him make the U-turn to know that it was illegal because the curvature of the road would have obstructed Officer's Mooney's view of the location where Plaintiff made the U-turn.

Officer Howard then arrived at the scene and watched Officer Mooney put Plaintiff into the back of his patrol vehicle.  When Plaintiff asked why he was being arrested, Officer Mooney told him it was for "reckless driving" and "busting U-turns."  Officer Mooney also told Plaintiff that "you wanted to play these games, guess what, you win, you are winning a whole trip to jail… you wanted to play games, so now we are going to play games … you are under arrest for reckless driving."

Shortly after Plaintiff was placed in the back of Officer Mooney's patrol car, Officers Rivera and Cook arrived at the scene.  Officers Mooney and Howard explained to them that Plaintiff had been arrested for "reckless driving" and "playing games."  Officer Rivera laughed at this explanation.

Before taking Plaintiff to the police station for booking, Officers Mooney and Howard searched his truck and noticed a bottle of nitroglycerin pills that Plaintiff took for a heart condition.  Relatedly, during the arrest, Plaintiff told Officer Mooney that he was having chest pain, that he had a heart condition, that he had surgery scheduled in less than two weeks, and that he needed to take his nitroglycerin pills. Officer Mooney ignored these complaints.

After arriving at the police station, Officer Mooney firmly guided Plaintiff through the police department to a holding cell.  Officer Mooney then removed

Plaintiff's handcuffs (allegedly tightening them before he removed them) and closed the cell door.

Plaintiff's chest pain continued to worsen while he sat in the holding cell, "causing extreme, paralyzing pain." Plaintiff called out to Officer Mooney for help, but he was ignored and left without care for an extended period of time. Officer Mooney told other officers that Plaintiff was not actually in pain and was merely suffering from "incarceritis." Despite this, another officer noticed Plaintiff's requests for help and called emergency services.

The Fort Walton Beach Fire Department (FD) soon arrived and began to administer medical treatment to Plaintiff. As they did so, Officer Mooney falsely told them that Plaintiff had been caught "running from the police" when he was arrested. Officer Mooney also told the FD that Plaintiff was being an "asshole" and insisted that he should remain in jail and not be taken to the hospital.

The FD ignored Officer Mooney and took Plaintiff to the Fort Walton-Destin Hospital. Once there, the attending cardiologist diagnosed Plaintiff with an acute myocardial infarction (heart attack) and attributed the heart attack to the force used during Plaintiff's arrest and the denial of his nitroglycerin pills. As a result of the heart attack, Plaintiff underwent surgery to have a stent placed in his heart.

Plaintiff alleges that criminal charges were brought against him based on Officer Mooney's "fabricated lies" and that he endured a "prolonged pretrial

4

incarceration" before the charges were dropped.  The amended complaint does not allege when the charges were filed, when they were dropped, and how long Plaintiff was detained after the charges were filed—but it appears from the online court docket (which the Court can judicially notice) that the case was initiated by through a notice to appear (not an indictment or information) on July 29, 2024, that the case was dropped less than two months later on September 25, and that Plaintiff was not in custody while the case was pending.  *See* Okaloosa Cnty. Case No. 2024-CT-1784.

Plaintiff claims that this experience has left him with "life-altering symptoms," including extreme stress, trauma, decline in mobility and physical independence, nightmares, difficulty sleeping, anxiety, economic damages, and more.[5]

### Procedural Background

In February 2026, Plaintiff filed suit against Defendants in this Court. Defendants responded to the complaint with a motion to dismiss, which was denied as moot after Plaintiff filed an amended complaint.  *See* Doc. 13.

---

[5] The Court is required to accept these allegations as true at this stage of the case, but it is hard to imagine that this incident was as "life-altering" as Plaintiff claims because he was 77-years old with a heart condition at the time and, as a veteran, he presumably endured far more stressful or traumatic events during his service.  Indeed, based on the videos, it appears that Plaintiff is trying to make far more out of this case than what it appears to be.  That said, if this case is not resolved at or before summary judgment, it will be up to the jury (not the Court) to assess the veracity of Plaintiff's claimed injuries.

The 82-page, 290-paragraph amended complaint asserts 24 counts under federal and state law: false arrest under 42 U.S.C. §1983 against the Officer Defendants (Counts I through IV); false imprisonment/arrest under state law against all defendants (Counts V through IX); malicious prosecution under §1983 (Counts X through XIII) and state law (Counts XIV through XVII) against the Officer Defendants; excessive force (Count XVIII) and deliberate indifference to serious medical needs claims (Count XIX) under §1983 against Officer Mooney; failure to intervene under §1983 against Officers Howard, Rivera, and Cook (Counts XX through XXII); and state law negligence (Count XXIII) and negligent supervision/retention (Count XXIV) against FWB.

Defendants responded to the amended complaint with a motion to dismiss under Fed. R. Civ. P. 12(b)(6). The motion is fully briefed. The parties did not request oral argument on the motion, and the Court sees no need for it. Thus, the motion is ripe for resolution.

## Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face

6

"when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When reviewing a motion to dismiss, the Court generally must accept the well-pled facts in the operative complaint as true, but the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555). But where there is a clear video that "obviously contradicts the plaintiff's alleged facts, [the Court] accept[s] the video's depiction instead of the complaint's account, and view[s] the facts in the light depicted by the video." *Baker v. City of Madison*, 67 F.4th 1268, 1277–78 (11th Cir. 2023) (internal citations omitted).

## Analysis

Defendants argue that each count in the amended complaint should be dismissed for one reason or another.[6] Thus, each count will be discussed in turn— starting with the federal claims.

---

[6] Defendants also make a one-sentence argument that the amended complaint should be dismissed as a "shotgun pleading" because it contains unsupported and conclusory allegations, but because this argument is not developed, the Court need not consider it. *See U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) (explaining that the court will not consider a "perfunctory and underdeveloped argument"); *Cousins v. School Bd. of Orange Cnty.*, 687 F. Supp. 3d 1251, 1280 (M.D. Fla. 2023) ("[T]his Court is not obligated to address arguments raised in passing … or that are perfunctory and underdeveloped"). That said, for sake of completeness, the Court rejects Defendants' argument that the amended complaint is a shotgun pleading because even though the amended complaint is much longer than it needs to be and Plaintiff appears to be trying to make far more out of this case than what it is, the amended complaint still provides Defendants adequate notice of the claims against them and the grounds on which those claims rest. *See Bailey v. Janssen Pharm., Inc.*, 288 F. App'x 597, 603 (11th Cir. 2008) ("[A] complaint—so

### 1.    Federal Claims

Defendants argue that the federal claims do not adequately allege constitutional violations and/or that the Officer Defendants are entitled to qualified immunity[7] on those claims.  Each claim will be discussed in turn.

### a.    *False Arrest (Counts I through IV)*

Defendants argue that (1) the §1983 false arrest claims against the Officer Defendants fail as a matter of law because there was probable cause to arrest Plaintiff or (2) the Officer Defendants are entitled to qualified immunity on those claims because there was at least arguable probable cause for Plaintiff's arrest.  The Court agrees with respect to Officers Cook, Howard, and Rivera, but not Officer Mooney.

"An officer violates a person's Fourth Amendment right against unreasonable seizures if the officer arrests that person without probable cause to make the arrest." *Garcia v. Casey*, 75 F.4th 1176, 1186 (11th Cir. 2023).  The existence of probable cause is thus "an absolute bar" to challenging the arrest.  *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010).

---

long as it is minimally sufficient to put a defendant on notice of the claims against him—will not fail for mere surplusage.").

[7] "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Thus, to overcome qualified immunity, the plaintiff must allege (and ultimately prove) that the defendant "violated a constitutional right" that was "clearly established" when the violation occurred.  *See Christmas v. Harris County*, 51 F.4th 1348, 1354 (11th Cir. 2022).

Probable cause exists when "a reasonable officer could conclude … that there was a substantial chance of criminal activity." *Garcia*, 75 F.4th at 1186 (alteration in original) (quoting *Washington v. Howard*, 25 F.4th 891, 902 (11th Cir. 2022)). And "[p]robable cause … may be found if there is probable cause to believe any crime was committed, whether or not there is probable cause for the crime the arresting officer actually believed had been committed." *Manners v. Cannella*, 891 F.3d 959, 969 (11th Cir. 2018); *see also Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty.*, 956 F.2d 1112, 1119 n.4 (11th Cir. 1992) ("The validity of an arrest does not turn on the offense announced by the officer at the time of the arrest.").

An officer who lacks actual probable cause to make an arrest is "entitled to qualified immunity if he has 'arguable probable cause.'" *Richmond v. Badia*, 47 F.4th 1172, 1181 (11th Cir. 2022) (quoting *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998)). An officer has arguable probable cause if "a reasonable officer, looking at the entire legal landscape at the time of the arrests, could have interpreted the law as permitting the arrests." *Garcia*, 75 F.4th at 1186 (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 68 (2018)). "[W]hat counts for qualified immunity purposes relating to probable cause to arrest is the information known to the defendant officers or officials at the time of their conduct." *Jones v. Cannon*, 174 F.3d 1271, 1283 n.4 (11th Cir. 1999).

### i.    *Officer Mooney*

Plaintiff argues that Officer Mooney did not have probable cause—or even arguable probable cause—to arrest him for reckless driving because the amended complaint alleges that Officer Mooney would not have been able to "observe or otherwise apprehend that Plaintiff was making a U-turn over a yellow line" from his vantage point due to the curvature of the road.  Accepting that allegation as true (as the Court must at this stage of the case), Plaintiff has plausibly alleged that Officer Mooney did not have probable cause or arguable probable cause to arrest him for reckless driving.  Indeed, a reasonable officer who does not see, hear, or otherwise perceive the conduct alleged to constitute the offense—here, the U-turn—could not conclude that probable cause existed to arrest Plaintiff for reckless driving or reasonably, albeit mistakenly, believe that such an arrest was authorized.

The Court did not overlook Defendants' argument that video evidence from the dashboard camera on Plaintiff's truck shows him making an illegal U-turn thereby providing probable cause.  That argument is not persuasive because the question is not whether the conduct occurred, but rather whether Officer Mooney had any reasonable basis to believe that it did.  *Id.* (explaining that "the facts known to the plaintiff then or those known to a court later" are irrelevant for probable cause purposes).  And the videos from Officer Mooney's vantage point do not clearly show

10

Plaintiff making the U-turn or refute his allegation that Officer Mooney could not have seen him make the U-turn.

The Court also did not overlook Defendants' argument that during the first traffic stop, Plaintiff admitted to Officer Mooney that he had run a red light. That admission, however, concerned separate conduct that had already been addressed by the issuance of a traffic citation. Thus, that admission could not furnish probable cause, or even arguable probable cause, to arrest Plaintiff for reckless driving based on an alleged illegal U-turn that occurred after the first traffic stop ended.

Accordingly, the false arrest claim against Officer Mooney is adequately pled and is not barred by qualified immunity because the amended complaint plausibly alleges that he did not have probable cause or arguable probable cause to arrest Plaintiff for reckless driving or any other offense. [8]

<u>*ii.*</u>     *Other Officer Defendants*

The claims against the other Officer Defendants are subject to a different analysis because their involvement in the arrest was not the same as Officer Mooney's. Officer Howard arrived on scene as Officer Mooney was handcuffing Plaintiff, and Officers Rivera and Cook arrived on the scene after Plaintiff had

---

[8] Defendants do not argue that Officer Mooney would be entitled to qualified immunity because the right he allegedly violated was not clearly established, and even if they had made that argument, it would have been rejected because "it is clearly established that an arrest made without probable cause violates the Fourth Amendment." *Davis v. Williams*, 451 F.3d 759, 764 n.8 (11th Cir. 2006).

11

already been placed in Officer Mooney's patrol car.  Thus, the only information they had was what they were told by Officer Mooney.

Officer Mooney informed the other officers that Plaintiff was being arrested for reckless driving, and under the "fellow officer rule . . . an arresting officer [may] assume probable cause to arrest a suspect from information supplied by other officers."  *Voorhees v. State*, 699 So. 2d 602, 609 (Fla. 1997); *see also Killmon v. City of Miami*, 199 F. App'x 796, 800 (11th Cir. 2006).  Thus, the other officers were entitled to assume probable cause existed based on that representation.

Moreover, even if it is true that Officer Howard allegedly appeared to be "confused" by Officer Mooney's explanation and Officer Rivera allegedly "laughed" when told the reason for the arrest, that is not enough to establish that they disbelieved Officer Mooney or knew that probable cause was lacking.  Indeed, there is nothing in the amended complaint suggesting that the other officers witnessed the events giving rise to the arrest or that they had any information undermining what they were told by Officer Mooney. *Cf. Killmon*, 199 F. App'x at 800 ("When an officer is present with a fellow officer and both observe the same course of events, it is unreasonable for an officer to rely upon the fellow-officer rule to determine that probable cause exists").

Accordingly, because the information provided to the other Officer Defendants gave them probable cause under the "fellow officer rule," the false arrest claims against them for their role in Plaintiff's arrest fail as a matter of law.

\* \* \*

In sum, for the reasons stated above, the §1983 false arrest claim against Officer Mooney (Count I) can proceed, but the §1983 false arrest claims against the other Officer Defendants (Counts II, III, and IV) will be dismissed.

### b.   Malicious Prosecution (Counts X through XIII)

The Defendants argue that the §1983 malicious prosecution claims against the Officer Defendants should be dismissed because (1) the amended complaint does not adequately allege a constitutional violation (and, thus, they are entitled to qualified immunity) since they had probable cause to arrest Plaintiff and there are no allegations showing that they acted with malice, and (2) as to Officers Howard, Rivera, and Cook, there are no allegations that they were the legal cause of Plaintiff's arrest. The Court agrees with respect to Officers Cook, Howard, and Rivera, but not Officer Mooney.

To state a claim for malicious prosecution under §1983, a plaintiff must allege "both a violation of his Fourth Amendment right to be free of unreasonable seizures and the elements of the common law tort of malicious prosecution." *Williams v. Aguirre*, 965 F.3d 1147, 1157 (11th Cir. 2020) (cleaned up) (citation omitted). "The

13

constituent elements of the common law tort of malicious prosecution include: (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Butler v. Smith*, 85 F.4th 1102, 1111 (11th Cir. 2023) (alterations adopted) (citation omitted). A plaintiff must also show that he "suffered a seizure pursuant to legal process." *Laskar v. Hurd*, 972 F.3d 1278, 1284 (11th Cir. 2020).

Here, based on the determination above that Officers Howard, Rivera, and Cook had probable cause for their involvement in Plaintiff's arrest, the malicious prosecution claims against them fail as a matter of law.[9] *See Hardaway v. Dickerson*, 735 F. App'x 1003, 1005 (11th Cir. 2018) (holding that "malicious prosecution claims fail if the officers had probable cause to arrest him").

With respect to Officer Mooney, however, based on the determination above that he did not have probable cause (or even arguable probable cause) to arrest

---

[9] Based on this conclusion, the Court need not consider Defendants' argument that these officers were not the "legal cause of [Plaintiff's] arrest." However, because a claim for malicious prosecution is based on the misuse of the legal process, the fact that these officers may not have been the legal cause of Plaintiff's arrest is immaterial to the malicious prosecution claim. *See Nieves v. Barlett*, 587 U.S. 391, 405 (2019) ("At common law, false imprisonment arose from a detention without legal process, whereas malicious prosecution was marked by wrongful institution of legal process") (quotations and emphasis omitted); *Kingsland v. City of Miami*, 382 F.3d 1220, 1235 (11th Cir. 2004) ("In the case of a warrantless arrest, the judicial proceeding [i.e., the legal process] does not begin until the party is arraigned or indicted."). That said, it is hard to understand how Plaintiff would have a malicious prosecution claim against these officers because the amended complaint does not allege any facts showing that they had any involvement in the initiation or continuation of the post-arrest legal process.

Plaintiff, the malicious prosecution claim against him is not subject to dismissal on that basis. Moreover, because "malice may be inferred entirely from a lack of probable cause," *Adams v. Whitfield*, 290 So. 2d 49, 51 (Fla. 1974); *see also Spadaro v. City of Miramar*, 2013 WL 495780, at \*16 (S.D. Fla. Feb. 7, 2013) ("[B]ecause the existence of malice may be inferred from an absence of probable cause, the Court will allow a jury to resolve the issue"), the malicious prosecution claim against Officer Mooney is also not subject to dismissal for not adequately alleging that he acted with malice. Accordingly, the malicious prosecution claim against Officer Mooney is not subject to dismissal based on the arguments raised by Defendants in the motion to dismiss.[10]

*   *   *

In sum, for the reasons stated above, the §1983 malicious prosecution claims against Officer Mooney (Count X) can proceed, but the §1983 malicious prosecution claims against the other Officer Defendants (Counts XI, XII, and XIII) will be dismissed.

---

[10] Defendants do not argue that Officer Mooney is entitled to qualified immunity on the malicious prosecution claim because the law was not clearly established—likely because the amended complaint alleges that the "fabricated lies" in his reports provided the basis for the charges against Plaintiff, and the law was clearly established that an officer violates the Fourth Amendment by knowingly making false statements or providing materially false information that causes an individual to be subjected to an unlawful seizure or prosecution. *See Eloy v. Guillot*, 289 F. App'x 339, 347 (11th Cir. 2008). That said, if as it appears, Plaintiff was not detained after legal process issued, it is hard to understand how he is going to establish the unlawful seizure element of the §1983 malicious prosecution claim. *See Kingsland*, 382 F.3d at 1235–36.

15

c.    *Excessive Force (Count XVIII)*

Officer Mooney argues that the §1983 excessive force claim against him fails as a matter of law and/or that he is entitled to qualified immunity on that claim because the body camera videos refute the allegations that excessive force was used on Plaintiff.  The Court agrees.

The Eleventh Circuit has recognized two distinct types of excessive force claims: "artificial" and "genuine."  *Richmond*, 47 F.4th at 1180.  An "artificial" excessive force claim is one that asserts that the officer's use of force was excessive "only because the arrest was not supported by probable cause," whereas a "genuine" excessive force claim is one that asserts that the manner in which the officer used force was unreasonable irrespective of the probable cause to make the arrest.  *Id.*  An "artificial" excessive force claim is subsumed within the false arrest claim, but a "genuine" excessive force claim is not.  *Id.*

Here, Plaintiff appears to assert a "genuine" excessive force claim because he alleges that Officer Mooney shoved him against his truck with sufficient force to cause bruising and cause him to defecate on himself; threatened to use additional force; forcibly pulled him from the patrol car; pushed him through the police department; and briefly tightened his handcuffs while removing them.  Putting aside the fact that Officer Mooney's body camera video refutes Plaintiff's characterization

16

of most of these incidents,[11] the force described by Plaintiff is not constitutionally excessive under the circumstances.

"The Fourth Amendment prohibits 'the use of excessive force in the course of an arrest.'" *Huebner v. Bradshaw*, 935 F.3d 1183, 1190 (11th Cir. 2019) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002)). Whether an officer used excessive force "is governed by the Fourth Amendment's 'objective reasonableness' standard." *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 197 (2004)). The reasonableness inquiry analyzes the "totality of the circumstances," *Barnes v. Felix*, 605 U.S. 73, 76 (2025), and an officer's use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," *Graham v. Connor*, 490 U.S. 386, 396 (1989).

The Eleventh Circuit has long recognized that "the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000). And

---

[11] For example, the video shows, at most, Plaintiff's shoulder making contact with his truck when Officer Mooney pushed him against it, which is inconsistent with Plaintiff's allegation that Officer Mooney "used so much force in pushing Plaintiff against his truck that it caused bruises on Plaintiff's shoulders, arms, wrists, hands, knees, and legs." Doc. 12 at ¶ 28. Likewise, Plaintiff's allegations that Officer Mooney "yank[ed]" him out of the patrol car at the police station and "shov[ed] him through the police department," *id.* at ¶45, are contradicted by the video evidence, which shows Plaintiff exiting the patrol car on his own and Officer Mooney merely guiding Plaintiff through the department while maintaining a custodial hold. Additionally, the video does not show Officer Mooney tightening Plaintiff's handcuffs before he removed them and put Plaintiff into the holding cell.

17

even when *de minimis* force might be "unnecessary," it is "not unlawful." *Durruthy v. Pastor*, 351 F.3d 1080, 1094 (11th Cir. 2003). Here, Plaintiff's allegations amount to nothing more than the use of *de minimis* force.

Plaintiff alleges (and the body camera videos show) only brief and commonplace physical force used in the course of effectuating his arrest and moving him through the police department. Notably, Plaintiff does not allege that Officer Mooney struck him, kicked him, or applied force for any purpose other than restraining and controlling him. And the Eleventh Circuit has repeatedly held that similar—and in some cases, more significant—uses of force were *de minimis*. *See, e.g.*, *Taylor v. Taylor*, 649 F. App'x 737, 746 (11th Cir. 2016) (finding force *de minimis* when officer "grabbed [plaintiff] without warning, slammed her against a patrol car several feet away, causing her head to hit the car first and then handcuffed her"); *Gomez v. United States*, 601 F. App'x 841, 850–51 (11th Cir. 2015) (collecting cases in which a variety of physical force techniques, including placing a foot on a plaintiff's back for up to ten minutes, grabbing and throwing a plaintiff against a van, kneeling on a plaintiff's back and slamming her head into a van, and placing plaintiff in a chokehold, constituted *de minimis* force); *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002) ("Painful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal.").

18

The Court did not overlook Plaintiff's allegations that he suffered a heart attack, defecated on himself, and injured his knees as a result of the encounter. Those alleged consequences, however, do not transform an otherwise objectively reasonable and *de minimis* use of force into a constitutional violation.  Indeed, the Eleventh Circuit has recognized that "minimal force does not become excessive because severe or tragic results occurred," and courts do not evaluate an officer's conduct with the benefit of hindsight.  *Collins v. Ensley*, 498 F. App'x 908, 913 (11th Cir. 2012); *see also Taylor*, 649 F. App'x at 746 (finding force *de minimis* even where plaintiff "suffered a spiral fracture in her hand and bruising to her hand, forearm, right upper eyelid, and chest").

Accordingly, for the reasons stated above, the §1983 excessive force claim against Officer Mooney (Count XVIII) will be dismissed because the amended complaint does not adequately allege (and the body camera videos refute) that the force that he used on Plaintiff was constitutionally excessive.

### d.    Deliberate Indifference to Medical Needs (Count XIX)

Officer Mooney argues that the §1983 deliberate indifference to medical needs claim fails as a matter of law and/or that he is entitled to qualified immunity on that claim because the amended complaint does not adequately allege that he was

19

subjectively aware that Plaintiff had an objectively serious medical need.[12]   The

Court disagrees.

In order to state a claim for deliberate indifference to medical needs under

§1983, the plaintiff "must show: (1) a serious medical need; (2) the defendants'

deliberate indifference to that need; and (3) causation between that indifference and

the plaintiff's injury." *Mann v. Taser Int'l., Inc.*, 588 F.3d 1291, 1306–07 (11th Cir.

2009).  Here, Defendants only challenge the first two elements—i.e., serious medical

need and deliberate indifference.

### i.      Serious Medical Need

"A serious medical need is one that has been diagnosed by a physician as

mandating treatment or one that is so obvious that even a lay person would easily

recognize the necessity for a doctor's attention." *Id.* at 1307 (citation and internal

quotation marks omitted).  The existence of a serious medical need is an objective

inquiry. *See Kelley v. Hicks*, 400 F.3d 1282, 1284 (11th Cir. 2005).

Here, the amended complaint plausibly alleges that Plaintiff had an

objectively serious medical need because it alleged that Plaintiff was 77-years old,

had an underlying heart condition for which he took nitroglycerin medication, and

---

[12] Defendants did not argue that Officer Mooney would be entitled to qualified immunity even if the deliberate indifference claim had been adequately pled because the right he allegedly violated was not clearly established, and that argument would not have been persuasive because it has long been clearly established that "knowledge of the need for medical care and intentional refusal to provide that care constitute[s] deliberate indifference." *Harris v. Coweta Cnty.*, 21 F.3d 388, 393 (11th Cir. 1994).

was experiencing severe chest pain.  Moreover, the fact that Plaintiff was found to have suffered a heart attack after he was taken to the hospital further supports an inference that he had a serious medical need when he interacted with Officer Mooney.

Accordingly, Plaintiff adequately alleged the first element of his deliberate indifference claim.

### ii.   Deliberate Indifference

To establish that the defendant acted with deliberate indifference, the plaintiff must show that (1) "the [defendant] was subjectively aware that the inmate was at risk of serious harm," (2) "the [defendant] disregarded that risk," and (3) "the defendant acted with subjective recklessness as used in the criminal law."  *Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024).  Thus, Plaintiff must allege facts that could support an inference that Officer Mooney was "actually, subjectively aware that his own conduct caused a substantial risk of serious harm to [P]laintiff." *Id.* at 1262.

For a defendant to have subjective knowledge of a serious risk of harm, "the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Knowledge can be inferred "from the very fact that the risk was obvious." *Id.* at 842.

21

Here, Plaintiff has adequately alleges that Officer Mooney had subjective knowledge of Plaintiff's serious medical need.  The amended complaint alleges that Officer Mooney discovered Plaintiff's nitroglycerin medication in his truck and that Plaintiff repeatedly informed Officer Mooney he was experiencing severe chest pain, had an underlying heart condition, was scheduled to undergo heart surgery in less than two weeks, and urgently needed his heart medication.  Despite having that information, Officer Mooney disregarded Plaintiff's repeated complaints and failed to obtain his medication or secure medical treatment for Plaintiff.  That is sufficient at this stage of the case to support an inference that the risk of harm to Plaintiff was so obvious that Officer Mooney was subjectively aware of it.

The Court did not overlook Defendants' argument that Officer Mooney was not subjectively aware that Plaintiff had a serious medical need because he allegedly told other officers that Plaintiff was merely suffering from "incarceritis."  That, however, does not insulate Officer Mooney from liability because the Eleventh Circuit has held that an officer can be found to be deliberately indifferent where he simply "chose to disbelieve, without investigation, everything [the plaintiff] said simply because []he was an inmate."  *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1331 (11th Cir. 2007).

Accordingly, Plaintiff has plausibly alleged the second element of his deliberate indifference claim.

\*   \*   \*

In sum, for the reasons stated above, the §1983 deliberate indifference to medical needs claim against Officer Mooney (Count XIX) will not be dismissed.

### e.   *Failure to Intervene (Counts XX, XXI, and XXII)*

Defendants argue that the §1983 failure-to-intervene claims against Officers Howard, Rivera, and Cook fail as a matter of law and/or they are entitled to qualified immunity because (1) the use of force that they did not intervene against was not constitutionally excessive, and (2) Officers Rivera and Cook were not present when the allegedly excessive force was used.  The Court agrees with both points.

With respect to the first point, it is well established that "an officer cannot be liable for failing to stop or intervene when there was no constitutional violation being committed." *Sebastian v. Ortiz*, 918 F.3d 1301, 1312 (11th Cir. 2019).  Thus, to the extent that the failure-to-intervene claim is based on the other officers' failure to intervene in the force used by Officer Mooney, the claim fails as a matter of law based on the rulings above that the force was not constitutionally excessive.[13]

---

[13] To the extent that the claim is based on the other officers' failure to intervene in Officer Mooney's false arrest of Plaintiff, that claim would fail as a matter of law because, as discussed above, the amended complaint does not plausibly allege that those officers had reason to believe that the arrest was unlawful. *Cf. Giddens v. Brooks Cnty.*, 2022 WL 836273, at *4 (11th Cir. Mar. 21, 2022) (explaining that "a non-arresting officer may be liable for failing to intervene in an unlawful arrest 'if he knew the arrest lacked any constitutional basis and yet participated anyway'") (quoting *Wilkerson v. Seymour*, 736 F.3d 974, 980 (11th Cir. 2013)).

With respect to the second point, Officers Rivera and Cook did not arrive on the scene until after Plaintiff was already in Officer Mooney's police car. Thus, even if the force used by Officer Mooney to detain Plaintiff (e.g., shoving him against his truck) was constitutionally excessive, Officers Rivera and Cook did not have any opportunity to intervene in that use of force. *See Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998) ("[I]n order for an officer to be liable for failing to stop police brutality, the officer must be in a position to intervene") (quotation omitted).

Accordingly, for the reasons stated above, the §1983 failure-to-intervene claims against Officers Howard, Rivera, and Cook (Counts XX, XXI, and XXII) will be dismissed.

### 2.    State Law Claims

Under Florida law, a municipal employee is immune from suit for torts committed within the scope of his employment unless the employee "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." §768.28(9)(a), Fla. Stat. Conversely, a municipality is immune from suit for torts committed by its employees in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. *Id.* Thus, liability for torts committed by a municipal employee rests with either the municipality or the employee—but not both—depending on whether the tort was committed in bad faith or with

24

malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. *See McGhee v. Volusia County*, 679 So. 2d 729, 733 (Fla. 1996) ("In any given situation either the agency can be held liable … or the employee, but not both").[14]

Here, Defendants argue that the state law claims are not adequately pled and/or are barred by §768.28(9)(a). Each claim will be discussed in turn.

### a.   Officer Defendants

The state law claims against the Officer Defendants—false imprisonment/arrest (Counts V through VIII) and malicious prosecution (Counts XIV through XVII)—mirror the §1983 false arrest and malicious prosecution claims. Thus, for the same reasons that the federal false arrest and malicious prosecution claims against Officers Howard, Rivera, and Cook are not adequately pled, the state law false imprisonment/arrest and malicious prosecution claims against those defendants are not adequately pled. *See Lozman v. City of Riviera Beach*, 39 F. Supp. 3d 1392, 1409 (S.D. Fla. 2014) ("A false arrest claim under §

---

[14]  This, however, does not preclude a plaintiff from alternatively pleading claims against both the municipality and the employee. *See Rice v. Fla. Dep't of Corr.*, 2023 WL 3645606, at *4 (M.D. Fla. May 25, 2023) ("Although the agency and employee cannot both be held liable under … §768.28, a plaintiff may plead her claims in the alternative."). That is what Plaintiff did in the false imprisonment/arrest claim. *See* Doc. 12 at ¶135 ("This count sets forth claims against Defendant FWB for common law false imprisonment/arrest, and is pled in the alternative. For purposes of this count, Plaintiff alleges that [the Officer Defendants] were not acting in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.").

1983 is substantially the same as a claim or false arrest under Florida law.”); *Arrington v. Kinsey*, 512 F. App’x 956, 958 (11th Cir. 2013) (“The existence of probable cause also constitutes an absolute bar to claims for both federal and Florida state claims of malicious prosecution”).  Likewise, for the same reasons that the §1983 false arrest and malicious prosecution claims against Officer Mooney are adequately pled, the corresponding state law claims are adequately pled.

Thus, the question as to whether the state law claims against Officer Mooney can proceed boil down to whether he is entitled to statutory immunity under §768.28(9)(a).  He is not—at least not at this stage of the proceeding—because the allegations in the amended complaint support an inference that Officer Mooney acted with a malicious purpose—i.e., “with the subjective intent to do wrong.” *Baxter v. Roberts*, 54 F.4th 1241, 1271 (11th Cir. 2022).

Specifically, with respect to the false imprisonment/arrest claim, the amended complaint alleges that Officer Mooney arrested Plaintiff without probable cause and told him that he was “winning a whole trip to jail” because he “wanted to play games”—which supports an inference that Officer Mooney was motivated by personal animus or a desire to punish Plaintiff rather than by a good-faith belief that Plaintiff had committed a crime.  *See, e.g.*, *Buress v. City of Miami*, 2024 WL 3666076, at *5 (11th Cir. Aug. 6, 2024) (affirming denial of immunity for false arrest claim where plaintiff “alleged sufficient facts to allow a reasonable jury to conclude

26

[the officer] acted … maliciously … by arresting [plaintiff] without probable cause," particularly where officer allegedly arrested plaintiff "because he was salty"); *Faile v. City of Leesburg*, 2024 WL 2148637, at *6 (11th Cir. May 14, 2024) (affirming denial of immunity for false arrest where plaintiff alleged that officers "arrested him knowing he had not committed a crime and fabricated evidence to manufacture probable cause for the arrest"). And with respect to the malicious prosecution claim, Plaintiff alleges that Officer Mooney "fabricated lies" to initiate and continue Plaintiff's prosecution—which supports an inference that Officer Mooney had a subjective intent to do wrong. *See Eiras v. Florida*, 239 F. Supp. 3d 1331, 1346 (M.D. Fla. 2017) (denying officer immunity on malicious prosecution claim where the plaintiff alleged that the officer maliciously "prosecuted him despite the fact that [the officer] knew or should have known that the charges were false and groundless")

Accordingly, for the reasons explained above, the state law claims against Officers Howard, Rivera, and Cook (Counts VI, VII, VIII, XV, XVI, and XVII) will be dismissed, but the state law claims against Officer Mooney (Counts V and XIV) can proceed.

### b.   FWB

The amended complaint asserts three claims against FWB—false imprisonment (Count IX), negligence (Count XXIII), and negligent supervision/retention (Count XXIV). Each count will be discussed in turn.

27

### i.    False Imprisonment/Arrest

Defendants make no argument with respect to the false imprisonment/arrest claim against FWB apart from the arguments they made with respect to the false imprisonment/arrest claims against the Officer Defendants.  Accordingly, because the amended complaint adequately pled a false imprisonment/arrest claim against Officer Mooney, it has also done so with respect to FWB.  *See Jessup v. Miami-Dade Cnty.*, 440 F. App'x 689, 693 (11th Cir. 2011) ("Under Florida law, a city is [vicariously] liable for a false arrest claim based upon the actions of its officer").

### ii.    Negligence

Defendants argue that the negligence claim against FWB should be dismissed insofar as it is based on the Officer Defendants' alleged intentional torts because, under Florida law, there is no such thing as the negligent commission of an intentional tort.  The Court agrees.  *See City of Miami v. Sanders*, 672 So. 2d 46, 48 (Fla. 3d DCA 1996) (explaining that "there is no such thing as the 'negligent' commission of an 'intentional tort'" and "[t]he concept of a cause of action for 'negligent' excessive force is an oxymoron").

The Court did not overlook Plaintiff's argument that the negligence claim is not based on the Officer Defendants' intentional torts but rather is based on FWB's "failure to exercise reasonable care over [Plaintiff's] known medical needs once he was in custody."  The problem with that argument is that the amended complaint

28

only alleges that the negligence count is grounded on FWB's alleged breach of its duty to monitor the actions of its officers in relation to the traffic stop and arrest. *See* Doc. 12 at ¶¶276–282. Indeed, nowhere in the negligence count does Plaintiff allege that FWB breached any duty owed to him while he was in custody, whether related to his medical care or anything else. And Plaintiff "cannot amend [his] complaint through a response to a motion to dismiss." *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 665 (11th Cir. 2015). Accordingly, as pled, the negligence claim in Count XXIII will be dismissed.

### iii.    Negligent Supervision/Retention

Defendants argue that the negligent supervision/retention claim should be dismissed because Florida law does not recognize such a claim where, as here, the employees are acting within the scope of their employment. The Court agrees.

"[U]nder Florida law, a claim for negligent hiring, retention, or supervision <u>requires</u> that an employee's wrongful conduct be committed outside the scope of employment." *Buckler v. Israel*, 680 F. App'x 831, 834 (11th Cir. 2017) (emphasis added). This is because a negligent supervision/retention claim involves the "direct negligence of the city," as opposed to claims based on vicarious liability where the employee must be acting <u>within</u> the scope of employment for the employer to be liable. *City of Boynton Beach v. Weiss*, 120 So. 3d 606, 610 (Fla. 4th DCA 2013); *see also Mallory v. O'Neil*, 69 So. 2d 313, 315 (Fla. 1954) (noting that negligent

29

supervision and retention "is grounded on negligence of the [employer] in knowingly keeping a dangerous servant on the premises which defendant knew or should have known was dangerous and incompetent and liable to do harm to the tenants" and does not "state a cause of action based on the doctrine of respondeat superior").

Courts "repeatedly dismiss negligent retention and supervision claims where a plaintiff fails to allege that the employee's tortious conduct was 'outside the scope' of their job duties." *See Yule v. Ocean Reef Cmty. Assoc.*, 2020 WL 3051505, at *10 (S.D. Fla. June 8, 2020) (collecting cases). And here, Plaintiff has not alleged that the Officer Defendants were acting outside the scope of their employment.

The Court did not overlook *Asia v. City of Miami Gardens*, 2016 WL 739656 (S.D. Fla. Feb. 25, 2016), which Plaintiff cites for the proposition that "the scope-of-employment element refers to the period during which the employer became aware of the employee's unfitness, not whether the tortious act was within the scope." Doc. 22 at 25. However, the Court does not find the reasoning in *Asia* to be persuasive because even though it is necessary for the employer to have become aware of the employee's unfitness during the employee's period of employment, *see Acts Ret.-Life Cmty. Inc. v. Estate of Zimmer*, 206 So. 3d 112, 114 (Fla. 4th DCA 2016); *Dep't of Env't Prot. v. Hardy*, 907 So. 2d 655, 660 (Fla. 5th DCA 2005), that temporal requirement does not change the fact that the employee's alleged tortious

30

conduct must have been outside the scope of his job duties, *see Yule*, 2020 WL 3051505, at \*9–11 (disagreeing with *Asia* and reaffirming that a plaintiff must allege that the employee's alleged tortious conduct was outside the scope of his job duties to state a claim for negligent supervision/retention).  Otherwise, the negligent supervision/retention claim would be duplicative of a negligence claim because an employer is vicariously liable for tortious conduct within (rather than outside of) the scope of the employee's job duties.

Accordingly, the negligent supervision/retention claim in Count XXIV of the amended complaint will be dismissed.

### Leave to Amend

Plaintiff requested leave to file an amended complaint if the Court determined that any of the claims in the amended complaint were insufficiently pled.  *See* Doc. 22 at 29.  Under Fed. R. Civ. P. 15(a)(2), leave to amend should be "freely give[n]" unless there is a good reason to deny it—such as if the amendment would be futile or the plaintiff has repeatedly failed to cure identified pleading deficiencies.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

Here, based on the allegations in the amended complaint and the video evidence, the Court cannot conceive of any additional facts that Plaintiff could allege to support any of the claims against Officers Howard, Rivera, and Cook, or to support an excessive force claim against Officer Mooney.  Thus, any amendment of

31

those claims would be futile. *See L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1332 (11th Cir. 2020) ("Leave to amend would be futile if an amended complaint would still fail at the motion-to-dismiss or summary-judgment stage."). However, the Court cannot say at this point that it would be futile for Plaintiff to amend the negligence claim against FWB. Thus, Plaintiff will be given the opportunity to file a second amended complaint re-pleading that claim.

### Conclusion

In sum, for the reasons stated above, it is **ORDERED** that:

1.    Defendants' motion to dismiss (Doc. 14) is:

    a.    **GRANTED** with respect to Counts II, III, IV, VI, VII, VIII, XI, XII, XIII, XV, XVI, XVII, XVIII, XX, XXI, XXII, XXIII, and XXIV, and the claims in those counts are **DISMISSED**; and

    b.    **DENIED** in all other respects.

2.    The Clerk shall terminate Officers Howard, Rivera, and Cook as defendants in CM/ECF.

3.    Plaintiff has 14 days from the date of this Order to file a second amended complaint re-pleading the negligence claim in Count XXIII—if he can do so in good faith.[15]

---

[15] If Plaintiff files a second amended complaint, it shall omit the claims that were dismissed by this Order. *See* N.D. Fla. Loc. R. 15.1(A).

32

4.     If Plaintiff files a second amended complaint, Officer Mooney and FWB have 14 days from the date it is filed to answer or otherwise respond to it.

5.     If Plaintiff does not file a second amended complaint, Officer Mooney and FWB have 14 days from the date it was due to answer the remaining claims against them in the amended complaint.

**DONE and ORDERED** this 5th day of August, 2026.

_____
**T. KENT WETHERELL, II**
**UNITED STATES DISTRICT JUDGE**

33