**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

**DARRYL WHITE,**

**Plaintiff,**

**v.** **CASE No. 3:26-cv-00806-TKW-ZCB**

**CITY OF FORT WALTON BEACH**
**and PATRICK MOONEY,**

**Defendants.**
**______________________________/**

## SECOND AMENDED COMPLAINT

Plaintiff, Darryl White, by and through the undersigned counsel, hereby sues the City of Fort Walton Beach and Patrick Mooney (collectively "Defendants"), for damages and alleges:

## NATURE OF THE ACTION

1. This is a civil rights action for monetary damages and is brought under 42 U.S.C. § 1983 and the common law of Florida. This action is based on violations of Plaintiff's civil and constitutional right to be free from civil rights violations, which are protected under the Fourth and Fourteenth Amendments to the United States Constitution. Plaintiff also brings supplemental state law claims and seeks to hold the Defendants liable for engaging in tortious activity and violations of Plaintiff's civil rights.

## PARTIES, JURISDICTION, AND VENUE

2. Darryl White ("White" or "Plaintiff"), is an individual over the age of 18, is *sui juris*, and is currently a resident of Okaloosa County, Fort Walton Beach, Florida. Plaintiff is currently seventy-nine years old. During the relevant time period, White was a resident of Okaloosa County, Fort Walton Beach, Florida, and a private citizen entitled to the full protection of the United States Constitution, including but not limited to the rights secured by the Fourth and Fourteenth Amendments, which guarantee freedom from unreasonable seizures, arrest without probable cause, malicious prosecution, and deprivation of liberty without due process of law. White has suffered, continues to suffer, and will continue to suffer serious economic and personal injuries as a result of the Defendants' tortious conduct, as described herein.

3. At all times pertinent hereto, Defendant, The City of Fort Walton Beach ("Defendant FWB"), operated a law enforcement department known as the Fort Walton Beach Police Department ("FWBPD") within the jurisdictional boundaries of this court, and has committed tortious acts and constitutional violations in Florida and within the jurisdiction of this Court.

4. At all times pertinent hereto, Defendant Patrick Mooney ("Defendant Mooney"), was employed by FWB as a Corporal for FWBPD. While acting under color of state law, Defendant Mooney proximately caused the deprivation of

Plaintiff's federally protected rights through his unlawful and unconstitutional conduct. Defendant Mooney is sued in his individual capacity.

5. This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. §§ 1331 and 1343 because this is a civil action seeking redress for the deprivation of rights secured by the United States Constitution.

6. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because they are part of the same case or controversy as Plaintiff's federal claims. Such claims subject to this Court's pendent jurisdiction are Counts II, III, V, and VII. As to the pendent claims, all conditions precedent have been satisfied prior to filing this lawsuit, including notice pursuant to Chapter 768.28, Florida Statutes to the Florida Department of Financial Services and the Fort Walton Beach Police Department.

7. Venue is in the Northern District of Florida, Pensacola Division, pursuant to 28 U.S.C. § 1391(b)(2), because the events giving rise to the claims asserted occurred in Okaloosa County, which is within the Northern District of Florida.

8. All claims alleged herein are brought within the applicable statute of limitations.

## RELEVANT NON-PARTIES

9. At all times pertinent hereto, Austin Howard ("Officer Howard"), a non-party to this action, was employed by FWB as an Officer for FWBPD and was acting within the course and scope of that employment.

10. At all times pertinent hereto, Ritchie Rivera ("Officer Rivera"), a non-party to this action, was employed by FWB as an Officer for FWBPD and was acting within the course and scope of that employment.

11. At all times pertinent hereto, Michael Cook Jr. ("Officer Cook"), a non-party to this action, was employed by FWB as an Officer for FWBPD and was acting within the course and scope of that employment.

## STATEMENT OF THE ULTIMATE FACTS

12. This is a case of disgraceful and shameless misconduct perpetrated by Defendants, as evidenced by their deliberate, arbitrary, and malicious actions against Plaintiff, demonstrating the utmost disregard for the safety, dignity, and protection of the people of Fort Walton Beach, especially its elderly population.

13. At all times relevant to this action, Defendant Mooney was employed by Defendant FWB and was acting within the course and scope of that employment.

14. During the relevant time period, including on July 20, 2024, Plaintiff was an elderly gentleman, seventy-seven years of age, a United States Air Force veteran, and a longtime resident of Fort Walton Beach.

15. On July 20, 2024, Plaintiff was driving early in the morning, at around 4:25 a.m. from his residence in Fort Walton Beach to Destin when Defendant Mooney and Officer Howard stopped him for running a red light at the intersection of Hollywood Boulevard and Eglin Parkway in Fort Walton Beach, Florida.[1]

16. At the commencement of the traffic stop, Plaintiff admitted to Defendant Mooney that he had run the red light. Defendant Mooney collected Plaintiff's driver's license, vehicle registration, and proof of insurance.[2] After approximately fifteen minutes, Defendant Mooney concluded the traffic stop and issued Plaintiff a traffic citation for running the red light.

17. Notably, after handing Plaintiff the ticket, Defendant Mooney started to walk back to his vehicle and end the traffic stop, but quickly noticed that he hadn't returned Plaintiff's documents, including his license, vehicle registration, or insurance card. At this point, Defendant Mooney was visibly disturbed and had become visibly angry at Plaintiff and held a trembling tenor in his voice when he went to Plaintiff to return the documents.

18. Plaintiff then slowly left the scene of the traffic stop and drove a short distance southbound on Perry Avenue before pulling into the back parking lot of a

---

[1] Officer Howard assisted Defendant Mooney by remaining outside his patrol car for most of the stop and watching Plaintiff as Plaintiff waited in his truck for Defendant Mooney to finish. Officer Howard's assistance during the stop was limited to asking Plaintiff additional questions and shining his flashlight into Plaintiff's eyes while Plaintiff sat in his truck.

[2] Defendant Mooney became visibly agitated almost immediately after speaking with Plaintiff, so much so that Officer Howard asked whether he was okay after returning to the patrol vehicle.

nightclub, The Block, to check his vehicle for the insurance card that had been taken by Defendant Mooney during the first traffic stop. Plaintiff searched his vehicle but was unable to locate the insurance card. Fearing that Defendant Mooney had not returned his insurance card, Plaintiff pulled out of The Block's parking lot, making a slow left turn when it was safe to do so, and drove back north on Perry Avenue to the location of the initial traffic stop. Plaintiff drove towards the scene of the traffic stop to see if Defendant Mooney or Officer Howard were still there, in case they could help him find or return the insurance card.

19. While driving north on Perry Avenue, Plaintiff saw a patrol car driving past him heading south. Believing the patrol car belonged to either Defendant Mooney or Officer Howard, Plaintiff decided to make a U-turn and follow the patrol car to retrieve his insurance card. Plaintiff slowed down from below the speed limit to a very slow pace out of caution and in the interest of safety to himself and/or other drivers and turned his wheels to the right to make a wide turn. Plaintiff then turned his wheels fully to the left to allow his truck to make a broad left turn from the northbound lane into the southbound lane. As Plaintiff began the U-turn, he could see the headlights of what seemed to be two vehicles traveling south in the distance. The section of Perry Avenue where Plaintiff made the U-turn had a double yellow line, so he performed the turn at a slow speed, ensuring he could do so decisively

and safely before southbound traffic approached close enough to pose a danger to him or oncoming vehicles.

20. Plaintiff's U-turn was executed safely and lawfully, without endangerment to any person or property, and without causing any other vehicle to brake, swerve, or react. Plaintiff ensured this by making the turn slowly and with regard to traffic and his surroundings.

21. As Plaintiff completed the U-turn, the corner of Perry Avenue blocked the view of the first patrol car heading southbound on Perry Avenue, so Plaintiff drove a short distance around the corner until he could see where the patrol car was.

22. Notably, this curvature in Perry Avenue not only obstructed the view of Plaintiff in seeing where the first patrol car went, it also obstructed the view of a southbound driver to see behind it to the part of the road where Plaintiff made the U-turn. This demonstrates that Defendant Mooney, the soon to be discovered driver of the first patrol car, did not actually see Plaintiff make the U-turn. Notably, Defendant Mooney predicated the arrest of Plaintiff as having made a U-turn yet based on the curved nature of this part of Perry Avenue, Defendant Mooney would be unable to actually see or otherwise apprehend that a U-turn had been made over a double yellow line. Without witnessing or being able to apprehend Plaintiff's U-turn, Defendant Mooney lacked any reasonable basis (and certainly not probable cause) to have made an arrest of Plaintiff for reckless driving. Indeed, Defendant

Mooney's arrest of Plaintiff for reckless driving was made without probable cause, arguable probable cause, or even a reasonable suspicion.

23. After driving south on Perry Avenue, Plaintiff noticed that the first patrol car had already pulled into the back parking lot of The Block and was parked facing Perry Avenue. Plaintiff then proceeded to slowly drive into The Block's parking lot, next to the parked patrol car, and rolled down his window to try to speak with Defendant Mooney for the return of his insurance card or for assistance in retrieving it.

24. Unbeknownst to Plaintiff, his insurance card had been returned to him by Defendant Mooney after the first traffic stop and was sitting on the dashboard of his truck, such that Plaintiff did not notice it after it was returned or when he searched inside his vehicle for it.

25. While unknown to Plaintiff at the time of the U-turn, the first patrol car that passed Plaintiff and pulled into the parking lot of The Block was Defendant Mooney. Due to the speed at which Defendant Mooney drove past Plaintiff and the slow speed at which Plaintiff made the U-turn, Defendant Mooney was unable to see Plaintiff start or make a U-turn.

26. As Plaintiff pulled into The Block parking lot, he parked near the patrol car. When Plaintiff came to a stop, Defendant Mooney jumped out of the patrol car and started yelling at Plaintiff to get out of his vehicle. Plaintiff fully complied with

all of Defendant Mooney's orders and did not resist or conduct himself in such a way that could have objectively or subjectively been considered threatening.[3] Plaintiff then attempted to ask Defendant Mooney about the location of his insurance card.

27. However, Defendant Mooney initially refused to address the issue of insurance card and ordered Plaintiff to face away. Defendant Mooney then pushed Plaintiff against his truck and handcuffed him. Defendant Mooney did so suddenly and without warning. Plaintiff, then seventy-seven years old, sustained bruising to his shoulders, arms, wrists, hands, knees, and legs. Plaintiff was so frightened and startled by the sudden and unexpected physical contact that he involuntarily defecated himself, which he told Defendant Mooney.[4]

28. As Defendant Mooney handled Plaintiff, Officer Howard arrived at the scene and watched Defendant Mooney push Plaintiff against his truck and into the back of Mooney's patrol vehicle.

29. When Plaintiff asked either Defendant Mooney or Officer Howard for an explanation for his arrest, Defendant Mooney told him the arrest was for "reckless

[3] Indeed, Plaintiff responded to Defendant Mooney's orders to get out of the car and turn around without issue, doing so with no resistance and making no indication of being a threat to himself, Mooney, or anyone else. Furthermore, Plaintiff conducted himself in the same manner at the first traffic stop, with Defendant Mooney (and Officer Howard) being well aware that Plaintiff was an older man and was not a threat to their safety.

[4] When Plaintiff told Defendant Mooney and Officer Howard this, Defendant Mooney mocked Plaintiff, saying, "you should probably have that checked out by a doctor," as he continued to handle Plaintiff.

driving", "busting U-turns", and declared, "you wanted to play these games, guess what, you win, you are winning a whole trip to jail… you wanted to play games, so now we are going to play games… you are under arrest for reckless driving."

30. Defendant Mooney's stated explanation for the arrest reveals his malicious purpose. As alleged above, the curvature of Perry Avenue and the speed at which Defendant Mooney was traveling made it impossible for him to have observed Plaintiff's U-turn, and he therefore had no factual basis for the offense he announced. What Defendant Mooney did tell Plaintiff was that he was "winning a whole trip to jail" because he "wanted to play games," and that "now we are going to play games." Those do not amount to an explanation of any offense, but instead shows Defendant Mooney's animus and intent to arrest Plaintiff and deliver him to jail as punishment for having returned to ask about his insurance card, without regard to whether any legal basis for the arrest existed.[5]

31. Defendant Mooney applied physical force while handling Plaintiff, an elderly veteran, resulting in bruising to Plaintiff's shoulders, arms, wrists, hands, knees, and legs due to the force used.[6] Because of Plaintiff's age and underlying

---

[5] To be certain, Defendant Mooney's conduct here, having conducted a seizure of Plaintiff's person without legal justification, amounts to a Fourth Amendment violation.

[6] Plaintiff had a pre-existing knee injury that was aggravated when Defendant Mooney pushed Plaintiff against his truck while placing him under arrest. As a result, Plaintiff has experienced increased pain and further loss of motion in his knee following the incident.

cardiac condition, even modest force, and the fear that it produced, carried a substantial risk of physical harm to Plaintiff under the circumstances.[7]

32. As Defendant Mooney handled Plaintiff, Officer Howard remained present and watched Mooney push Plaintiff against his truck and into the back of the patrol car, causing bruising to Plaintiff.

33. When Officer Howard arrived at the scene of Plaintiff's arrest, Plaintiff was already in the process of being handcuffed and had just been forced against his truck. Officer Howard immediately said to Defendant Mooney, "what are you doing."

34. Defendant Mooney and Officer Howard knew that Plaintiff was an elderly man and, based on their recent traffic stop, had no evidence suggesting that Plaintiff might pose a threat of harm to law enforcement or himself. Moreover, Plaintiff showed no signs of violent tendencies. In fact, Officer Howard remarked on Plaintiff's age, noting Plaintiff appeared confused and annoyed at being stopped for a traffic infraction after running a red light, yet clearly understanding that Plaintiff was not a violent or threatening person. Despite this awareness, Defendant Mooney used force on Plaintiff, much to Plaintiff's surprise, causing such fear in

---

[7] As discussed herein, Plaintiff is an elderly man with heart issues that made him frail and weak. Furthermore, during Plaintiff's interactions with Defendant Mooney and Officer Howard at the first and second traffic stops, as well as Plaintiff's conduct at the Fort Walton Beach Police Station, Plaintiff never indicated any characteristics or qualities that could give Defendants a notion that he posed a threat of harm to himself or others, did not actively resist the arrest, attempt to evade the arrest by flight, and was being arrested for an alleged illegal U-turn.

Plaintiff that his heart rate increased, ultimately leading to a Type II NSTEMI (Demand Ischemia) (hereinafter referred to as a "myocardial infarction").

35. Notably, when Defendant Mooney was handcuffing Plaintiff, Officer Howard also asked Mooney why Plaintiff was being arrested and was confused about the reason for the arrest.[8]

36. Defendant Mooney pushed Plaintiff into the back of his patrol vehicle and threatened to grab him and throw him into the backseat, despite Plaintiff not physically resisting.

37. After Defendant Mooney had finished pushing Plaintiff into the back of his patrol vehicle with Officer Howard watching, Officers Rivera and Cook arrived at the scene approximately one minute later. Upon their arrival, Defendant Mooney and Officer Howard began to exasperatedly stutter through an explanation of why Plaintiff was being arrested. Defendant Mooney argued that the basis for Plaintiff's arrest was reckless driving while continuing to make remarks about Plaintiff "playing games." As Defendant Mooney attempted to coherently explain himself, Officer Rivera laughed at Defendant Mooney's explanation.

38. Officer Rivera and Officer Cook arrived at such a time that they were able to observe Plaintiff detained and in distress in the back of Defendant Mooney's

---

[8] Officer Howard's confusion here underscores that the arrest was baseless and merely a malicious attempt to punish Plaintiff and boost Defendant Mooney's precariously situated ego.

patrol vehicle. Officers Rivera, Cook, and Howard each observed Plaintiff's condition while he was in FWBPD custody at the scene.

39. Officers Rivera, Cook, and Howard had no independent knowledge of the circumstances of the alleged U-turn or of any other conduct by Plaintiff, and acted solely on the account Defendant Mooney gave them at the scene. Defendant Mooney was the sole source of the stated basis for Plaintiff's arrest.

40. Plaintiff's age and apparent medical condition were evident to Defendant Mooney at the scene of the arrest. But, despite this objective and subjective awareness, Defendant Mooney did not take a single step to address Plaintiff's medical needs before he was transported to the Fort Walton Beach Police Department.

41. Before leaving the scene, Defendant Mooney and Officer Howard searched Plaintiff's truck and quickly noticed a bottle of nitroglycerin pills, and they quickly determined that Plaintiff suffered from heart problems. The time that Defendant Mooney and Officer Howard discovered the nitroglycerin pills was at 4:49 AM.[9]

---

[9] The discovery of the nitroglycerin pills was made by Officer Howard. Defendant Mooney agreed with Officer Howard's intuition that the presence of the pills indicated that the Plaintiff had heart problems and clearly required the pills.

42. Due to the stress and fear induced by the arrest and the aggressive treatment by Defendant Mooney, Plaintiff's heart rate became markedly elevated, causing Plaintiff to experience sharp, intense chest pain.

43. Plaintiff repeatedly told Defendant Mooney that he was experiencing chest pain, had a heart condition, had a scheduled surgery in less than three weeks, and needed his nitroglycerin pills. Defendant Mooney dismissed these requests and prevented Plaintiff from accessing his heart medication.

44. After Defendant Mooney and Plaintiff arrived at the police department, Defendant Mooney maintained a custodial hold on Plaintiff and guided him through the police department to the holding cell. Plaintiff, who was by then reporting chest pain, was moved through the department without any inquiry into his condition.

45. Throughout their encounter, Defendant Mooney continued to dismiss Plaintiff's concerns regarding Mooney's treatment of Plaintiff, as well as the lack of access to his heart medication, including when Plaintiff asked Defendant Mooney for access to his nitroglycerin pills at approximately 4:56 AM when Plaintiff was being put in the holding cell.

46. Defendant Mooney removed the handcuffs, searched Plaintiff, and placed him in lockup.[10]

[10] Notably, Defendant Mooney's body-worm camera footage cuts off at the moment that Plaintiff is placed in the holding cell.

47. After placing Plaintiff in lockup, Defendant Mooney turned off his body-worn camera.

48. As a result of the physical and emotional stress inflicted on Plaintiff by Defendant Mooney and the continued withholding of his heart medication, Plaintiff's chest pain continued to worsen while he sat in the holding cell, causing extreme, paralyzing pain. Plaintiff called out to Defendant Mooney and anyone nearby for help, but was ignored and left without care for an extended period.

49. Eventually, another police department officer noticed Plaintiff's cries for help and disregarded Defendant Mooney's insistence that Plaintiff was not in pain and was only suffering from "incarceritis." The officer called EMS to provide care for Plaintiff's severe chest pain. Plaintiff described the pain as sharp and rated it 8/10 on the pain scale.

50. The Fort Walton Beach Fire Department arrived at the police department in response to the 911 call for Plaintiff. As the Fort Walton Beach Fire Department attempted to provide medical treatment to Plaintiff, Defendant Mooney again intervened and falsely claimed that Plaintiff was "running from the police" at the time of his arrest. Upon information and belief, this assertion was a thinly veiled

attempt to justify Defendant Mooney's conduct and to prevent Plaintiff from receiving medical treatment for as long as possible.[11]

51. After stabilizing Plaintiff, Defendant Mooney declared that Plaintiff was being an "asshole," and insisted he be taken to jail and was not allowed to be brought to the hospital. Due to the significant risks Plaintiff faced if he was denied access to medical treatment, the medics with the Fort Walton Beach Fire Department overruled Defendant Mooney's demand that Plaintiff be prevented from receiving further medical care and instead be taken to jail.

52. Indeed, the medics were delayed in rushing Plaintiff to the hospital due to Defendant Mooney's unwillingness to allow the Plaintiff to be taken for emergency treatment, despite the fact that Plaintiff had clearly communicated to Defendant Mooney and the medics the nature of his extreme pain, his denial of lifesaving medication by Mooney, and his medical history. This history included high blood pressure and a 70% blockage of his main artery, with surgery scheduled less than three weeks after the incident. Ultimately, EMS personnel had to override Defendant Mooney to transfer Plaintiff to the hospital.[12]

---

[11] Defendant Mooney's body camera footage (as well as Plaintiff's dash camera footage) shows that Plaintiff never ran from him or any other responding officer. In fact, the only person in the footage who appeared to be out of breath was Defendant Mooney.

[12] Defendant Mooney was aware of most if not all of these facts already, yet chose to obstruct medical attention to Plaintiff, nonetheless.

53. The claim that Plaintiff was suffering from "incarceritis," when juxtaposed with Defendant Mooney's abundant knowledge of Plaintiff's elderly age, upcoming surgery, marked reliance on heart medication, and symptoms resembling those of a heart attack, demonstrates how ruthless and cruel Defendant Mooney was toward Plaintiff.[13] Indeed, Defendant Mooney was determined to and ultimately was successful in denying Plaintiff access to EMS and subsequently access to emergency treatment from the hospital.

54. Upon arrival at HCA Florida Fort Walton-Destin Hospital, Plaintiff was diagnosed with a hypertensive emergency complicated by a Type II NSTEMI (demand ischemia), which had begun while Plaintiff was detained and placed under arrest by Defendant Mooney, and continued and progressively worsened throughout the duration of his custody, including as Plaintiff was transported by Mooney to the Fort Walton Beach Police Department, where he remained in the Defendants' custody. Plaintiff's treating cardiologist documented that the Plaintiff's blood pressure had risen into the 200s systolic during an event that had caused Plaintiff a great deal of stress, and serial troponin measurements showed a rise and fall with a peak of 682 ng/L against a reference range of 0-53. Plaintiff alleges that the stress of his arrest and detention, together with the withholding of his prescribed

[13] This ruthless, cruel conduct is not the first time Defendant Mooney has acted this way while working as an officer for Defendant FWB.

nitroglycerin and the delay in obtaining medical care, caused and substantially contributed to the hypertensive emergency and resulting myocardial infarction, and aggravated his preexisting coronary artery disease.

55. Following the myocardial infarction Plaintiff suffered in the custody of Defendants, Plaintiff had to travel to the Mayo Clinic and undergo an additional heart procedure that placed a stent in his heart to stabilize it following the myocardial infarction.

56. Plaintiff experienced life-altering symptoms following the wrongful arrest and myocardial infarction, including extreme stress and trauma. Plaintiff has been unable to walk or exercise as he had before the wrongful arrest. Other routine activities have now become immensely difficult or even impossible. Specifically, Plaintiff has noticed a sharp decline in his mobility and physical independence, which has diminished his quality of life and caused him to suffer.

57. The diminished quality of life for Plaintiff has resulted in significant and persistent emotional effects. Since the wrongful arrest and myocardial infarction, Plaintiff has frequently experienced nightmares and difficulty sleeping. When Plaintiff is able to fall asleep, the sleep is often restless and interrupted.

58. Plaintiff now suffers from anxiety and is in constant fear of law enforcement, something Plaintiff had never experienced before the wrongful arrest.

The sight of police vehicles, encountering police officers, hearing sirens, or seeing police lights now triggers Plaintiff and causes immense stress and apprehension.[14]

59. The conduct of Defendant Mooney stands out due to his role in ensuring Plaintiff was arrested at all costs, even though Defendant could not have seen Plaintiff make the U-turn because he was out of the line of sight to view the U-turn. Defendant Mooney was also solely responsible for the physical handling of Plaintiff which, given Plaintiff's age and cardiac condition, produced a physiological stress response and spike in blood pressure that triggered a cardiac event. Defendant Mooney personally oversaw Plaintiff being taken to jail and was determined that he be incarcerated, even when it became overwhelmingly obvious to others that Plaintiff was suffering a medical emergency and needed immediate medical care—all in pursuit of his depraved goal to ensure Plaintiff faced criminal charges. Furthermore, Defendant Mooney knew that Plaintiff took nitroglycerin pills to manage a heart condition, having discovered this at the scene of the arrest. Despite this knowledge, he made sure Plaintiff did not have access to the medication while in the holding cell and refused access when Plaintiff, in intense and paralyzing pain, begged Mooney and the other officers for his medicine. Ultimately, Defendant Mooney's direct actions nearly caused Plaintiff's death, driven by his morally

[14] As a veteran, Plaintiff held law enforcement officers in the utmost regard for their service to their communities. Unfortunately, this reverence for law enforcement officers has been twisted into outright fear and apprehension due to the Defendants.

corrupt aim to punish Plaintiff for being an "asshole," as he reportedly told the Fort Walton Beach Fire Department, who provided care following the cardiac incident.

60. Furthermore, Plaintiff has suffered additional economic and reputational harm, including being forced to undergo criminal proceedings based on Defendant Mooney's fabricated lies, which resulted in his prosecution. Although the case was eventually terminated once the State Attorney recognized the baselessness of the arrest, this did not negate the fact that Plaintiff was deprived of his freedom, had to hire a criminal defense attorney, and sustained life-threatening injuries while in police custody.

61. As noted above, this is not the first time Defendant Mooney has shown ruthless indifference toward the people of Fort Walton Beach. In fact, Defendant Mooney has a documented pattern of violating the rights of citizens, including by way of using excessive force and making false and/or improper arrests while employed by Defendant FWB as an officer for FWBPD. In one instance, Defendant Mooney placed his service weapon against the back of a civilian's head who had already surrendered to his show of authority. In a separate incident, Defendant Mooney beat a motorcyclist who had surrendered to his show of authority, repeatedly punching the motorcyclist in the nose. Defendant Mooney has also been cited for making threats of serious bodily harm and even death to fellow FWBPD officers.

62. Defendant Mooney's conduct exhibited the utmost disregard for Plaintiff's rights, safety, and dignity. Defendant Mooney detained and arrested Plaintiff without justification and caused physical injury to Plaintiff in the manner in which he physically grabbed, pushed, and shoved Plaintiff as he was in police custody. Defendant Mooney further thwarted numerous attempts at medical intervention for Plaintiff when he sought medication and care for his heart problems and the resulting myocardial infarction suffered while in the Defendants' custody.

63. Defendant Mooney was responsible for initiating and/or causing the continuation of criminal proceedings against Plaintiff by placing Plaintiff under arrest, personally ensuring Plaintiff was taken to the police station for holding, providing statements, reports, and/or other information forming the basis of the charges.

64. Now, Plaintiff brings this civil suit against Defendants FWB and Mooney, to recover for the continuous harms Defendants have maliciously and/or tortiously caused Plaintiff.

65. Video footage exists of certain parts of the events alleged herein, including the first traffic stop, Plaintiff's behavior after the first traffic stop and leading into the second traffic stop/arrest, the second traffic stop/arrest, the drive from the scene of the arrest to the police station, and footage of Plaintiff being brought to the holding cell at the police station. The video footage includes body

camera footage worn by Defendant Mooney, Officer Howard, and Plaintiff's dash camera footage. The footage does not capture the entirety of the encounter, including the full extent of Plaintiff's medical distress, the extent of what occurred at the police station and holding cell where Plaintiff was kept and subsequent myocardial infarction Plaintiff suffered in the Defendants' custody.

**COUNT I**
**FALSE ARREST BROUGHT UNDER 42 U.S.C. § 1983**
**(Against Defendant Mooney in his Individual Capacity)**

66. Plaintiff realleges, adopts, and incorporates by reference paragraphs 1-65 above as though set forth herein.

67. The count sets forth claims against Defendant Mooney for his violation of Plaintiff's right to be free from false arrest under the Fourth and Fourteenth Amendments to the United States Constitution. These violations were of the type and character as to which any reasonable person would be aware.

68. Defendant Mooney violated Plaintiff's civil and constitutional rights. These claims are brought through 42 U.S.C. § 1983.

69. Defendant Mooney acted with bad faith or with malicious purpose, or in a manner exhibiting willful and wanton disregard of human rights, safety, and/or property.

70. Defendant Mooney, while acting under the color of state law, violated Plaintiff's clearly established rights under the Fourth and Fourteenth Amendment to

the United States Constitution by intentionally and proximately causing the unlawful arrest of Plaintiff. Defendant Mooney misused his power, possessed by virtue of state law and made possible only because he was clothed with the authority of state law. Thus, the violations of Plaintiff's rights are actionable pursuant to 42 U.S.C. § 1983.

71. Defendant Mooney arrested Plaintiff for reckless driving, yet lacked probable cause or even arguable probable cause to have done so. As alleged herein, Defendant Mooney had driven past Plaintiff and based on the speed that Mooney drove and the curved nature of Perry Avenue, was unable to observe or otherwise apprehend that Plaintiff was making a U-turn over a yellow line. Despite lacking legal justification, Defendant Mooney placed Plaintiff under arrest for reckless driving.

72. The foregoing actions of Defendant Mooney were willful, wanton, and in reckless disregard of Plaintiff's rights, and were engaged in without any lawful justification and in the absence of probable cause. Defendant Mooney knew or should have known there was no probable cause to arrest Plaintiff, or otherwise proximately cause his arrest, given the circumstances present and the clearly established law on the proof needed to establish arguable probable cause.

73. Defendant Mooney lacked probable cause, and lacked arguable probable cause, to arrest Plaintiff for reckless driving or for any other offense. No

reasonable officer in Defendant Mooney's position could have believed that an offense had been committed. Defendant Mooney did not observe, and could not have observed, the conduct he claimed as the basis for the arrest. The only conduct Defendant Mooney did observe—Plaintiff approaching him to request the return of an insurance card taken during the earlier traffic stop—was lawful and gave rise to no offense. The unlawfulness of arresting a person without probable cause was clearly established on July 20, 2024.

74. As a direct and proximate result of Defendant Mooney's actions, Plaintiff has been damaged, which damages include: permanent physical injuries, mental anguish, loss of capacity for the enjoyment of life, embarrassment, humiliation, and loss of reputation. These damages have occurred in the past, are continuing in the present, and are likely to continue into the future.

WHEREFORE, Plaintiff, respectfully demands judgment against Defendant Mooney and in favor of Plaintiff as to Count I, for compensatory damages, punitive damages, costs, pre- and post-judgment interest, and any damages and other relief that this Court deems just, appropriate, and proper.

**COUNT II**
**COMMON LAW FALSE IMPRISONMENT/ARREST**
***Pendent Claim Brought Pursuant to 28 U.S.C. § 1367(a)***
**(Against Defendant Mooney in his Individual Capacity)**

75. Plaintiff realleges, adopts, and incorporates by reference paragraphs 1-65 above as though set forth herein.

76. This count sets forth claims against Defendant Mooney for common law false imprisonment/arrest, and is pled in the alternative. For purposes of this count, Plaintiff alleges that Defendant Mooney acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, and/or property.

77. Plaintiff is entitled to relief against Defendant Mooney in that Defendant Mooney's intentional and malicious misconduct proximately caused the unlawful detention and restraint of Plaintiff and deprivation of his liberty against his will and without any reasonable cause.

78. Specifically, this unlawful restraint and deprivation of Plaintiff's liberty was also accomplished by Defendant Mooney proximately causing Plaintiff to be confined to an area that he did not wish to be confined. Namely, when Defendant Mooney detained Plaintiff in the parking lot of The Block, placed him in the back of his patrol vehicle, and in lockup at the Fort Walton Beach Police Department.

79. Defendant Mooney intended to cause Plaintiff's confinement or had knowledge that such confinement of Plaintiff will, to a substantial certainty, result from his actions.

80. At all times relevant to this action, and at all times during which the Plaintiff was being unlawfully restrained, he was restrained against his will, without

consent, and was such that he was not free to leave his place of confinement at any point.

81. The restraint and arrest of Plaintiff was unlawful and unreasonable in that it was procured without any lawful justification and in the absence of probable cause; such arrest and confinement of Plaintiff were not otherwise privileged. Indeed, as supported by Defendant Mooney's own body camera footage and Plaintiff's dash camera footage, the basis for the arrest of Plaintiff was without legal or factual justification, and instead made in furtherance of Defendant Mooney's objective to weaponize the badge he wore as a method to personally inflict punishment upon Plaintiff through the deprivation of his liberty.

82. As a direct and proximate result of Defendant Mooney's actions, Plaintiff has been damaged, which damages include: permanent physical injuries, mental anguish, loss of capacity for the enjoyment of life, embarrassment, humiliation, and loss of reputation. These damages have occurred in the past, are continuing in the present, and are likely to continue into the future.

**WHEREFORE**, Plaintiff, respectfully demands judgment against Defendant Mooney and in favor of Plaintiff as to Count II, for compensatory damages, punitive damages, costs, pre- and post-judgment interest, and any damages and other relief that this Court deems just, appropriate, and proper.

## COUNT III
## COMMON LAW FALSE IMPRISONMENT/ARREST

***Pendent Claim Brought Pursuant to 28 U.S.C. § 1367(a)***
**(Against Defendant FWB)**

83. Plaintiff realleges, adopts, and incorporates by reference paragraphs 1-65 above as though set forth herein.

84. This count sets forth claims against Defendant FWB for common law false imprisonment/arrest, and is pled in the alternative. For purposes of this count, Plaintiff alleges that Defendant Mooney, as an officer, employee, and/or agent of Defendant FWB, was not acting in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

85. Plaintiff is entitled to relief against Defendant FWB in that this Defendant is responsible for the conduct of its officers, employees, and agents, including Defendant Mooney, who was acting within the course and scope of his employment.

86. Defendant FWB, acting by and through its agents and employees, including Defendant Mooney, proximately caused the unlawful detention and restraint of Plaintiff and deprivation of his liberty against his will and without any reasonable cause.

87. At all times relevant to this action, and at all times during which the Plaintiff was being unlawfully restrained, he was restrained against his will and without consent, such that he was not free to leave his place of confinement.

88. The restraint and arrest of Plaintiff was unlawful and unreasonable in that it was procured without any lawful justification and in the absence of probable cause; and such arrest and confinement of Plaintiff was not otherwise privileged. Indeed, as supported by Defendant Mooney and Plaintiff's dash camera footage, the basis for the arrest of Plaintiff was without legal or factual justification.

89. As a direct and proximate result of Defendant Mooney's actions, for which Defendant FWB is responsible, Plaintiff has been damaged, which damages include: permanent physical injuries, mental anguish, loss of capacity for the enjoyment of life, embarrassment, humiliation, and loss of reputation. These damages have occurred in the past, are continuing in the present, and are likely to continue into the future.

**WHEREFORE**, Plaintiff, respectfully demands judgment against Defendant FWB and in favor of Plaintiff as to Count III, for compensatory damages, costs, pre- and post-judgment interest, and any damages and other relief that this Court deems just, appropriate, and proper.

## COUNT IV
## MALICIOUS PROSECUTION UNDER 42 U.S.C. § 1983
## (Against Defendant Mooney in his Individual Capacity)

90. Plaintiff realleges, adopts, and incorporates by reference paragraphs 1--65 above as though set forth herein.

91. The count sets forth claims against Defendant Mooney for his violation of Plaintiff's right to be free from malicious prosecution under the Fourth and Fourteenth Amendments to the United States Constitution. These violations were of the type and character as to which any reasonable person would be aware.

92. The Fourth and Fourteenth Amendments to the United States Constitution protect individuals from seizures, including seizures that result from the initiation or continuation of a criminal prosecution without probable cause, where that prosecution results in a deprivation of liberty consistent with a seizure.

93. Defendant Mooney acted in bad faith or with malicious purpose, or in a manner exhibiting willful and wanton disregard of human rights, safety, and/or property.

94. Defendant Mooney, while acting under color of state law, violated Plaintiff's clearly established right under the Fourth Amendment and Fourteenth Amendments to the United States Constitution by unlawfully and maliciously causing criminal proceedings to be instituted against him. Defendant Mooney misused his power, possessed by virtue of state law and made possible only because he was clothed with the authority of state law. Thus, the violations of Plaintiff's rights are actionable pursuant to 42 U.S.C. § 1983.

95. Defendant Mooney caused the commencement and/or continuation of criminal proceedings against Plaintiff. Upon information and belief, following

Plaintiff's arrest, Defendant Mooney prepared and submitted reports, statements, charging information concerning Plaintiff's alleged conduct which he knew to be false, and which ultimately was the sole basis upon which the charge of reckless driving was brought and maintained against Plaintiff. But for Defendant Mooney's reports and statements, no criminal proceeding would have been instituted or continued against Plaintiff.

96. There was no probable cause or reasonable basis in fact or in law for Defendant Mooney to cause commencement of the criminal proceedings against Plaintiff.

97. Defendant Mooney acted with malice in initiating the criminal proceedings against Plaintiff, as well as in instigating Plaintiff's unlawful arrest, and Defendant Mooney knew that his actions against Plaintiff were not supported by even arguable probable cause.

98. The criminal proceedings against Plaintiff resulted in a continuing seizure under the Fourth and Fourteenth Amendments. From the commencement of the proceeding until the State Attorney filed a No Prosecution on September 25, 2024, Plaintiff was compelled to answer to a criminal charge was subject to the continuing jurisdiction and control of the court, was obligated to appear as directed under threat of arrest for noncompliance, was restricted in his liberty of movement, and was required to retain and compensate criminal defense counsel.

99. In the alternative, Plaintiff was seized when he was handcuffed, transported, and confined in a holding cell at the Fort Walton Beach Police Department, and that seizure continued unbroken until he was released from custody, during which period Defendant Mooney was preparing the reports and statements that instituted the criminal proceeding against him.

100. Based on the facts and circumstances and on applicable law, no reasonable law enforcement officer or person in Defendant Mooney's position could have concluded that there existed any probable cause to believe that Plaintiff had committed a criminal offense. The law is well settled and clearly established that the actions of Defendant Mooney constituted malicious prosecution in violation of the Fourth and Fourteenth Amendments to the United States Constitution at the time that the actions were engaged in.

101. As a direct and proximate result of Defendant Mooney's actions, Plaintiff has been damaged, which damages include permanent physical injuries, mental anguish, loss of capacity for the enjoyment of life, embarrassment, humiliation, and loss of reputation. These damages have occurred in the past, are continuing at present, and likely to continue into the future.

**WHEREFORE**, Plaintiff, respectfully demands judgment against Defendant Mooney and in favor of Plaintiff as to Count IV, for compensatory damages, punitive

damages, costs, pre- and post-judgment interest, and any damages and other relief that this Court deems just, appropriate, and proper.

**COUNT V**
**COMMON LAW MALICIOUS PROSECUTION**
***Pendent Claim Brought Pursuant to 28 U.S.C. § 1367(a)***
**(Against Defendant Mooney in his Individual Capacity)**

102. Plaintiff realleges, adopts, and incorporates by reference paragraphs 1-65 above as though set forth herein.

103. This count sets forth claims against Defendant Mooney for common law malicious prosecution and is pled in the alternative. For purposes of this count, Plaintiff alleges that Defendant Mooney acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, and/or property.

104. Defendant Mooney caused the commencement and/or continuation of criminal proceedings against Plaintiff. Defendant Mooney was the legal basis of the criminal proceedings being commenced against Plaintiff, as Mooney prepared and submitted reports, statements, charging information upon which the charge was based. Indeed, without the deliberate and intentional conduct of Defendant Mooney, no criminal proceedings would have been instituted or continued against Plaintiff.

105. There was no probable cause or reasonable basis in fact or law for Defendant Mooney to cause the commencement of the criminal proceedings against Plaintiff.

106. Defendant Mooney acted with malice in initiating the criminal proceedings against Plaintiff, as well as in instigating Plaintiff's unlawful arrest, and Defendant Mooney knew that his actions against Plaintiff were not supported by even arguable probable cause.

107. The criminal proceeding terminated in Plaintiff's favor when the Office of the State Attorney for the First Judicial Circuit filed a No Prosecution on September 25, 2024. That termination was bona fide and reflected the merits (or more accurately, lack thereof) of the charge. Notably, it was not the result of any compromise, settlement, plea, pre-trial diversion program, or agreement by or on behalf of Plaintiff.

108. As a direct and proximate result of Defendant Mooney's actions, Plaintiff has been damaged, which damages include permanent physical injuries, mental anguish, loss of capacity for the enjoyment of life, embarrassment, humiliation, and loss of reputation. These damages have occurred in the past, are continuing in the present, and are likely to continue into the future.

**WHEREFORE**, Plaintiff, respectfully demands judgment against Defendant Mooney and in favor of Plaintiff as to Count V, for compensatory damages, punitive damages, costs, pre- and post-judgment interest, and any damages and other relief that this Court deems just, appropriate, and proper.

**COUNT VI**

**DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS UNDER 42 U.S.C. § 1983**
**(Against Defendant Mooney in his Individual Capacity)**

109. Plaintiff realleges, adopts, and incorporates by reference paragraphs 1-14 and 37-59 above as though set forth herein.

110. 42 U.S.C. § 1983 provides in part that: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress….".

111. Plaintiff is a citizen of the United States and thus entitled to the full benefits and equal protection of the Federal Constitution and laws and regulations enacted thereunder.

112. Defendant Mooney is a person under 42 U.S.C. § 1983.

113. Defendant Mooney was, at all times relevant, acting under the color of ordinances, regulations, customs, and laws of the State of Florida.

114. At all times relevant to this amended complaint, Plaintiff had clearly established constitutional rights, including the right under the Fourteenth

Amendment to have access to adequate medical care while in custody, and to be free from deliberate indifference to a serious medical need.

115. Defendant Mooney knew or should have known of these rights during the time period giving rise to this Second Amended Complaint, as they are clearly established.

116. Defendant Mooney's conduct with respect to his affirmative and active role in preventing Plaintiff from having access to medical attention and his heart medication, as described herein, deprived Plaintiff of his constitutional and statutory rights, resulting in pain, suffering, and sickness, and causing Plaintiff damages.

117. Defendant Mooney intentionally, knowingly, and purposely deprived Plaintiff of his clearly established rights, privileges, and immunities as secured by the Constitution and laws of the United States in violation of 42 U.S.C. § 1983.

118. Defendant Mooney's conduct as alleged in the Second Amended Complaint exhibited deliberate indifference to the constitutional rights of Plaintiff which were the moving forces behind and proximately caused the violations of Plaintiff's constitutional rights as set forth herein.

119. Defendant Mooney was explicitly aware of Plaintiff's heart conditions and his need for nitroglycerin pills. Defendant Mooney first learned of Plaintiff's heart condition shortly after searching the Plaintiff's vehicle, where he and Officer Howard found the nitroglycerin pills and confirmed that Plaintiff had heart

problems. Plaintiff then informed Defendant Mooney that he had heart issues and needed his nitroglycerin pills to manage his condition. With this clear and unambiguous knowledge of Plaintiff's immediate need for his medication, Defendant Mooney personally prevented Plaintiff from accessing his nitroglycerin pills, even when Plaintiff began experiencing severe, sharp chest pains after being placed in custody. Defendant Mooney also ensured that EMS services were delayed as long as possible, despite Plaintiff's requests for immediate medical treatment for his intense heart pain. After another officer contacted EMS, Defendant Mooney continued to obstruct care when EMS—the Fort Walton Beach Fire Department—arrived at the jail to assist Plaintiff. Defendant Mooney even tried to prevent Plaintiff from being taken to the hospital for urgent treatment after the Fort Walton Beach Fire Department examined him and determined that his symptoms, combined with the fact that he had not been able to take his nitroglycerin pills due to Defendant Mooney's actions, indicated that Plaintiff had suffered a myocardial infarction while in the Defendants' custody. This conduct by Defendant Mooney amounted to a clear, deliberate indifference to Plaintiff's constitutional rights.

120. Indeed, the conduct of Defendant Mooney amounted to clear, deliberate indifference to the constitutional rights of Plaintiff, which were the moving force behind and proximately causing the violations of his constitutional rights as set forth herein.

121. Plaintiff's extended pain, suffering, and the resulting myocardial infarction was caused by Defendant Mooney's unconstitutional conduct.

122. Defendant Mooney's conduct shows complete indifference and conscious disregard for the health and safety of Plaintiff.

123. Defendant Mooney was aware of Plaintiff's heart problems through circumstantial evidence, such as the nitroglycerin pills found in Plaintiff's truck, and direct evidence, including the Plaintiff's own words to Defendant Mooney expressing his need for the medication and mentioning his heart issues. Defendant Mooney also reiterated this information after the fire department's evaluation and treatment of Plaintiff at the jail confirmed it.

124. As a direct and proximate result of the unconstitutional conduct of Defendant Mooney as described above, Plaintiff has suffered actual physical injury, emotional pain and suffering, economic damages, loss of the capacity for the enjoyment of life, and other tangible and intangible damages and is entitled to recover damages from Defendant in an amount to be proven at trial. Plaintiff is entitled to attorneys' fees under 42 U.S.C. §1988.

**WHEREFORE**, Plaintiff, respectfully demands judgment against Defendant Mooney and in favor of Plaintiff as to Count VI, for compensatory damages, punitive damages, costs, pre- and post-judgment interest, and any damages and other relief that this Court deems just, appropriate, and proper.

**COUNT VII**
**NEGLIGENCE**
***Pendent Claim Brought Pursuant to 28 U.S.C. § 1367(a)***
**(Against Defendant FWB)**

125. Plaintiff realleges, adopts, and incorporates by reference paragraphs 1-14 and 37-58, 65 above as though set forth herein.

126. This count sets forth a claim against Defendant FWB for negligence under the common law of Florida arising from the custody, care, and monitoring of Plaintiff while he was detained at the Fort Walton Beach Police Department.

127. This count is not premised upon the arrest of Plaintiff, the intentional conduct of Defendant Mooney, or upon Defendant FWB's supervision or retention of any employee.

128. This count is pled in the alternative, and for purposes of this count alleges that the officers, employees, and agents of Defendant FWB responsible for Plaintiff's custodial care were acting within the course and scope of their employment and were not acting in bad faith or with malicious purpose or in a manner exhibiting wanton or willful disregard of human rights, safety, or property.

129. At all times material hereto, Defendant FWB operated and maintained a detention facility at the Fort Walton Beach Police Department in which persons taken into custody were confined pending booking, release, or transfer.

130. On July 20, 2024, Defendant FWB took Plaintiff into its custody and confined him in a holding cell at that facility. Upon being taken into custody,

Plaintiff was deprived of his liberty and of any ability to obtain medical care for himself within reasonable time, to summon assistance, or to access his own prescribed nitroglycerin medication. Plaintiff was wholly dependent upon Defendant FWB for his safety and treatment of his medical needs.

131. By taking Plaintiff into custody and thereby depriving him of the normal opportunity to protect himself, Defendant FWB assumed a duty to exercise reasonable care for Plaintiff's safety and wellbeing while he remained in Defendant's custody. That duty included the duty (1) to assess persons/detainees taken into custody for medical conditions requiring attention, (2) to observe and monitor detainees at reasonable intervals, (3) to reasonably respond to a detainee's reported symptoms, (4) to permit a detainee to access a lawfully prescribed medication or to obtain timely medical treatment in the alternative, and/or (5) to ensure that personnel responsible for the custody of detainees were adequately trained and staffed to recognize and respond to medical emergencies.

132. Plaintiff's need for medical attention was known and obvious to Defendant FWB. Defendant FWB knew that Plaintiff was an elderly seventy-seven-year-old and had prescribed nitroglycerin medication—which was discovered in his vehicle in a search conducted shortly after Plaintiff was placed under arrest, where the medication was subsequently taken into police custody and withheld from Plaintiff. Furthermore, Plaintiff told FWBPD officers that he suffered from a heart

condition, that he was actively experiencing chest pain, and that he required his nitroglycerin medication, including at the time Plaintiff was placed into the holding cell. Plaintiff was placed within a foreseeable zone of risk of serious harm to his heart and cardiovascular system.

133. Defendant FWB breached each of these duties of providing reasonable care to Plaintiff by its failure to (1) conduct any medical screening, intake assessment, or inquiry into Plaintiff's medical condition upon taking him into custody, (2) conduct or document any wellness check, cell check, observation, or round of Plaintiff at any time while he was confined, (3) implement or carry out its internal procedures governing the observation and monitoring of persons in custody, (4) have any medical or nursing personnel present at, or on call to, the facility, (5) monitor Plaintiff after he reported chest pain and a known cardiac condition. (6) permit Plaintiff to access his lawfully prescribed nitroglycerin medication, or alternatively, to obtain timely medical care in its place, (7) summon emergency medical services promptly after Plaintiff reported symptoms of a cardiac emergency, and/or (8) ensure that personnel responsible for Plaintiff's custody were trained to recognize the signs of a medical emergency and to respond to Plaintiff's requests for his prescribed nitroglycerin medication.

134. The acts and omissions of Defendant FWB complained of in this count were taken in the course and performance of operational functions, which were not

necessary to or inherent in policymaking or planning, and which merely reflected the inherent, secondary decisions as to how existing policies and plans were to be implemented.

135. As a direct and proximate result of Defendant FWB's breaches, Plaintiff was confined without observation or medical attention while experiencing an untreated medical emergency, was denied access to the nitroglycerin medication prescribed to treat and relieve Plaintiff's symptoms and suffered a prolonged and untreated elevation of blood pressure and chest pain.

136. As a direct and proximate result, Plaintiff sustained a hypertensive emergency complicated by a Type II NSTEMI (demand ischemia), aggravation of his pre-existing coronary heart disease, and the acceleration and alteration of the cardiac treatment Plaintiff was subsequently required to have.

137. As a direct and proximate result of Defendant FWB's unlawful acts and omissions, Plaintiff sustained damages including physical injury, past and future medical expenses, physical pain and suffering, mental anguish, loss of capacity for the enjoyment of life, embarrassment, and humiliation. These damages have occurred in the past, are continuing, and are likely to continue into the future.

**WHEREFORE**, Plaintiff, respectfully demands judgment against Defendant FWB and in favor of Plaintiff as to Count VII, for compensatory damages, costs,

pre- and post-judgment interest, and any damages and other relief that this Court deems just, appropriate, and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff, Darryl White, requests a trial by jury on all issues so triable.

DATED this 19th day of August, 2026.

Respectfully submitted,

**ANDREWS LAW FIRM**
822 North Monroe Street
Tallahassee, Florida 32303
**T:** (850) 681-6416 | **F:** (850) 681-6984

***/s/ Ryan J. Andrews***
RYAN J. ANDREWS (FBN 104703)
DAVID A. WEISZ (FBN 1023229)
ryan@andrewslaw.com
david@andrewslaw.com
service@andrewslaw.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served through the CM/ECF portal, and or electronic mail, on this 19th day of August, 2026 to all parties.

Alyssa M. Yarbrough (FBN 103407)
Timothy M. Warner (FBN 0642363)
William G. Warner (FBN 0346829)
Justina CJ Turner (FBN 99808)
Jennifer A.J. Hawkins (FBN 17694)
**WARNER LAW FIRM, P.A.**
501 W. 11th Street, Suite A
Panama City, FL 32401
Phone No. (850) 784-7772
pleadings@warnerlaw.us
*Counsel for Defendants*

***/s/ Ryan J. Andrews***
RYAN J. ANDREWS